ACCEPTED
04-14-00668-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/6/2015 3:59:47 PM
KEITH HOTTLE
CLERK

No. 04-14-00668-CV

**IN THE FOURTH COURT OF APPEALS**

**AT SAN ANTONIO, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/6/2015 3:59:47 PM
KEITH E. HOTTLE
Clerk

West 17th Resources, LLC, Pamela Mika Wolf, and Thomas Mika
Appellants

v.

Lucian A. Pawelek and Carleen J. Pawelek
Appellees

Cause No. 13-04-00087-CVK
Appealed from the 81st District Court of
Karnes County, Texas

**APPELLANTS' BRIEF**

**ORAL ARGUMENT REQUESTED**

Michael D. Jones
State Bar No. 10929350
Leann Pinkerton
State Bar No. 24038826
JONES GILL, LLP
6363 Woodway, Suite 1100
Houston, Texas 77057
Telephone:    713.652.4068
Facsimile:    713.651.0716
mjones@jonesgill.com
ATTORNEYS FOR APPELLANTS

**STATEMENT REGARDING ORAL ARGUMENT**

Appellants request oral argument for this appeal. The title issues in this appeal present complex facts. In addition, where, as here, two competing motions for summary judgment have been filed, oral argument will assist the Court in understanding the underlying facts and legal arguments.

The trial court did not nor is it required to provide the grounds for its ruling. So, for the first time in Texas, the trial court potentially used the estoppel by deed doctrine to supply a required recitation of grantor capacity where there was no such recitation. This issue has not been decided by the Supreme Court of Texas. This issue is not frivolous and involves important considerations of Texas real property law.

The trial court potentially ruled that the January 2012 telephone call and February 2012 letter did not constitute acknowledgment of title in Appellants. This is a fact question that is not adequately presented by the facts and legal argument.

The trial court potentially ruled that Appellees constructively ousted their co-tenants, Appellants, from the real property at issue. The trial court potentially ruled that Appellees constructively repudiated the co-tenancy with Appellants. The doctrine of constructive ouster and repudiation requires oral argument to assist the Court in its deliberations.

Appellants assert that the decisional process will be significantly aided by oral argument. Appellants respectfully request this honorable Court to set this matter for oral argument.

i

## IDENTITY OF PARTIES AND COUNSEL

In accordance with Texas Rule of Appellate Procedure 38.1 (a), Appellants certify that the following is a complete list of the parties to the trial court's final judgment, as well as the parties' counsel. Unless otherwise indicated, counsel identified below are both trial and appellate counsel:

| PARTY | COUNSEL |
|---|---|
| Appellants:<br><br>WEST 17TH RESOURCES LLC<br>PAMELA MIKA WOLF<br>THOMAS MIKA | Michael D. Jones<br>Leann Pinkerton<br>Jones Gill LLP<br>6363 Woodway, Suite 1100<br>Houston, TX 77057-1796<br>Facsimile: 713-651-0716<br>mjones@jonesgill.com |
| Appellees:<br><br>LUCIAN A. PAWELEK<br>CARLEEN J. PAWELEK | Ricardo Morales<br>Joe Maldonado, Jr.<br>Person, Whitworth, Borchers & Morales L.L.P.<br>602 East Calton Road 2nd Floor<br>Laredo, Texas 78041<br>Facsimile: 956-727-2696<br>remorales@personwhitworth.com<br><br><br>Michael R. Hedges<br>Fred Riley Jones<br>Goode Casseb Jones Riklin Choate & Watson, P.C.<br>2122 N. Main Avenue<br>San Antonio, Texas 78212<br>Facsimile: (210) 733-0330<br>hedges@goodelaw.com |

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT............................................................................ i

IDENTITY OF PARTIES AND COUNSEL ............................................................................... ii

TABLE OF CONTENTS............................................................................................................ iii

TABLE OF AUTHORITIES ....................................................................................................... v

ISSUES PRESENTED FOR REVIEW ...................................................................................... ix

I.      STATEMENT OF FACTS ............................................................................................ 1

    A.    Introduction ....................................................................................................... 1

    B.    Ownership of the Real Property at Issue .......................................................... 1

    C.    Appellees Claim to the Real Property at Issue .................................................. 3

II.     SUMMARY OF THE ARGUMENT ............................................................................ 4

    A.    Standard of Review ........................................................................................... 4

    B.    Estoppel by Deed Does Not Apply .................................................................... 5

    C.    The Legal and Beneficial Interests in the Trust Did not Merge........................ 5

    D.    Appellees Cannot Claim Title by Adverse Possession ..................................... 6

III.   ARGUMENT................................................................................................................. 7

    A.    Estoppel by Deed Does not Apply ..................................................................... 7

        1.    The trial court erred in holding that doctrine of estoppel by deed overcomes the failure to disclose the representative capacity of a grantor holding title as both an individual and trustee. ........................................................................................ 7

        2.    The trial court erred in holding that Irene Mika conveyed an interest in real property held in trust, despite no disclosure of her representative capacity in the 1994 Deed. ............ 8

        3.    Appellees are not Without Fault.................................................................. 9

        4.    The Trial Court Erred in Excluding Appellants' Exhibit E-1 ................... 10

        5.    Recording Statutes and Acknowledgement Statutes Support Appellants' Position... 11

        6.    The court erred in holding that estoppel by deed allowed the grantor to convey a remainder interest in trust without the disclosure of the grantor's capacity. ........................ 13

        7.    The court erred in holding that estoppel by deed prevented Appellants, who were not parties to the 1994 Deed, from challenging the conveyance. .............................................. 14

    B.    The Trial Court Erred in Holding That a Merger of the Legal and Beneficial Title in the Prosper A. Mika Trust Estate Occurred ................................................................. 17

    C.    Cotenancy and adverse possession.................................................................. 21

        1.    General Elements of Appellees' Claims .................................................... 21

        2.    Appellants Can Disprove Ouster and Repudiation, and Notice Thereof.... 21

        3.    No 'clear ouster and repudiation' ............................................................... 22

        4.    1994 Deed was not an Ouster .................................................................... 23

5.    The short period of Appellees' possession did not constitute constructive ouster. .... 26

6.    The Murphy Lease was not an Ouster ........................................................ 29

7.    Appellees acknowledged title in Appellants ............................................. 30

8.    No notice of ouster and repudiation ......................................................... 32

9.    Conclusion ................................................................................................. 33

D.    Appellants can Disprove Adverse Possession: Limitations Period............................... 33

1.    Appellants disprove Appellees' Three-Year Adverse Possession.............................. 33

2.    Appellants disprove Appellees' Five-Year Adverse Possession ............................... 40

3.    Appellants disprove Appellees' Ten-Year Adverse Possession ................................ 41

4.    Appellees are Estopped from Claiming Adverse Possession .................................... 41

IV.    CONCLUSION ......................................................................................................... 43

CERTIFICATE OF COMPLIANCE ................................................................................ 47

CERTIFICATE OF SERVICE ........................................................................................ 47

LIST OF APPENDICES .................................................................................................. 48

# TABLE OF AUTHORITIES

**Cases**

*Amador v. Berrospe*, 961 S.W.2d 205, 208-209 (Tex. App.—Houston [1st Dist.] 1996, writ denied)..................................................................................................................22, 26

*American Nat. Bank of Beaumont v. Wingate*, 266 S.W.2d 934, 945 (Tex. Civ. App.—Beaumont 1953, writ ref'd n.r.e.) ...................................................................................... 39

*Angell v. Bailey,* 225 S.W.3d 834, 841-42 (Tex. App.—El Paso 2007, no pet.)......................... 14

*Backhus v. Wisnoski*, 14-09-00924, 2011 WL 6396497 (Tex. App.–Houston [14th Dist.] Dec. 8, 2011, pet. denied)................................................................................................... 25

*Bagby v. Bredthauer*, 627 S.W.2d 190, 194 (Tex. App.--Austin 1981, no writ)......................... 14

*Bailey v. Bailey,* 212 S.W.2d 189, 191 (Tex. Civ. App.—Waco 1948, writ ref'd)....................... 24

*Blackwell v. Blackwell,* 86 Tex. 207, 24 S.W. 389, 390 (1893) ................................................... 25

*BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011) ..........................................22, 29

*Bradford v. Rain*, 562 S.W.2d 514, 518 (Tex. Civ. App.—Texarkana 1978, no writ)................. 16

*Bradshaw v. Steadfast Financial, L.L.C.* 395 S.W.3d 348, 352-53 (Tex. App.--Fort Worth 2013) ................................................................................................................................. 13

*Burnham v. Hardy Oil Co.*, 108 Tex. 555, 195 S.W.1139, 1142 (1917)..................................... 34

*Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986) ................................................................. 29

*Chapman v. King Ranch, Inc.*, 41 S.W.3d 693, 698 (Tex. App.—Corpus Christi 2001, rev'd on other grounds, 118 S.W.3d 742 (Tex. 2003)....................................................................... 32

*Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982) ................................... 36

*Cleveland v. Hensley*, 548 S.W.2d 473, 477 (Tex. Civ. App.—Texarkana 1977, no writ).......... 31

*Cleveland v. Smith,* 156 S.W. 247, 250 (Tex. 1913)................................................................... 16

*Clift v. Clift,* 72 Tex. 144, 10 S.W. 338, 340 (1888)................................................................... 25

*Cochran v. Cochran*, 43 Tex. Civ. App. 259, 95 S.W. 731 (1906, no writ)................................ 19

*Collins v. New,* 558 S.W.2d 108, 112 (Tex. Civ. App.—Corpus Christi 1977) ........................... 24

*Concord Oil Co. v. Pennzoil Exploration and Production Co.*, 966 S.W.2d 451, 460 (Tex. 1998) ................................................................................................................................. 36

*Deutsche Bank Nat. Trust Co. v. Stockdick Land Co.,* 367 S.W.3d 308, 311-312 (Tex.App.–Houston [14th Dist.] 2012, pet. denied) ................................................................ 14

*Dyer v. Cotton*, 333 S.W.3d 703, n.2 (Tex. App.—Houston [1st Dist.] 2010, no pet.)................ 30

*Enserch Exploration, Inc. v. Wimmer*, 718 S.W.2d 308, 311 (Tex. App.–Amarillo 1986, writ. ref. n.r.e.) ...........................................................................................................................24, 25

*Estate of Trevino v. Melton*, 04-07-00654-CV, 2009 WL 891881, at 5 (Tex. App.--San Antonio Apr. 3, 2009, pet. denied) (mem. op.)................................................................................. 17

*Evans v. Covington*, 795 S.W.2d. 806 (Tex. App. –Texarkana 1990, no writ) ........................... 27

*Financial Freedom Sr. Funding Corp. v. Horrocks*, 294 S.W.3d 749 (Tex. App.—Houston [14th Dist.] 2009, no pet.) .......................................................................................................... 19

*FM Properties. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) ...................... 4

*Forister v. Coleman*, 418 S.W.2d 550, 559 (Tex. Civ App.--Austin, 1967) ............................... 15

*Freeman v. Stephens Prod. Co.*, 171 S.W.3d 651, 654 (Tex. App.--Corpus Christi 2005, pet. denied)................................................................................................................................7, 14

*Gilcrease Oil Co. v. Cosby*, 132 F.2d 790, 793 (5th Cir. 1943) ................................................. 16

*Haley v. Sabine Valley Timber & Lumber Co.*, 150 S.W. 596 (Tex. Civ. App.—Texarkana 1912,

writ ref'd) .................................................................................................................... 15

*Hamilton v. Hamilton,* 42 S.W.2d 814, 817 (Tex. Civ. App.--Amarillo 1931, writ ref'd) .......... 25

*Hamrick v. Ward* 359 S.W.3d 770, 785-786 (Tex. App.--Houston [14th Dist.] 2011), rev'd, 446 S.W.3d 377 (Tex. 2014).................................................................................................... 14

*Haring v. Shelton*, 114 S.W. 389, 391 (Tex. Civ. App. 1908)...................................................... 19

*Harrison v. Foote*, 9 Tex. Civ. App. 576, 30 S.W. 838 (1895) ................................................... 19

*Hensley v. Conway*, 29 S.W.2d 416, 417–18 (Tex. Civ. App.--Eastland 1930, no writ) ............. 25

*Hobson v. Shelton*, 302 S.W.2d 268 (Tex. Civ. App.--Waco 1957, writ ref'd n.r.e.) ............. 19, 24

*Horrocks v. Horrocks*, 608 S.W.2d 733, 736 (Tex. Civ. App.—Dallas 1980, no writ) ............... 28

*Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 641 (Tex. App.—Tyler 1983, writ ref'd n.r.e.) ........... 36

*Killough v. Hinds*, 338 S.W.2d 707, 709 (Tex. 1960) ................................................................ 22

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 756 (Tex. 2003) .............................................. 21

*Kirby Lumber Corp. v. Smith*, 305 S.W.2d 829, 830 (Tex. Civ. App.--Beaumont 1957, writ dism'd) ....................................................................................................................... 38

*Kuykendall v. Spiller*, 299 S.W. 522 (Tex. Civ. App—Fort Worth 1927, writ ref'd, 299 S.W. 522) ............................................................................................................................ 16

*Lambe v. Glasscock*, 360 S.W.2d 169, 172-173 (Tex. Civ. App.--San Antonio 1962, writ ref'd n.r.e.) ........................................................................................................................... 15

*Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) ............................ 41

*Medlin v. Medlin,* 203 S.W.2d 635, 640 (Tex. Civ. App.—Amarillo 1947, writ ref'd); .............. 24

*Mills v. Vinson*, 342 S.W.2d. 33 (Tex. Civ. App. – 1960, writ ref'd n.r.e.) ................................. 27

*Moore v. Reed,* 668 S.W.2d 847, 849 (Tex.App.—El Paso 1984, writ ref'd n.r.e.) ..................... 24

*Munawar v. Cadle Co.*, 2 S.W.3d 12, 16 (Tex.App.—Corpus Christi 1999, no pet.).................. 30

*Nash v. Beckett,* 365 S.W.3d 131, 143 (Tex. App.–Texarkana 2012, pet. denied)...................... 14

*Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 194-195 (Tex. 2003 ............................ 22, 36

*O'Neil v. Powell,* 470 S.W.2d 775, 778 (Tex. App.--Fort Worth 1971, writ ref'd n.r.e.) ........ 9, 35

*Pickering v. Miles*, 477 S.W.2d 267, 270 (Tex. 1972) ............................................................... 16

*Pinchback v. Hockless*, 158 S.W.2d 997, 998 (Tex. 1942)......................................................... 40

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) .......................... 4

*Randall v. Estes,* 218 S.W.2d 338, 341 (Tex. Civ. App.--Dallas 1949, writ ref. n.r.e.) ............. 18

*Reilly v. Huff*, 335 S.W.2d 278, 278 (Tex. Civ. App.—San Antonio 1960, no writ) .................. 16

*Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) ................................................................. 21

*Rogers v. Ricane Enterprise, Inc.*, 884 S.W.2d 763, 768-9 (Tex. 1994) ..................................... 34

*Sanchez v. Telles* 960 S.W.2d 762, 767 (Tex. App.—El Paso 1997, pet. denied)....................... 11

*Sauceda v. Kerlin*, 164 S.W.3d 892, 915 (Tex. App.--Corpus Christi, 2005, no pet. h.) .............. 7

*Singleton v. Donalson*, 117 S.W.3d 516, 518 (Tex. App.--Beaumont 2003, pet. denied)........... 19

*Spiller v. Woodard*, 809 S.W.2d. 624, 629 (Tex. App. –Houston [1st Dist] 1991, no writ) .. 27, 28

*State v. Beeson*, 232 S.W.3d 265, 277 (Tex. App.–Eastland, 2007 pet. dism'd) ......................... 25

*Strong v. Garrett*, 224 S.W.2d 471, 475 (Tex. 1949) ................................................................ 25

*Talley v. Howsley*, 142 Tex. 81, 176 S.W.2d 158 (1943) ........................................................... 15

*Teal Trading and Development, LP v. Champee Springs Ranches Property Owners Ass'n,* 432 S.W.3d 381 (Tex. App.--San Antonio 2014) ......................................................................... 13

*Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 899 (Tex. 1976)................................................. 22, 27

*Thedford v. Union Oil Co. of California*, 3 S.W.3d 609, 614 (Tex. App.—Dallas 1999, pet.

denied)........................................................................................................ 23, 26, 32

*Todd v. Bruner*, 365 S.W.2d 155, 159-160 (Tex. 1963)............................................ 22, 28, 29, 32

*W.T. Waggoner Estate v. Siegler Oil Co.*, 19 S.W.2d 27, 28-29 (Tex. 1929) ............................. 36

*Wagnon v. Wagnon*, 16 S.W.2d 366, 370 (Tex. Civ. App.--Austin 1929, writ ref'd) ................. 19

*Wallace v. Pruitt,* 1 Tex. Civ. App. 231, 234, 20 S.W. 728, 728–29 (Houston 1892, no writ).... 14

*West End API Ltd. v. Rothpletz*, 732 S.W.2d 371, 377 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)
........................................................................................................................................ 38

*West End API Ltd. v. Rothpletz,* 732 S.W.2d 371, 377 (Tex. App.–Dallas,1987 writ ref'd n.r.e.)39

*Wolgamot v. Corley*, 523 S.W.2d 491, 495 (Tex. Civ. App.—Waco 1975, ref. n.r.e.)................. 31

*XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 55 (Tex. App.–Fort Worth 2011, pet. denied)....... 14

*York v. Flowers*, 872 S.W.2d 13, 15 (Tex. App.—San Antonio 1994, pet. denied)...................... 22

## Statutes

16 Tex.Admin.Code, §§ 3.5(b-d) (2013) ....................................................................................... 37

Tex. Civ. Prac. & Rem. Code Ann. § 16.021 ................................................................................ 21

Tex. Civ. Prac. & Rem. Code Ann. §16.021 ........................................................................... 34, 35

Tex. Civ. Prac. & Rem. Code Ann. §16.024 ............................................................... 21, 33, 34, 35

Tex. Civ. Prac. & Rem. Code Ann. §16.025 ........................................................................... 21, 40

Tex. Civ. Prac. & Rem. Code Ann. §16.026 ................................................................................. 21

Tex. Civ. Prac. & Rem. Code Ann. §16.003(6).............................................................................. 12

Tex. Prop. Code Ann. §11.001 ..................................................................................................... 11

Tex. Prop. Code Ann. §121.006(b)(5) ........................................................................................... 13

Tex. Prop. Code Ann. §13.001 ..................................................................................................... 11

Tex. Prop. Code Ann. §13.002 ..................................................................................................... 11

Texas Prop. Code Ann., §112.034(b) ............................................................................................ 17

## Other Authorities

44 A.L.R.2d 595............................................................................................................................. 21

**STATEMENT OF THE CASE**

Nature of the Case:        This trespass to try title suit involves title in and to an undivided 10% interest in a 290 acre tract located in Karnes County, Texas.

Trial Court:        81st District Court of Karnes County
District Court Judge Donna Rayes

Course of Proceedings:        Appellants filed their Original Petition on April 22, 2013 (CR 1:4). Appellees defended by asserting the estoppel by deed doctrine and various adverse possession limitations (CR 1:13). Appellants later amended their Original Petition to demand attorney's fees (CR 1:18). Appellees responded by filing their Amended Answer, Counter-Claims and Third Party Claims (CR 1:161). The parties later filed competing motions for summary judgment (CR 1:247, 2:403).

Trial Court Disposition:        The trial court denied Appellants' Traditional and No-Evidence Motion for Partial Summary Judgment (CR 4:1207), granted Appellees' Traditional Motion for Partial Summary Judgment (CR 4:1210), severed all of Appellees non-title counterclaims (CR 4:1203), and entered its Final Judgment as to title on August 28, 2014 (CR 4:1214).

Notice of Appeal:        Appellants perfected their appeal to this honorable Court on September 23, 2014 (CR 4:1220).

# ISSUES PRESENTED FOR REVIEW

**Issue 1**:    The trial court erred by holding that the doctrine of estoppel by deed overcomes the failure to disclose a representative capacity of a grantor who holds title both individually and as a trustee.

**Issue 2**:    The trial court erred in holding that estoppel by deed prevented Appellants, not parties to the deed, from challenging the conveyance.

**Issue 3**:    The trial court erred by holding that Irene Mika conveyed a trust interest in real property without disclosing her representative capacity in the deed.

**Issue 4**:    The trial court erred by holding that Irene Mika also conveyed an interest in real property held in trust when conveying only her individual interest.

**Issue 5**:    The trial court erred in holding that estoppel by deed allowed the grantor to convey a remainder interest in trust without disclosure of the grantor's capacity.

**Issue 6**:    The trial court erred by holding that Irene Mika also conveyed an interest in real property held in trust when conveying only her individual interest.

**Issue 7**:    The trial court erred in holding that a merger of the legal and beneficial title in the Prosper A. Mika Trust estate occurred allowing the Trustee to convey the property of the estate without disclosing her capacity.

**Issue 8**:    If the estoppel by deed doctrine does not apply, the trial court erred in holding that the three year Statute of Limitations for adverse possession, Section 16.024, Tex.Civ.Prac.&Rem. Code, applies to this case because entry by Appellees was not under color of title.

**Issue 9:**    If the estoppel by deed doctrine does not apply, the trial court erred in holding that the five year Statute of Limitations for adverse possession, Section 16.025, Tex.Civ.Prac.&Rem. Code, applies to this case because entry by Appellees was not under a registered deed conveying all of the real property.

**Issue 10**:    If the estoppel by deed doctrine does not apply, the trial court erred in holding that the ten year Statute of Limitations for adverse possession, Section 16.026, Tex.Civ.Prac.&Rem. Code, applies to this case because there has never been an ouster of Appellants.

**Issue 11**:    If the estoppel by deed doctrine does not apply, the trial court erred in vesting title to the entire tract of land in Appellees under the ten year statute of adverse possession because Appellees can only adversely possess 160 acres.

**Issue 12**:     The trial court erred in concluding that the fence surrounding the land was a designed enclosure where there is no evidence of the purpose of the fence.

**Issue 13**:     The trial court erred in concluding that the 1994 deed was an ouster of a co-tenant not yet in possession and not a party to the deed.

**Issue 14**:     The trial court erred in concluding that the statute of limitations was not tolled as to the remaindermen of the trust during the life tenancy.

**Issue 15**:     The trial court erred in concluding that Appellees did not acknowledge Appellants title in 2013 through Appellees' request for a correction deed.

**Issue 16**:     The trial court erred in excluding Appellants' Exhibit E-1 because said deed was relevant in demonstrating no mutual mistake.

**Issue 17**:     The trial court erred in excluding Appellants' Exhibits I, J, N, O and P because the oil and gas leases taken by Murphy Oil & Exploration are relevant in examining ouster and in elucidating the title defect in Appellees' claim to all of the title to the 290 acre tract.

# I. STATEMENT OF FACTS

## A. INTRODUCTION

This case concerns title to an undivided $1/10^{th}$ interest in the mineral estate and the surface estate of a 290 acre tract of land located in Karnes County, Texas ("290 acre tract"), more particularly described in Exhibit A to Appellants' Motion for Partial Summary Judgment. (CR 1: 64-66). Appellants Pamela Mika Wolf and Thomas Mika ("Mika Plaintiffs") are the children of Prosper A. Mika and Irene Mika. Appellant West 17th Resources, LLC ("West 17th") acquired oil and gas leases from Pamela Mika Wolf and Thomas Mika covering their undivided $1/10^{th}$ interest in the 290 acre tract. (CR 1:109-116).

On April 22, 2013, Appellants filed a Trespass to Try Title lawsuit against Appellees. (CR 1:4-11). After discovery, both Appellants and Appellees filed traditional motions for summary judgment. (CR 1:28-62, 247-283, CR 2:404-438). The trial court heard argument on April 10, 2014, issued a letter ruling on May 27, 2014, and issued its final judgment on August 28, 2014. (CR 4:1207-1218). Appellants filed their Notice of Appeal on September 23, 2014. (CR 4:1220-1221).

## B. OWNERSHIP OF THE REAL PROPERTY AT ISSUE

The real property interest at issue in the underlying suit and this appeal is the $1/10^{th}$ undivided interest in the 290 acre tract, which originated through an April 22, 1983 Gift Deed (recorded at Volume 536, Page 455 of the Official Records of Karnes County, Texas) from Appellants' grandmother, Mary Mika, to her husband, Felix Mika, Sr., of an undivided one-half (½) interest in the 290 acre tract.[1] (CR 1:64-66).

---

[1] Two tracts, including the 290 acre tract‒collectively called to be 298.72 acres.

Felix Mika, Sr. died testate on September 25, 1985, having never conveyed his ½ interest in the 290 acre tract (CR 1:67-69). His Last Will and Testament, probated under Cause No. 4698 in the County Court of Karnes County, Texas, devised all of his property, including his ½ interest in the 290 acre tract, in equal shares to his five sons. (CR 1:67-69). Prosper Mika, one of the five sons and the Mika Plaintiffs father, inherited an undivided 1/10[th] separate property interest in the 290 acre tract. (CR 1:67-69).

Prosper Mika died testate on July 16, 1986, having never conveyed his 1/10[th] undivided interest in the 290 acre tract. (CR 1:70-79). Prosper Mika's Last Will and Testament probated under Cause No. 51,045 in the County Court at Law of Travis County, Texas, devised all of his property to the Prosper A. Mika Trust. (CR 1:70-79). The trust provision of the Last Will and Testament appointed Irene M. Mika, Prosper's wife, as Trustee for the benefit of herself and the couple's two children, Appellants Thomas Mika and Pamela Mika Hanson (now Wolf). (CR 1:72). Pamela Mika Hanson (now Wolf) was appointed as substitute trustee. (CR 1:72). The Last Will and Testament further stipulated that upon the death of Irene M. Mika, the trust estate passes to and vests in Thomas Mika and Pamela Mika Wolf. (CR 1:70-71).

The remainder of Mary Mika's undivided ½ interest in the 290 acre tract was conveyed to Aloys Mika, et. al, by Gift Deed dated October 9, 1992 (recorded at Volume 639, Page 124 of the official records of Karnes County, Texas) (hereinafter "1992 Gift Deed"). (CR 1:80-83). This 1992 Gift Deed conveyed all of Mary Mika's title in the 290 acre tract. (CR 1:80-83). Irene Mika, the wife of Prosper Mika and mother of Appellants Pamela Mika Wolf and Thomas Mika, individually received an undivided 1/6 interest - being one third of Mary Mika's one half interest. (CR 1:80-82).

2

In a deed dated December 15, 1994 but effective December 31, 1994 (recorded in Volume 668, Page 398 of the Official Records of Karnes County, Texas) (CR 1:84-92) (hereinafter "1994 Deed"), Aloys Mika, Irene Mika, Joyce M. Pitzer, Arthur R. Mika, Dennis C. Mika, Virginia S. DuBose, Leslie B. Mika, Beverley J. Mika, Charlene A. Mika, Dolores F. Mika, Evelyn R. Mika, Germaine C. Mika, Norma L. Mika, Stephanie R. Mika, and Jacqueline G. Mika, the purported heirs of Felix Mika, Sr. and Mary Mika, conveyed the 290 acre tract to Lucian A. Pawelek and his wife Carleen J. Pawelek. (CR 1:84-92, App. A). Irene M. Mika executed the December 15, 1994 deed as a Grantor in her individual capacity, but *not* as Trustee of the Prosper A. Mika Trust. (CR 1:87, App. A). Thus, she conveyed the 1/6 undivided interest she acquired from Mary Mika through the 1992 Gift Deed - *not* the 1/10th undivided interest in the 290 acre tract devised under the Will of Prosper Mika to the Prosper A. Mika Trust. (CR 1:84-92, App. A)

Irene M. Mika died on February 4, 2003 without having conveyed any interest in the 290 acre tract in her capacity as Trustee of the Prosper A. Mika Trust. (CR 1:93). As a result, all property in the Prosper A. Mika Trust at the time of Irene Mika's death, including the 1/10th undivided interest in the 290 acre tract, passed to Thomas Mika and Pamela Mika Wolf, in equal shares. (CR 1:70).

## C.   APPELLEES CLAIM TO THE REAL PROPERTY AT ISSUE

The Appellees claim to hold an undivided 100% interest in the 290 acre tract through the 1994 Deed. (CR 2:404-405). Appellees cite to language in the 1994 Deed referring to "all" of the interest. (CR 2:405). On April 1, 2009, Appellees executed an Oil, Gas, and Mineral Lease covering the 290 acre tract in favor of Murphy Exploration & Production

3

Company- USA ("Murphy") (recorded by a Memorandum of Oil, Gas, and Mineral Lease in Volume 899, Page 776 of the Official Records of Karnes County, Texas). (CR 1:94-95, CR 2:117-128). The 290 acre tract has been included in the Murphy Exploration & Production Co. Whitfield West Unit and the Murphy Exploration & Production Co. Whitfield East Unit. (CR 1:135-136, 142-143). Murphy has drilled producing oil and gas wells on and within these two units. (CR 1:133-134, 138-141, 144-149).

On February 23, 2012, Appellees' attorney sent a letter to Appellant, Pamela Wolf. (CR 1:96). The letter specifically suggests that Wolf's mother, Irene Mika, "forgot" to sign the 1994 Deed in her capacity as Trustee of the Prosper A. Mika Trust. (CR 1:96, App. A). Appellees acknowledged by and through their attorney and agent that they did not have "clear title" to the entirety of the 290 acre tract and requested Pamela Mika Wolf and Thomas Mika to execute a Special Warranty Deed granting their interests in the 290 acre tract to Appellees. (CR 1:96).

## II.     SUMMARY OF THE ARGUMENT

### A.     STANDARD OF REVIEW

The review of competing motions for summary judgment is a *de novo* review. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, as here, this Court should consider the summary judgment evidence presented by both sides, determine all questions presented, and if, this Court determines that the trial court erred, render the judgment the trial court should have rendered. See *FM Properties. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Appellants submit that there are no material issues of fact and that Appellants are entitled

4

to judgment as a matter of law vesting title to an undivided 10% of the 290 acre tract in Appellants. In the alternative, there are material issues of fact regarding Appellees' claims to title to the 290 acre tract and the trial court's final judgment must be reversed and remanded for further proceedings.

Appellees asserted multiple claims including (1) estoppel by deed, (2) merger of the legal and beneficial interests under a testamentary trust, (3) adverse possession title under the 3 year statute, (4) adverse possession title under the 5 year statute, and (5) adverse possession title under the 10 year statute. (CR 2:404-436). Since Appellants have demonstrated a clear, unbroken chain of title from Mary Mika, Appellants must address each of these claims to demonstrate their inapplicability - or inadequacy - to defeat Appellants' claim to title.

## B. ESTOPPEL BY DEED DOES NOT APPLY

The estoppel by deed doctrine does not apply to Appellants' claims because Appellants were not parties to the 1994 Deed. (CR 1:84-92, App. A). Appellants were not in "estoppel by deed" privity with Irene Mika, their mother, when she executed the 1994 Deed individually. Estoppel by deed has never been applied in Texas to cure a missing capacity defect. Irene Mika did not sign as trustee - she only signed individually. (CR 1:87, App. A). Thus, the trust interest comprising an undivided $1/10^{th}$ was not conveyed by the 1994 Deed.

## C. THE LEGAL AND BENEFICIAL INTERESTS IN THE TRUST DID NOT MERGE

The legal and beneficial interests arising upon the creation of a trust may be merged when the trustee and beneficiary are united. In that event, the trustee may freely deal with the corpus of the trust. Appellees urge this argument to validate the 1994 Deed. However, merger never occurred. Irene Mika, the trustee of the Prosper A. Mika Trust, was a beneficiary only for

5

life and the legal and entire beneficial interests were never united.

**D.      APPELLEES CANNOT CLAIM TITLE BY ADVERSE POSSESSION**

Since Appellants are co-tenants with Appellees in the 290 acre tract, the usual indices of adverse possession must be augmented with an ouster.   Exclusive, continuous, open and notorious possession is not inconsistent with rights of a co-tenant.   The possession does not become adverse until there is an ouster.

If estoppel by deed does not apply, Appellees cannot claim under the 3 year statute because they have no color of title or a muniment of title not lacking in fairness.  The 1994 Deed does not convey Appellants' 1/10th undivided interest in the 290 acre tract.  Therefore, no title to the 1/10th undivided interest passed by and through the 1994 Deed and the 3 year statute is inapplicable.

If estoppel by deed does not apply, Appellees cannot claim under the 5 year statute because they did not enter possession of Appellants' undivided 1/10th interest in the 290 acre tract under a registered deed.  The 1994 Deed does not convey Appellants' 1/10th undivided interest in the 290 acre tract.  In the absence of this element, the 5 year statute is inapplicable.

If estoppel by deed does not apply, Appellees must claim under the 10 year statute of adverse possession because they have no title document.  Appellees cannot prevail under the 10 year statute of adverse possession because they can show no ouster followed by 10 years of continuous, open, exclusive, adverse and notorious possession of the 290 acre tract. In the alternative, if this Honorable Court finds that the 10 year statute of limitations does apply, then Appellees can only claim 160 acres. Further, in February 2012, Appellees acknowledged title in Appellants and interrupted the running of limitations, if any, created by the 1994 Deed after

6

February 4, 2003, the date full possession vested in Appellants.

## III.     ARGUMENT

**A.     ESTOPPEL BY DEED DOES NOT APPLY**

Appellees argue that the 1994 Deed conveyed all of the ownership in the 290 acre tract. (CR 2:405).  Appellees base this argument upon the doctrine of estoppel by deed.  Estoppel by deed stands for the general proposition that all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law. *Sauceda v. Kerlin*, 164 S.W.3d 892, 915 (Tex. App.--Corpus Christi, 2005, no pet. h.), *Freeman v. Stephens Prod. Co.*, 171 S.W.3d 651, 654 (Tex. App.--Corpus Christi 2005, pet. denied). In their Motion for Partial Summary Judgment, Appellees state: "The Mika Plaintiffs are effectively estopped to deny that "all" of the Subject Property passed to Paweleks under the (1994 Deed)." (CR 2:420).  Appellees argue that the 1994 Deed contained all of the individuals holding title to the 290 acre tract, thus ALL of the titleholders conveyed ALL of the interest. (CR 2:410). While it is true that the fifteen grantors in the 1994 Deed were all of the heirs of Mary Mika and Felix Mika, the fifteen grantors were NOT all of the owners of the 290 acre tract.  Thus, Appellees legal conclusions that the 1994 Deed conveyed "Any" and "All" rights to the property is correct **only** as to those grantors signing in the capacity in which they executed the Deed.

> *1.     The trial court erred in holding that doctrine of estoppel by deed overcomes the failure to disclose the representative capacity of a grantor holding title as both an individual and trustee.*

Irene Mika owned a 1/6th undivided interest individually in the 290 acre tract, thru the

7

1992 Gift Deed, and she was also the trustee of The Prosper A. Mika trust, a trust owning a 1/10[th] undivided interest in the 290 acre tract. (CR 1:70-83). Irene Mika was a party to the 1994 Deed but her trustee capacity was not listed. (CR 1:84). The Prosper A. Mika Trust was not a party to the 1994 Deed. (CR 1:84, App. A). Irene Mika signed the conveyance individually and did not include any capacity description or trustee identification. (CR 1:87, App. A).

2.      *The trial court erred in holding that Irene Mika conveyed an interest in real property held in trust, despite no disclosure of her representative capacity in the 1994 Deed.*

Within the four corners of the 1994 Deed, there is no conveyance of the 1/10[th] undivided interest owned by the Prosper A. Mika Trust. (CR 1:84-92, App. A). Irene Mika did not sign in or disclose her capacity as Trustee of the Prosper A. Mika Trust to convey the 1/10[th] interest, she only signed in her individual capacity conveying her 1/6th interest. (CR 1:87, App. A). Appellees argue that even though Irene Mika did not sign in her representative capacity, her signature individually included her capacity as trustee despite there being no mention of "trustee" or "trust." (CR 2:416-417).

Appellants contend that the law in Texas is very clear on this subject. In *Taylor v. Guillory*, 439 S.W.2d 362 (Tex. Civ. App.--Houston [1[st] Dist.] 1969, n.w.h.), a trespass to try title case, the Court considered evidence presented by the defendants that the deed at issue in the case failed to convey title because it did not identify the proper capacity of the signators. The Court held that:

> "The deed which was identified as plaintiffs' exhibit 2 is an indispensable link in their chain of title, and we presume that the trial court found that those who executed it as grantors lacked authority to act for the trustees or to act as trustees for the church. In view of such presumed finding, it is well settled that appellants

8

were not entitled to recover the land."

*Id.* at 364.

Additionally, in *O'Neil v. Powell*, 470 S.W.2d 775, 778 (Tex. App.--Fort Worth 1971, writ ref'd n.r.e.), the Court held:

> "It is also contended that Grace Irene Powell, as the independent executrix and trustee under the will of Guy E. Powell, has full power and authority to convey the land in question. This may be true, however, she signed the contract in her *individual capacity* and was sued herein in her individual capacity. She cannot be compelled to execute a deed in any other capacity. *A deed signed by her in her individual capacity would not pass title.*" (emphasis added).

Thus, Irene Mika only conveyed her individual interest. She did not convey the Prosper A. Mika Trust's 1/10th interest in the 290 acre tract. The 1/10th undivided interest owned by the Prosper A. Mika Trust was never conveyed to Appellees.

The failure to disclose Irene Mika's capacity as trustee in the 1994 Deed resulted in the non-conveyance of the undivided 1/10th interest in the 290 acre tract held in trust. Title to the undivided 1/10th interest in the 290 acre tract has been in the trust with Appellants as vested remaindermen from the formation of the Prosper A. Mika Testamentary Trust. Upon Irene Mika's death on February 4, 2003, Appellants became fully vested.

### 3. Appellees are not Without Fault

Appellees had a duty to review title to the 290 acre tract and determine the title holders in and to the 290 acre tract. In *Westland Oil Development Corp., v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982), the Texas Supreme Court held that:

> "…a purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims. [emphasis in the original].

9

The rationale of the rule is that *any* description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained. *Id.* (emphasis in the original).

The 1994 Deed refers to the Gift Deed from Mary Mika to Felix Mika and provides the volume and page where it can be located. The Gift Deed leads to the Probate of Felix Mika and the interest of Prosper A. Mika. The 1994 Deed did not convey the $1/10^{th}$ interest of the Prosper A. Mika Trust. The Paweleks have no claim to this interest as they have never been deeded the $1/10^{th}$ interest. It is correct to surmise that the parties in the 1994 Deed conveyed "all the rights" they owned within the capacity in which they executed the 1994 Deed. However, Appellees cannot produce any conveyance into Appellees from Prosper Mika, Irene Mika as Trustee for the Prosper A. Mika Trust, Pamela Mika Wolf, or Thomas Mika.

The Appellees had a duty to investigate if there were additional parties who had an ownership interest in the subject property. The duty did not belong to the 15 Mika Family Grantors to research the real property records. The duty belonged solely to Appellees and they failed to conduct their due diligence. Appellants should not be dispossessed by Appellees' counsel's failure to follow the law as expressed in *Westland*.

### 4.    *The Trial Court Erred in Excluding Appellants' Exhibit E-1*

Further, the trial court struck one of Appellants' exhibits which demonstrate that the omission of Irene Mika's capacity as trustee was not a "mistake." Appellants attached a 1992 deed pre-dating the 1994 Deed as Exhibit E-1 to their Amended Motion for Partial Summary

Judgment.[2] This deed clearly shows Irene Mika's capacity as "trustee." Appellees filed a Motion to Strike this evidence based upon relevance. This deed is relevant to the issue of mistake and it should not have been stricken.

### 5. *Recording Statutes and Acknowledgement Statutes Support Appellants' Position*

Under Tex. Prop. Code Ann. §11.001, to be effectively recorded, an instrument relating to real property must be eligible for recording and must be recorded in the county in which a part of the property is located. The recording laws in Texas were meant to protect innocent purchasers and creditors without notice of the prior transfer from being injured or prejudiced by their lack of knowledge of the competing claim. *Sanchez v. Telles* 960 S.W.2d 762, 767 (Tex. App.—El Paso 1997, pet. denied). The 1992 Gift Deed from Mary Mika into Irene Mika conveying a 1/6 interest was properly recorded in Karnes County at Volume 639, Page 124 on February 25, 1993. (CR 1:80-83) The Probate of Felix Mika conveying his 1/10th interest into the Prosper A. Mika was also recorded in Karnes County, Texas in Volume 100, Page 468 on August 15, 1989. (CR 1:67-69) Both conveyances were recorded prior to the 1994 Deed, thus creating constructive notice for all later purchasers that others had an ownership interest in the subject property.

The recording statutes are designed to provide notice to avoid mistakes and confusion. Tex. Prop. Code Ann. §13.002 states an instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument; and (2) subject to inspection by the public. Appellees only had to look in the real property records to know that Prosper Mika owned a 1/10th interest in the subject property, see also Tex. Prop. Code Ann. §13.001.

---

2 App. B

11

The Appellees only had to look at the real property records of Karnes County to see that Felix Mika (the recipient of one half of the 290 acre tract from his wife, Mary Mika) left a 1/10th undivided interest to his son, Prosper Mika. Had the Appellees taken the time to review the real property records, they would have known to seek a conveyance from Irene Mika as the Trustee of the Prosper A. Mika Trust's 1/10th undivided interest. The additional parties that Appellees sought to bring into the litigation,[3] the Grantors, did not have a duty to review the real property records, they were only conveying that which they owned at the time of the 1994 Deed. There is no mutual mistake of fact.

Further, the 1994 Deed was recorded on February 1, 1995. If Appellees are claiming Irene Mika conveyed the 1/10th interest of Prosper Mika at the time of the execution of the 1994 Deed, then a defect would exist in Irene Mika's signature and defendants would only have two years to correct the defect.

> Tex. Civ. Prac. & Rem. Code Ann. §16.003(6) and (7) provides, in part, that:
>
> A person with a right of action for the recovery of real property or an interest in real property conveyed by an instrument with **one** of the following defects must bring suit not later than **two** years (emphasis added) **after the day the instrument was filed for record** with the county clerk or the county where the real property is located:
> ...
> (6) acknowledgment of the instrument in an individual, rather than a representative or official, capacity;
> (7) execution of the instrument by a trustee without record of the authority of the trustee or proof of the facts recited in the instrument. (Emphasis added.)

According to the referenced statute, Appellees would have had to claim the 1/10th interest owned by the Prosper A. Mika Trust by January 31, 1997. Appellees are now forever barred by the statute of limitations from making claims that the 1/10th interest owned by Prosper A. Mika

---

[3] See November 1, 2013 Counter Claims, Third Party Claims and First Amended Answer, November 8, 2013 Motion for Leave to File Third Party Claims filed by Appellees in this litigation.

Trust was somehow included in the 1994 Deed when there is no evidence, either in word, in signature, or within the acknowledgment that there existed an intent to convey the 1/10[th] undivided interest owned by the Prosper A. Mika Trust into the Appellees. Superior title to the 1/10[th] undivided interest is held by Pamela Mika Wolf and Thomas Mika by virtue of their father's ownership interest passing to them and the documents recorded prior in time and therefore superior to the 1994 Deed to the Paweleks.

With regard to the acknowledgment in the 1994 Deed (CR 1:84-92), Tex. Prop. Code Ann. §121.006(b)(5) provides, in part, that:

> In the case of a person acknowledging as a...trustee, ...that the person personally appeared before the officer taking the acknowledgment and acknowledged executing the instrument by proper authority in the capacity stated and for the purposes and consideration expressed in it.

Irene Mika did not sign in the capacity as Trustee for the Prosper A. Mika Trust, and the Acknowledgement in the 1994 Deed fails to comply with Tex. Prop. Code Ann. §121.006(b)(5); therefore, she did not convey the 1/10[th] undivided interest owned by the Prosper A. Mika Trust.

6. ***The court erred in holding that estoppel by deed allowed the grantor to convey a remainder interest in trust without the disclosure of the grantor's capacity.***

Additionally, the Appellees cannot prove estoppel by deed against Appellants because Irene Mika was the Trustee of the Prosper A. Mika Trust and never conveyed the 1/10[th] interest owned by Trust. The Trust was the sole beneficiary of the entire estate of Prosper Mika and Irene Mika only retained a life estate, with Appellants as remaindermen. There are no reported cases applying estoppel by deed to the trust situation and capacity issue presented in this appeal. Appellees cite no such authority and Appellants have been unable to locate any. *See Teal Trading and Development, LP v. Champee Springs Ranches Property Owners Ass'n,* 432 S.W.3d

13

381 (Tex. App.--San Antonio 2014) (restrictive covenants, no capacity issue); *Bradshaw v. Steadfast Financial, L.L.C.* 395 S.W.3d 348, 352-53 (Tex. App.--Fort Worth 2013) (fraction of royalty or fractional royalty case, no capacity issue); *Nash v. Beckett,* 365 S.W.3d 131, 143 (Tex. App.–Texarkana 2012, pet. denied) (no claim under the deed, no capacity issue); *Deutsche Bank Nat. Trust Co. v. Stockdick Land Co.,* 367 S.W.3d 308, 311-312 (Tex.App.–Houston [14th Dist.] 2012, pet. denied) (quitclaim, no capacity issue); *Hamrick v. Ward* 359 S.W.3d 770, 785-786 (Tex. App.--Houston [14th Dist.] 2011), rev'd, 446 S.W.3d 377 (Tex. 2014) (claimed inapplicable because claims do not arise out of deed, no capacity issue).

7. ***The court erred in holding that estoppel by deed prevented Appellants, who were not parties to the 1994 Deed, from challenging the conveyance.***

Appellees cite to *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 55 (Tex. App.–Fort Worth 2011, pet. denied) for an explication of the estoppel by deed doctrine. The Fort Worth Court of Appeals stated that:

> …all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law." *Freeman,* 171 S.W.3d 651, 654 (Tex. App.--Corpus Christi 2005, pet. denied) (quoting *Wallace v. Pruitt,* 1 Tex. Civ. App. 231, 234, 20 S.W. 728, 728–29 (Houston 1892, no writ)); *see Angell v. Bailey,* 225 S.W.3d 834, 841-42 (Tex. App.—El Paso 2007, no pet.).

The estoppel by deed doctrine only applies to the *parties* to the deed. Neither Thomas Mika nor Pamela Mika Wolf were parties to the 1994 Deed. Thus, the doctrine of estoppel by deed is inapplicable to them. Further, while estoppel by deed is applicable to privies, as described above, Thomas and Pamela Mika already owned *their own interest* in the land themselves, as *vested remaindermen* to the undivided $1/10^{th}$ interest. *See Bagby v. Bredthauer*, 627 S.W.2d 190, 194 (Tex. App.--Austin 1981, no writ) (discussing remainders as vested at their

14

creation in reference to the Rule Against Perpetuities). They did not have a mere future interest as a privy in blood, or by privy of estate. *See Forister v. Coleman*, 418 S.W.2d 550, 559 (Tex. Civ App.--Austin, 1967):

> "When the term `privity' is considered with respect to its relationship to estates in realty, it must be understood that it implies succession, that is, successive ownership or possession of the identical estate in the same property, and one who is in privity with another with respect to an estate stands in exactly the same position with respect thereto as did his predecessor in title; he takes the estate with all the burdens and benefits attending it."

Thomas Mika and Pamela Mika Wolf would have privity of estate as to their mother's 1/6th individual interest in the event Thomas Mika and Pamela Mika Wolf challenged their mother's conveyance of her 1/6th individual interest. However, there is no privity to connect the Prosper A. Mika Trust and the grantors in the 1994 Deed because the life estate and remainder do not "stand in exactly the same position…with all the burdens and benefits…".

This result is further supported by the general rule in Texas that recitals in a deed are binding only when the parties or their privies thereto claim under such deed. *Lambe v. Glasscock*, 360 S.W.2d 169, 172-173 (Tex. Civ. App.--San Antonio 1962, writ ref'd n.r.e.); *Talley* v. *Howsley*, 142 Tex. 81, 176 S.W.2d 158 (1943); *Robert Oil Corp. v. Jones*, 23 S.W.2d 472, 479 (Tex. Civ. App.--El Paso, 1929, writ dism'd); *Haley v. Sabine Valley Timber & Lumber Co.*, 150 S.W. 596 (Tex. Civ. App.—Texarkana 1912, writ ref'd). Pamela Mika Wolf and Thomas Mika do not claim any interest under or out of the 1994 Deed. Quite to the contrary, they claim that their chain of title does not include and is not affected by the 1994 Deed. Therefore, the doctrine of estoppel by deed does not preclude the Appellants from asserting their title to an undivided 1/10th of the 290 acre tract. This is so because Pamela Mika

Wolf and Thomas Mika were vested remaindermen. Texas law favors a construction that allows vesting at the earliest possible time, and Texas courts will not construe a remainder as contingent when it can reasonably be taken as vested. *Chadwick v. Bristow*, 146 Tex. 481, 208 S.W.2d 888, 891 (1948). *See Pickering v. Miles*, 477 S.W.2d 267, 270 (Tex. 1972). It is well settled that a remainder is vested when there is a person in being at the creation of the interest who would have a right to immediate possession upon termination of the intermediate estate. *Chadwick,* 208 S.W.2d 888, 891; *Bradford v. Rain*, 562 S.W.2d 514, 518 (Tex. Civ. App.—Texarkana 1978, no writ); *Reilly v. Huff*, 335 S.W.2d 278, 278 (Tex. Civ. App.—San Antonio 1960, no writ).

The Appellants were vested with their remainder to the 1/10th undivided interest and did not join in the execution of the 1994 Deed or the underlying Real Estate Sales Contract. (CR 1:84-92, App. A), (CR 3:674-723). Nevertheless, the Appellees are attempting to acquire this 1/10th interest by claiming the Appellants are estopped due to language in a deed to which the Appellants were not parties. It is well settled that title to real property cannot be acquired by estoppel, especially where it is alleged to flow from deeds and transactions to which the party against whom estoppel is claimed, i.e. Thomas Mika and Pamela Mika Wolf in this instance, was not a party to the deed. *Kuykendall v. Spiller*, 299 S.W. 522 (Tex. Civ. App—Fort Worth 1927, writ ref'd, 299 S.W. 522); *Gilcrease Oil Co. v. Cosby*, 132 F.2d 790, 793 (5th Cir. 1943).

A warranty in a deed only binds the grantor's heirs to the extent of the property received by them from the grantor's estate. *Cleveland v. Smith,* 156 S.W. 247, 250 (Tex. 1913). Additionally, the heir of a trustee-grantor is not estopped to acquire and assert against a grantee a title to the land superior to that acquired by the grantee. *Id*. In this case, Thomas Mika and Pamela Mika Wolf already had title as vested remaindermen. Since the 1994 Deed post-dates

16

the 1986 probate and does not convey the 1/10 interest, estoppel by deed does not apply to Appellants.

The Appellees have further cited the rule that "[A] party to a contract or deed may not, at a later date, take a position inconsistent with its provisions, to the prejudice of another." *Estate of Trevino v. Melton*, 04-07-00654-CV, 2009 WL 891881, at 5 (Tex. App.--San Antonio Apr. 3, 2009, pet. denied) (mem. op.).  Again, however, this rule is inapplicable because Thomas Mika and Pamela Mika Wolf were not a party or in privity to the Real Estate Sales Contract (CR 3:674-723) or the 1994 Deed (CR 1:84-92, App. A).  Additionally, Appellants do not claim their interest by or through Irene Mika, but instead owned their interest as vested remaindermen under the Will of their father.

**B.     THE TRIAL COURT ERRED IN HOLDING THAT A MERGER OF THE LEGAL AND BENEFICIAL TITLE IN THE PROSPER A. MIKA TRUST ESTATE OCCURRED**

Appellees argue that Irene Mika was the sole beneficiary of the trust and was the trustee of the trust, and that under Texas law, a merger of title occurred so that Irene Mika conveyed the trust interest as well as her individual interest. Appellees have also urged a concept akin to estoppel by deed in arguing that the legal title and beneficial title of the Prosper A. Mika Trust merged in Irene Mika and that her signature on the 1994 Deed effected a conveyance of the merged title.  This argument is incorrect. Under Texas Prop. Code Ann., §112.034(b), merger cannot apply in this situation because "a trust terminates if the legal title to the trust property and **all** equitable interest in the trust become united in **one** person." (emphasis added).  All equitable interest did not become united in Irene Mika.  The remainder interests in Appellants were never conveyed to Irene Mika.

17

Appellees misconstrue the trust provision of Prosper A. Mika's Last Will and Testament. Appellees claim that Irene Mika was the sole beneficiary of the trust. As such, the argument is that her conveyance, individually, of the 290 acre tract in the 1994 Deed includes the interest held in trust in the 290 acre tract. However, Irene Mika was not the sole beneficiary. The exact wording of Prosper Mika's Will states the following:

> "In the event my wife, Irene M. Mika, shall survive me, I bequeath and devise my entire estate **in trust** unto the Trustee, or Substitute Trustee, hereinafter appointed.
>
> 1. This Trust shall be known as the Prosper A. Mika, Trust.
>
> 2. I direct that my said **Trustee shall hold and reinvest the property in the Trust Estate** in accordance with the terms hereof, **shall collect and receive the income therefrom, and after paying all expenses incident to the management of the trust shall pay all of the net income from the said trust to my beloved wife, IRENE M. MIKA, for so long as she shall live** in as nearly equal monthly installments as practical.
>
> 3. Upon the death of my wife, IRENE M. MIKA, the trust estate shall pass to and vest in my children, THOMAS ANTHONY MIKA AND PAMELA A MIKA HANSON, in equal shares..." (emphasis added) (CR 1:70).

The trust clearly sets up a life estate in Irene Mika with a remainder in the Appellants. Appellees' claims to the contrary misread the plain language of the Will. The intent is to create the trust to care for Irene Mika during her lifetime and upon the death of Irene Mika, the trust assets pass to the individual Appellants free of the trust.

By virtue of the express words and intent of the testamentary trust, a merger of title did not occur and cannot occur because all equitable interest in the trust did not become united in one person. It is quite to the contrary. There is no sole beneficiary as Appellees have stated. The intent is clear that the beneficiaries were Irene Mika during her lifetime and upon her death to Pamela Mika Wolf and Thomas Mika. Merger did not occur. When the remaindermen have a clear, vested indefeasible interest in the property, a life-tenant has the duty to preserve and

18

protect the property over which the life-tenant has fiduciary control. *Randall v. Estes,* 218 S.W.2d 338, 341 (Tex. Civ. App.--Dallas 1949, writ ref. n.r.e.).

A "life estate" is created by a deed or will where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life. *Financial Freedom Sr. Funding Corp. v. Horrocks*, 294 S.W.3d 749 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Where property is granted or devised to an individual during her lifetime or as long as she may live, she is said to take a life estate and to be the life tenant of the property." A life estate is created by language to the effect that the taker is to have the property "**so long as he may live**." *Wagnon v. Wagnon*, 16 S.W.2d 366, 370 (Tex. Civ. App.--Austin 1929, writ ref'd); ("during his life"); *Harrison v. Foote*, 9 Tex. Civ. App. 576, 30 S.W. 838 (1895)); ("for his life"); *Cochran v. Cochran*, 43 Tex. Civ. App. 259, 95 S.W. 731 (1906, no writ); (devise to a woman during widowhood); *Haring v. Shelton*, 114 S.W. 389, 391 (Tex. Civ. App. 1908), aff'd 103 Tex. 10, 122 S.W. 13 (1909) (bequest of sum annually).

The Last Will & Testament of Prosper A. Mika ("Will") creates a life estate in Irene Mika in the testamentary trust and a remainder in his children, Thomas Mika and Pamela Mika Wolf. (CR 1:70-79). Generally, a life estate tenant is entitled to all profits or income accruing during his or her tenancy but cannot dispose of the corpus of the estate unless he or she is expressly authorized to do so. *See Singleton v. Donalson*, 117 S.W.3d 516, 518 (Tex. App.--Beaumont 2003, pet. denied) ; *Hudspeth v. Hudspeth*, 756 S.W.2d 29, 31 (Tex. App.--San Antonio 1988, writ denied). The Will provides that Irene Mika is to have the "income" from the trust assets. (CR 1:70). This creates a life estate. Texas does not recognize an implied power to dispose of

the corpus by the life tenant of an express life estate. *Hobson v. Shelton*, 302 S.W.2d 268 (Tex. Civ. App.--Waco 1957, writ ref'd n.r.e.).

The Will, in paragraph VI.C. states that the Executrix and Trustee shall have the power to:

> sell, exchange, assign, transfer and convey any security or property, real or personal, held in my estate or any trust fund, at public or private sale, at such time and price and upon such terms and conditions (including credit) as such Executrix or Trustee may determine. (CR 1:73).

However, the Will also states in Section IV, that:

> It is specifically provided that none of my property, nor the increase, income or proceeds thereof, *nor the equitable title therein*, while same is held by said Trustee, in trust, shall be [...] in any manner affected by the transfer, assignment, conveyances, sale or encumbrances, voluntary or involuntary, by the said beneficiaries named herein, nor shall they have the right or power to transfer, assign, convey, sell, or encumber the same or any part thereof. (CR 1:71-72).

Irene Mika had the power of sale when acting as trustee, but she did not sell any of the 1/10th undivided interest in the 290 acre tract because her capacity as Trustee was not described in the 1994 Deed. Even if Irene Mika did convey her interest, the 1994 Deed conveyed nothing but her life estate portion, and could not transfer the interest of Thomas Mika and Pamela Mika Wolf.

Further, since a merger of the legal and beneficial interests under the Will did not occur, Appellees' arguments and contentions that Irene Mika transferred the Prosper A. Mika Trust ownership interest in the 290 acre tract fail. It is wishful thinking.

Appellees' oil and gas lessee, Murphy Exploration & Production Company ("Murphy"), did not succumb to this wishful thinking. Murphy noted a question as to Appellees' title to the entire mineral estate and Murphy's title attorney made a requirement for corrective action to

20

remedy this title defect. (CR 2:321). Appellees attempt to "sugar coat" the magnitude of this independent, third party observation of the defect in Appellees' title. Appellees attempt to minimize this defect by describing the defect as a "cloud on title" and the warranty deed required as a "corrective" deed.

## C. COTENANCY AND ADVERSE POSSESSION

In the alternative, Appellees seek to establish title to the 290 acre tract by adverse possession. (CR 2:421-436). Appellees have the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). Appellees have not met this burden and it is Appellants' contention this burden cannot be met for the reasons described below.

### 1. *General Elements of Appellees' Claims*

To prevail on *any* of their claims for Adverse Possession, Appellees must prove the following general elements: (1) a visible appropriation and possession of the land, sufficient to give notice to the record title holder that its possession is (2) peaceable, (3) under a claim of right hostile to the title holder's claim, and (4) that continues for the duration specified in the applicable statute. Tex. Civ. Prac. & Rem. Code Ann. § 16.021, 16.024, 16.025, and Tex. Civ. Prac. & Rem. Code Ann. §16.026; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 756 (Tex. 2003). Where, as is the case here, a cotenancy is involved, several additional elements apply as discussed below.

### 2. *Appellants Can Disprove Ouster and Repudiation, and Notice Thereof*

In order to establish any of their claims of adverse possession, Appellees must establish additional requirements because Appellants and Appellees are co-tenants. Appellants and

21

Appellees are co-tenants because they each share current, rather than future, ownership of the 290 acre tract in undivided interests. *See* 44 A.L.R.2d 595. Because the parties are co-tenants, Appellees' entry upon the 290 acre tract was presumed permissive in nature, which negates the requisite element of hostility. S*ee, e.g., Killough v. Hinds*, 338 S.W.2d 707, 709 (Tex. 1960).

After a permissive entry, Appellees can only prevail by showing two elements in addition to those that would otherwise be required: (1) clear ouster of the co-tenants and repudiation of the former permissive relationship so that a new, adverse, claim is created (*see Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 899 (Tex. 1976); *Todd v. Bruner*, 365 S.W.2d 155, 159-160 (Tex. 1963); *York v. Flowers*, 872 S.W.2d 13, 15 (Tex. App.—San Antonio 1994, pet. denied)), and (2) the claimant must show that either actual or constructive notice of this repudiation has been provided to the record owner, and the date on which this notice was provided. *See Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 194-195 (Tex. 2003).

### 3. No 'clear ouster and repudiation'

Appellees have not effectuated the requisite 'clear ouster and repudiation' of the Appellants title. The ouster standard that applies to cotenants differs from the adverse possession requirement courts impose between strangers because cotenants have rights to ownership and use of the property a stranger would not have. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011). "Ouster" is defined as "unequivocal, unmistakable, and hostile acts the possessor took to disseize other cotenants." *Id*. Under Texas law, not even the fact that one cotenant has possession of co-tenancy property and pays the taxes and insurance on the property is adequate to establish ouster or repudiation. *See Todd v. Bruner*, 365 S.W.2d 155, 159-160 ; *see also Amador v. Berrospe*, 961 S.W.2d 205, 208-209 (Tex. App.—Houston [1st

22

Dist.] 1996, writ denied) (holding that a brother-in-law who owned 7/8 of property did not acquire from co-tenant the other 1/8 by adverse possession by mere payment of taxes and insurance on the property, because same did not constitute ouster or repudiation of title).

Appellees have plead an ouster was initiated on December 31, 1994, being the recording date of the 1994 Deed. Appellants disagree with this date and refer instead to April 1, 2009, being the date the Appellees executed an Oil, Gas, and Mineral Lease, as the first date of any alleged ouster and repudiation. (CR 1:117-128).

### 4. *1994 Deed was not an Ouster*

Texas courts have found "ouster" by one cotenant where he purports to convey the entire property to a third party who enters into possession under a recorded deed. *Thedford v. Union Oil Co. of California*, 3 S.W.3d 609, 614 (Tex. App.—Dallas 1999, pet. denied). Appellees argue that the 1994 Deed constituted an ouster. (CR 2:430-431). However, the case at hand is distinguishable from that of *Thedford*, because Irene Mika, herself, held two distinct interests in two distinct capacities, and only conveyed one. *Cf. id.* Therefore, in order to prove the 1994 Deed constituted an ouster, the Appellees would have to prove that Irene Mika conveyed both her individual interest and the trust interest. As discussed above, this did not occur and no ouster is shown.

Furthermore, reasonable due diligence in an examination of the record would reveal that Irene Mika held two distinct interests in the 290 acre tract in two distinct capacities. Therefore, even when viewing the transaction from the viewpoint of the grantee in the 1994 Deed, it cannot be said that Irene Mika purported to convey the interest of the Prosper A. Mika Trust. In other

23

words, the 1994 Deed did not constitute ouster, because Irene Mika did not purport to convey – or convey - the Prosper A. Mika Trust's interest in the 290 acre tract.

Appellees argue that the 1994 Deed was a constructive ouster of the individual Appellants. (CR 2:430-431). There could be no constructive ouster by the 1994 Deed because the Appellants/remaindermen were not in possession of the trust assets until the death of their mother. The $1/10^{th}$ undivided interest held by the Prosper A. Mika Trust in the 290 acre tract was a life estate with a remainder interest. No ouster of the remaindermen could occur until their interest became possessory. Irene Mika died on February 4, 2003. (CR 1:93). At that point in time, Pamela Mika Wolf and Thomas Mika became vested with the full fee simple absolute title to the $1/10^{th}$ undivided interest in the 290 acre tract. (CR 1:70).

There are certain well-established rules concerning the property rights of a life tenant vis-a-vis the remaindermen. A life tenant is entitled to exclusive possession and control of the property comprising the life estate and the remaindermen are not entitled to possession thereof until the life estate terminates. *Moore v. Reed,* 668 S.W.2d 847, 849 (Tex.App.─El Paso 1984, writ ref'd n.r.e.); *Collins v. New,* 558 S.W.2d 108, 112 (Tex. Civ. App.─Corpus Christi 1977).

Such a life tenant, in the absence of restrictions or limitations in the instrument creating the life estate, is entitled to everything in the nature of revenue or income produced by the property during such a tenancy. *Hobson v. Shelton,* 302 S.W.2d 268, 272; *Bailey v. Bailey,* 212 S.W.2d 189, 191 (Tex. Civ. App.─Waco 1948, writ ref'd); *Medlin v. Medlin,* 203 S.W.2d 635, 640 (Tex. Civ. App.─Amarillo 1947, writ ref'd); *Enserch Exploration,* 718 S.W.2d 308, 311. However, the life tenant may not consume the corpus.

24

Indeed, in words similar to those used in the Prosper Mika Last Will & Testament (CR 1:70-79), that entitlement has been expressed as the right to receive "everything in the nature of income, rents, revenues and benefits" accruing during such a life tenancy. *Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588, 595 (1954); *Enserch Exploration, Inc. v. Wimmer*, 718 S.W.2d 308, 311 (Tex. App.–Amarillo 1986, writ. ref. n.r.e.). However, the right to receive income and profits is subject to the qualification that, absent express direction in the instrument establishing the life tenancy, such a tenant may not dispose of the corpus and may not commit waste. *Blackwell v. Blackwell,* 86 Tex. 207, 24 S.W. 389, 390 (1893); *Clift v. Clift,* 72 Tex. 144, 10 S.W. 338, 340 (1888); *Hamilton v. Hamilton,* 42 S.W.2d 814, 817 (Tex. Civ. App.--Amarillo 1931, writ ref'd).

Limitations does not accrue against the remainderman's interest while the life tenant remains alive. The remainderman does not have a possessory interest that would allow him to institute a trespass to try title action seeking the ouster of the trespasser during the life tenancy. *State v. Beeson*, 232 S.W.3d 265, 277 (Tex. App.–Eastland, 2007 pet. dism'd); *Backhus v. Wisnoski*, 14-09-00924, 2011 WL 6396497 (Tex. App.–Houston [14th Dist.] Dec. 8, 2011, pet. denied).

In *Hensley v. Conway*, 29 S.W.2d 416, 417–18 (Tex. Civ. App.--Eastland 1930, no writ), the court rejected the possibility of a remainderman's interest being subject to adverse possession during the term of the life tenancy. The Court reasoned in *Hensley* that limitations does not accrue against the remainderman's interest while the life tenant remains alive because the remainderman does not have a possessory interest that would allow him to institute a trespass to try title action seeking the ouster of the trespasser. *Id; Strong v. Garrett*, 224 S.W.2d 471, 475 (Tex. 1949).

25

Appellees have produced no evidence of ouster on or after February 4, 2003 with regard to Pamela Mika Wolf or Thomas Mika except for the Murphy Lease. See *infra*. Appellees adverse possession arguments fail in their entirety. Without ouster, the co-tenants interest continues unabated and there is no adverse possession.

Appellees continue to argue that the 1994 Deed and the possession commencing in February 1995 constitutes an ouster of the remaindermen. Appellees argue that the limitations period for purposes of the adverse possession statutes begins to run in 1995.

As demonstrated by the cases cited above, ouster could not have begun before February 4, 2003 as to Appellants. Appellants were remaindermen under the Prosper A. Mika Trust and were not in possession until February 4, 2003. Appellants dispute that limitations began to run on February 4, 2003 as a consequence of the 1994 Deed. Appellants were not parties to the 1994 Deed and Appellants became co-tenants with the Appellees on February 4, 2003. Notice of any purported ouster must be given to Appellants after they became co-tenants with the Appellees.

### 5. *The short period of Appellees' possession did not constitute constructive ouster.*

Under Texas law, a co-tenant may constructively establish the requisite ouster by an extended period of long, uninterrupted exclusive possession, *and only after which period* the requisite limitations period begins to run. *Thedford*, 3 S.W.3d at 612-14. To establish this constructive ouster, the adverse co-tenant's adverse possession must be "so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the cotenant out of possession." *Id.* at 612-14 (holding that adverse occupancy that lasted for "at least seventy years" constituted notice of repudiation); *cf. Amador*, 961 S.W.2d 205, 209 (holding that payment of maintenance expenses,

26

insurance and taxes on property for fourteen years did not establish constructive ouster against the other cotenant's one-eighth interest).

In *Mills v. Vinson*, 342 S.W.2d. 33 (Tex. Civ. App. – 1960, writ ref'd n.r.e.) constructive ouster was found where one cotenant went into possession of a tract of land in 1902, and continued in possession until 1958, made improvements, paid all taxes, sold timber which grew on the land for approximately 56 years, grazed cattle, used the land for growing crops, and actually occupied the land for 56 years. *Id.* In *Tex-Wis Co.*, 534 S.W.2d. @ 895, the court held there was constructive ouster where (a) the adverse co-tenant possessed the land in a way that was inconsistent with title in others, (b) farmed the land, (c) maintained fences, and (d) ran livestock on the land for a continuous period of thirty-four years (twenty-four years in excess of the ten-year statutory period at issue in that case). In *Evans v. Covington*, 795 S.W.2d. 806 (Tex. App. –Texarkana 1990, no writ), the court found that an adverse co-tenant did not factually prove constructive ouster, where the adverse co-tenant was only in actual possession of the land from 1970 until the filing of the suit in 1987. The *Evans* case concerned a seventeen-year total possession period. The teachings of these cases are that the limitations period begins to run only after constructive ouster is established. The *Evans* jury was left to consider whether possession for only seven years constituted constructive ouster. *See. id.* The jury found that this period of possession was insufficient to establish a constructive ouster. *Id.*

Finally, the court in *Spiller v. Woodard*, 809 S.W.2d. 624, 629 (Tex. App. –Houston [1st Dist] 1991, no writ) found that possession by one co-tenant from 1917 to the filing of the suit in 1985 was insufficient, because the period was interrupted by a 1953 easement granted by the non-possessory co-tenants, and the continuous possession thereafter up until 1985 was

27

insufficient to establish constructive ouster. The court reasoned that the approximately thirty-two year possession from 1953 to 1985 was insufficient for constructive ouster, because exclusive possession, cultivation, and payment of taxes alone "do not suffice to give notice of adverse possession by a co-tenant." *Id.* (citing *Horrocks v. Horrocks*, 608 S.W.2d 733, 736 (Tex. Civ. App.—Dallas 1980, no writ)).

Turning to this case, for purposes of argument only the Appellees possession began no earlier than December 31, 1994 (the effective date of the Deed granting them 9/10 undivided interest in the 290 acre tract) (CR 1:84-92), and this suit was filed April 22, 2013. (CR 1:4-11). The relevant period of possession continued for a period of approximately 18 years and 4 months. Because any constructive ouster must be established *before the limitations period begins to run*, the following relevant periods of possession are to be considered in determining whether the Appellees established a constructive ouster based upon the 1994 Deed: Ten-year: 8 years 4 months; Five-year: 13 years 4 months; and Three-year: 15 years 4 months.

Compared to the reported cases, all three of these relevant periods are insufficient to provide constructive notice of ouster to the Plaintiffs under these facts. Constructive ouster is a high bar to meet, and as the *Todd* court stated:

> Insofar as the true owner of property is concerned, there is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession. It is not unusual for one tenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants. *Todd*, 365 S.W.2d at 159.

Because thirty-two years was insufficient to establish a constructive ouster in *Spiller*, 809 S.W.2d. at 624, the much shorter periods of eight, thirteen, and fifteen years conceivably alleged

28

by Appellees are also insufficient. Appellees cannot effectively argue that their possession, maintenance and payment of taxes alone have constituted a constructive ouster.

### 6. The Murphy Lease was not an Ouster

In the alternative, the Appellees may attempt to argue that they initiated an ouster on April 1, 2009, being the date the Appellees executed an Oil, Gas, and Mineral Lease with Murphy Oil Company (hereinafter "Murphy Lease"). (CR 1:117-128). However, the signing of an oil and gas lease, and the production of minerals is not, in and of itself, inconsistent with continued recognition of a cotenancy relationship. *See BP Am. Prod. Co*, 342 S.W.3d at 70. This is because each co-tenant retains the right to drill, explore, and produce from the land, owing other cotenants an accounting for their portion of the minerals. *See id.* (citing *Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986)). In order to obtain title by adverse possession by production of the minerals, a co-tenant must show unmistakable and hostile acts that would put other cotenants on notice of her intent to oust them from the leasehold. *See id.* (citing *Todd*, 365 S.W.2d at 159–160). Therefore, the execution of the Murphy Lease and subsequent production of minerals, if any, did not constitute an ouster of the Appellants. Additionally, execution and recording of the Murphy Lease did not constitute an ouster, because language within the lease itself acknowledged that the Appellees may not possess a 100% undivided interest in the 290 acre tract:

> If this lease covers a less interest in the oil, gas, ...or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys...shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate... (CR 1:119).

29

Therefore, the Appellees did not purport to convey the full undivided interest in and to the mineral estate within the 290 acre tract. To the contrary, the Appellees' Murphy Lease only purported to lease whatever ownership interest the Appellees owned in the 290 acre tract, "if any." The inclusion of a special warranty within the lease is further support for this contention. (CR 1:127, ¶48). Therefore, the Appellees' Murphy Lease does not constitute a clear ouster and repudiation by the Appellees.

The special warranty clause found in Paragraph 48 of the Murphy Lease provides as follows: "Lessor hereby warrants title to Lease premises against claims by, through or under Lessor, but not otherwise[...]." The court in *Dyer v. Cotton*, 333 S.W.3d 703, n.2 (Tex. App.—Houston [1st Dist.] 2010, no pet.) explained:

> [u]nlike a general warranty deed, which expressly binds the grantor to defend against title defects created by himself *and all prior titleholders*, the grantor under a special warranty deed is bound to defend the title only against the claims and demands of the grantor and all persons claiming through him." *Id.* (emphasis supplied) (citing *Munawar v. Cadle Co.*, 2 S.W.3d 12, 16 (Tex.App.—Corpus Christi 1999, no pet.)).

The court reasoned that, therefore, "the recordation of the special warranty deed [by one-cotenant] does not, by itself, provide notice to the [other] co-tenants of [the recording co-tenant's] adverse claim to the entire property." *See id.* The Murphy Lease, containing only a special warranty, would not provide actual or constructive notice of an adverse claim to Appellants.

### 7. *Appellees acknowledged title in Appellants*

Appellees' actions in leasing with a special warranty defeat a claim of ouster and repudiation. Similarly, Appellees' actions after leasing to Murphy also defeat their claim of ouster and repudiation. In January of 2012, Appellee Carleen J. Pawelek placed a telephone call

to Appellant Pamela Mika Wolf, acknowledging that the Appellees did not have clear title to the 290 acre tract; Appellee stated that the Appellees were seeking to obtain clear title, and requesting that the Appellants sign a deed drafted by the Appellees' attorney so that the Appellees could obtain clear title to the 290 acre tract. (CR 1:97). Additionally, Appellees sent a letter to Appellants (hereinafter "Deed Request Letter") (CR 1:96), acknowledging that Appellees do not have "clear title," and seeking to acquire the $1/10^{th}$ undivided interest belonging to the Appellants. The Deed Request Letter requested Appellants to execute a Special Warranty Deed conveying their $1/10^{th}$ undivided interest in and to the 290 acre tract to the Appellees. (CR 1:96).

In Texas, adverse possession does not exist if the claimant has acknowledged that another person holds title to the land in question or has offered to purchase the land from the title holder in such a way that it involves an admission of title. *Wolgamot v. Corley*, 523 S.W.2d 491, 495 (Tex. Civ. App.—Waco 1975, ref. n.r.e.). The Deed Request Letter both acknowledged Appellants' title, and made an offer to acquire the land by Special Warranty Deed. (CR 1:96).

Under Texas law, acts that are consistent with, rather than repugnant to, recognition of another's title may thwart the adverse possessor's claim. *See Cleveland v. Hensley*, 548 S.W.2d 473, 477 (Tex. Civ. App.—Texarkana 1977, no writ). The Appellees cannot purport to have established "clear ouster and repudiation" during the same period they called one of the Appellants to request a conveyance of Appellants' interest and during the same period they sent Appellants the Deed Request Letter (CR 1:96) that (1) acknowledges Appellants' title, (2) acknowledges that Appellees do not have "clear title," and (3) requests Appellants convey their interest by way of Special Warranty Deed. These actions are simply inconsistent with a claim of

31

ouster. The telephone call and the Deed Request Letter, however, were *consistent* with the Appellants' understanding of the parties' continued co-tenancy relationship, consistent with the Appellants' continued title to a 1/10 interest in the 290 acre tract, and were consistent with a scenario where one co-tenant is seeking to obtain a 100% undivided interest in the land by receiving deeds from the other owners of undivided interests. Again, however, the telephone call and Deed Request Letter were *inconsistent* with a claim of 'clear ouster and repudiation.'

### 8. *No notice of ouster and repudiation*

No notice, actual or constructive, of ouster or repudiation has been given to Appellants. Notice of ouster or repudiation must be communicated to the non-possessory co-tenant either by a declaration of the adverse claim or by acts of such unequivocal notoriety asserting the adverse claim that the non-possessory co-tenant is presumed to have notice of the claim. *Chapman v. King Ranch, Inc.*, 41 S.W.3d 693, 698 (Tex. App.—Corpus Christi 2001, rev'd on other grounds, 118 S.W.3d 742 (Tex. 2003). The only actual communications Appellees had made to the Appellants conveyed a message *opposite* of ouster. These communications are the January 2012 telephone call and the Deed Request Letter in which Appellants provided notice that Appellees acknowledged Appellants title, and notice that they wished to acquire the interest by Special Warranty Deed.

In the alternative, the Appellees contend that they somehow ousted or repudiated Appellants because they paid the taxes on the 290 acre tract. (CR 2:427). The mere fact that one cotenant has possession of co-tenancy property and pays the taxes on the property does not provide adequate notice of repudiation to the other cotenants. *Todd*, 365 S.W.2d at 159-160. Such notice may also be constructive when the adverse occupancy and claim of title to the

32

property is "so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the cotenant out of possession." *Thedford*, 3 S.W.3d at 612-14. However, as discussed above (*see* C. 5., *supra*) , a sufficient period of time has not passed for the Appellees to argue that their possession, maintenance and payment of taxes alone have constituted constructive ouster.

### 9.     *Conclusion*

Therefore, Appellees cannot establish "clear ouster and repudiation," and cannot establish notice of ouster and repudiation as required under their Three-Year, Five-Year and Ten-Year Adverse Possession claims. As a result, Appellants are entitled to summary judgment on Appellees' Three-Year, Five-Year and Ten-Year Adverse Possession affirmative defenses and counterclaims. Appellants respectfully request this honorable Court to reverse and render.

### D.     APPELLANTS CAN DISPROVE ADVERSE POSSESSION: LIMITATIONS PERIOD

### 1.     *Appellants disprove Appellees' Three-Year Adverse Possession*

If the estoppel by deed doctrine does not apply, then Appellees must rely upon adverse possession to claim title to 100% of the 290 acre tract. In each instance, Appellees cannot satisfy all of the elements of the statutes.

A claimant under the three-year statute, in addition to establishing the general adverse possession requirements for a period of three years, must prove that possession was under title or color of title. Tex. Civ. Prac. & Rem. Code Ann. §16.024. Assuming that the execution of the Appellees Oil and Gas Lease to Murphy, on April 1, 2009 constituted an ouster, an assumption denied by Appellants and disproved by the evidence, the three year statute of limitation on adverse possession would expire on April 1, 2012. Therefore, ignoring for a moment the actions

33

taken by Appellees that defeat their adverse possession claim entirely, and the reciprocal ousters performed by Appellants which also defeat the Appellees' claims entirely, Appellees argue that the three-year period had run, because the Oil and Gas Lease was executed on April 1, 2009, and the Appellants filed their litigation after April 1, 2012.[4] However, for the reasons stated below, this claim must fail because Appellees simply do not have 'title,' or 'color of title' under the three year statute. *See* Tex. Civ. Prac. & Rem. Code Ann. §16.024.

Appellees do not have 'title.' 'Title,' in this context, means a regular chain of transfers of real property from or under the sovereignty of the soil. Tex. Civ. Prac. & Rem. Code Ann. §16.021 provides that:

> In this subchapter:
> (1) "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.
> (2) "Color of title" means a consecutive chain of transfers to the person in possession that:
> (A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or
> (B) is based on a certificate of headright, land warrant, or land scrip.
> (3) "Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.
> (4) "Title" means a regular chain of transfers of real property from or under the sovereignty of the soil.

Additionally, the claimant must prove each link in a regular chain of transfers. *Burnham v. Hardy Oil Co.*, 108 Tex. 555, 195 S.W.1139, 1142 (1917). Appellees do not have a regular chain of title. As discussed above, the 1994 Deed did not convey the interest owned by the Prosper A. Mika Trust. *See Rogers v. Ricane Enterprise, Inc.*, 884 S.W.2d 763, 768-9 (Tex. 1994) (holding that an instrument signed by the president of a company in his individual capacity

---

[4] If the April 1, 2009 grant of the Murphy Lease is deemed an ouster, neither the 5 year nor the 10 year limitations periods can prevail.

34

did not purport to convey any interest belonging to company itself). As discussed above, the Appellees acknowledged this fact in the Deed Request Letter conceding they do not have 'clear title' and requesting a Special Warranty Deed. Appellees do not have a deed conveying them the interest attributable to the Prosper A. Mika Trust. Therefore, Appellants have conclusively proven that Appellees simply do not have 'title' within the meaning of Tex. Civ. Prac. & Rem. Code Ann. §16.021(4).

Appellees do not have 'color of title.' Additionally, Appellants can conclusively prove that Appellees do not have 'color of title.' Tex. Civ. Prac. & Rem. Code Ann. §16.021(2) expressly limits 'color of title' to a consecutive chain of transfers that is irregular because of a "muniment that is not properly recorded, or only in writing, or because of a similar defect that does not want of intrinsic fairness or honesty," or "a chain of transfers that is based on a certificate of headright, land warrant, or land scrip." Appellees' *only* claim to title is the 1994 Deed, where Irene Mika did not purport to convey any interest of the Prosper A. Mika Trust. The 1994 Deed does not fulfill the other statutory definitions for 'color of title' either, because it is properly recorded, and is in writing. Additionally, the 1994 Deed does not have an intrinsic defect, and there is nothing *intrinsically* unfair or dishonest regarding a trustee refraining from conveying interests which she holds in trust. *O'Neil,* 470 S.W.2d at 779 Finally, the 1994 Deed is not a certificate of headright, a land warrant, or a land scrip. Therefore, the Appellees cannot establish 'color of title' under Tex. Civ. Prac. & Rem. Code Ann. §16.024.

Appellants have disproved as a matter of law at least one element of Appellees' affirmative defense, being 'title,' and/or 'color of title.' As a result, Appellants are entitled to judgment denying Appellees' claim for Three-Year Adverse Possession.

35

Further, assuming that the Murphy Lease is an ouster of Appellants and recognizing that the Murphy Lease is a deed to the oil and gas in place, Murphy Exploration and Production Company USA has not possessed the mineral estate for three years prior to April 22, 2013, the filing date of the Original Petition. (CR 1:4-11). In Texas, it has long been recognized that an oil and gas lease grants a fee simple determinable interest in the minerals to the "lessee," who is actually a grantee. See *W.T. Waggoner Estate v. Siegler Oil Co.*, 19 S.W.2d 27, 28-29 (Tex. 1929), *Concord Oil Co. v. Pennzoil Exploration and Production Co.*, 966 S.W.2d 451, 460 (Tex. 1998); *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982).

On April 1, 2009, Appellees executed the Murphy Lease. (CR 1:117-128). Therefore, the Murphy Lease severed the minerals and surface of the 290 acre tract as to the 9/10 undivided interest owned by the Appellees. However, if the Appellees argue that the Murphy Lease covers and includes 100% of the 290 acre tract, then by its very nature, Appellees also argue that the Murphy Lease purported to sever the surface and mineral estates as to 100% of the 290 acre tract.

In Texas, in order to mature title by limitations to a severed mineral estate, possession of the surface is insufficient; actual possession of the minerals must occur. *Natural Gas Pipeline Co.*, 124 S.W.3d at 194-195 (citing *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 641 (Tex. App.—Tyler 1983, writ ref'd n.r.e.). In the case of oil and gas, actual possession of minerals means drilling and production of oil or gas. *Id.* In other words, once the minerals have been severed from the 290 acre tract, adverse possession of the 290 acre tract's mineral estate can only be perfected by production from the 290 acre tract. *Id.* Because Appellees granted Murphy a fee simple determinable in the severed mineral estate, Murphy is a party in privity of estate with

36

Appellees, and in order to establish its case of adverse possession to the severed mineral estate in the 290 acre tract, the Appellees must establish that Murphy has adversely possessed the mineral estate in the 290 acre tract for the applicable limitations period.

Appellants refer to Exhibits N and O to Appellants/Plaintiffs Traditional and No-Evidence Motion for Summary Judgment, the Form W-1(s), entitled "Application for Permit to Drill, Recomplete or Re-Enter," executed by Murphy. (CR 1:133-149). The trial court struck this evidence, but they are relevant to the issue of adverse possession of the mineral estate under the 290 acre tract. Appellants request that the Court reverse the trial court's ruling to strike the exhibits and consider the W-1(s). The Texas Railroad Commission rules require that "Operations of drilling, deepening, plugging back, or reentering shall not be commenced until the permit has been granted by the commission and the waiting period, if any, has terminated, or authorization has been granted pursuant to subsection (d) of this section." 16 Tex.Admin.Code, §§ 3.5(b-d) (2013). Exhibits N and O are executed by Murphy for the Whitfield Unit East and the Whitfield Unit West. The 290 acre tract is located in both of these units. (CR 1:133-149). Exhibit N is dated October 22, 2012, and was approved October 26, 2012. (CR 1:133, 139, App. E). Exhibit O is dated November 22, 2011, and was approved on November 29, 2011 (CR 1:140, 145, App. F).

Therefore, even if the Appellees argue that Murphy began drilling and production on the earliest date the Texas Railroad Commission approved a Form W-1, Exhibit O, an assertion that is highly unlikely and a point with which Appellants strongly disagree, it is of record that Murphy did not begin actually possessing the mineral estate of the 290 acre tract by drilling and production until, at the very earliest, November 29, 2011. Therefore, at the most, only one (1)

year, four (4) months, and twenty-four (24) days passed before Appellants filed this lawsuit on April 22, 2013.  There is no issue of material fact with regard to the failure of Murphy Exploration and Production Company USA to ripen title to the mineral estate under the 290 acre tract by satisfaction of the shortest limitations period.[5]

Further, Appellants contend that all limitations periods are tolled by reciprocal ouster. Assuming, which is specifically denied by Appellants, Appellees did oust the Appellants on April 1, 2009, several actions of Appellants constituted a *reciprocal ouster*, thereby cutting off the Appellees' adverse possession period.  In Texas, "[i]t is settled that an ouster [against an adverse possessor] need not be complete. It is sufficient if it interrupts the exclusivity of the holding by the adverse possessor." *West End API Ltd. v. Rothpletz*, 732 S.W.2d 371, 377 (Tex. App.—Dallas 1987, writ ref'd n.r.e.).

Once adverse possession commences, the holder of legal title may interrupt that possession and prevent the possessor from maturing his claim, either by (1) filing suit or (2) by ouster.  An ouster need not be complete provided it interrupts the exclusivity of the holding by the adverse possessor.  It is equally well settled that "to constitute an interruption of an occupant's adverse possession, an entry by the owner ... must clearly indicate that the occupant's possession is invalid and his right challenged.  It must be open and notorious and bear on its face an unequivocal intention to take possession.  It cannot be accidental, casual, secret, or permissive." *Kirby Lumber Corp. v. Smith*, 305 S.W.2d 829, 830 (Tex. Civ. App.--Beaumont

---

[5] Appellants refer this honorable Court to CR 1:150-156 , a certified copy of that certain Assignment of Oil and Gas Leases dated effective May 21, 2013, by and between West 17th Resources, LLC, as Assignor, and Murphy Exploration & Production Company—USA, as Assignee, conveying the Oil and Gas Leases executed by the Appellants, and acknowledged by both West 17th and Murphy.  Murphy has already acknowledged the Appellants' title in and to the 290 acre tract, and has already resolved the current issue with the Appellants.  Therefore, Murphy was not included as a party in this title case.

1957, writ dism'd). The conduct relied upon by an owner as constituting an interruption of the adverse party's possession must be such that it would put an ordinary person on notice that he actually has been ousted. *American National Bank of Beaumont v. Wingate*, 266 S.W.2d 934, 945 (Tex. Civ. App.—Beaumont 1953, writ ref'd n.r.e.); *West End API Ltd. v. Rothpletz,* 732 S.W.2d 371, 377 (Tex. App.–Dallas,1987 writ ref'd n.r.e.).

The following actions by Appellants, each standing on its own, constituted an ouster of Appellees, cutting off their limitations period, if any, to wit:

> Appellants advised Appellees' attorney in a February 2012 telephone call that Appellants refused to convey their interest by Special Warranty Deed as requested in the Deed Request Letter. Appellants gave notice of their continued claim to ownership of their 1/10 undivided interest in the 290 acre tract. This constituted a reciprocal ouster. (CR 2:351-353).

> Additionally, by refusing to execute the Special Warranty Deed, Appellants rejected the Appellees' request in the Deed Request Letter to convey their interest by Special Warranty Deed in February 2012. This gave notice that the Appellants continued to claim exclusive ownership of their 1/10 undivided interest in the 290 acre tract. (CR 1:351-353).

> Pamela Mika Wolf executed an Oil and Gas Lease on January 5, 2013 to West 17th, which is recorded in Volume 1095, Page 22 of the Official Records of Karnes County, Texas, covering and including her 1/20th undivided interest in the 290 acre tract. (CR 1:109-112).

> Thomas Mika executed an Oil and Gas Lease on January 5, 2013 to West 17th, which is recorded in Volume 1095, Page 18 of the Official Records of Karnes County, Texas covering and including his 1/20th undivided interest in the 290 acre tract. (CR 1:113-116).

> Appellants' counsel sent a demand letter to Appellees' counsel on June 13, 2013, demanding that Appellees quit possession of Appellants 1/10 undivided interest in and to the 290 acre tract. (CR 1:96).

Appellants have conclusively disproved the requisite statutory limitations period for the three-year limitations period, the five-year limitations period, or the ten-year limitations period.

As a result, Appellants are entitled to judgment on Appellees' affirmative defenses and counterclaims for the three-year, five-year and ten-year adverse possession claims. In the alternative, Appellants are entitled to a remand for determination of whether their acts of ouster put Appellees on notice of Appellants claims to title.

## 2. *Appellants disprove Appellees' Five-Year Adverse Possession*

The Five Year Adverse Possession claim must be a 'claim of property under a duly registered deed.' A claimant under the five-year statute, in addition to establishing the general adverse possession requirements for a period of five years, must prove the claimant (1) claims the property under a duly registered deed, (2) pays the taxes on the property, and (3) cultivates, uses, or enjoys the property. Tex. Civ. Prac. & Rem. Code Ann. §16.025(a). The adverse possessor must meet all of these requirements throughout the entire five-year limitation period; a claim for title by adverse possession fails if there is a gap in satisfying any of the requirements. *Pinchback v. Hockless*, 158 S.W.2d 997, 998 (Tex. 1942).

Appellees are not in possession of the 290 acre tract 'under a duly registered deed.' As described above, the 1994 Deed does not purport to convey any of the interest attributable to the Prosper A. Mika Trust, under which Irene Mika was acting as Trustee. The Appellees cannot claim to have received the property under a duly registered deed, because there is no deed of record from a trustee of the Prosper A. Mika Trust or its successors to Appellees, and Irene Mika's signature in her individual capacity is insufficient.

Appellants are entitled to judgment on Appellees' affirmative defense and counterclaim under the Five-Year Adverse Possession statute. Appellants have disproved, as a matter of law, at least one element of the affirmative defense, i.e. a claim under a duly registered deed.

40

### 3. *Appellants disprove Appellees' Ten-Year Adverse Possession*

Appellees do not have ten years of continuous, open, exclusive, adverse and notorious possession of the 290 acre tract after notice of ouster. First, Appellants contend that no ouster has occurred since February 4, 2003, the date upon which they became fully vested with the surface and mineral estates. Second, if Appellees claim that their "long continued" possession of the surface is notice of ouster, then Appellants note that the so-called "long continued" possession does not rise to the level of the long, continued possession documented in the reported cases. A continuous period of ten years after an ouster has not expired in this case. Finally, the acknowledgment of title in the January 2012 telephone call and the Deed Request Letter negate the intent to adversely possess the 290 acre tract.

### 4. *Appellees are Estopped from Claiming Adverse Possession*

Appellees are estopped from claiming title by adverse possession. To prove the defense of quasi-estoppel, a party must establish (1) the opponent acquiesced to a transaction or accepted a benefit from a transaction, (2) the opponent's present position is inconsistent with the position it held earlier when it acquiesced to the transaction or accepted a benefit from the transaction, and (3) it would be unconscionable to allow the opponent to maintain its present position, which is to another's disadvantage. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000).

#### a. Appellees acquiesced or accepted a benefit

As a result of Appellees February 22, 2012 Letter (CR 1:96), and the phone call from Carleen J. Pawelek (CR 2:351-353), the Appellants were reasonably lead to believe that the Appellees were recognizing Appellants' title to the 1/10 undivided interest in and to the 290 acre

41

tract. As a result of this reasonable belief, Appellants did not immediately file suit, though they had such a legal right. In addition, the Appellees accepted the benefits from this fact, because they are now claiming that while Appellants were relying on the statements contained in Appellees' earlier letter, Appellees were purportedly counting the clock on the limitations period. As a result, Appellees have acquiesced to a transaction or accepted a benefit from a transaction. The benefit being the unexercised right of Appellants to file suit in 2012, which they delayed due to the reasonable belief that Appellees had recognized and acknowledged Appellants' title to the 1/10 undivided interest.

### b. Inconsistent positions

Appellees' present position is inconsistent with its earlier position. In both the telephone call from Carleen J. Pawelek, and the Deed Request Letter, the Appellees recognized Appellants' record ownership in and to the 290 acre tract. (CR 1:96). However, in Appellees' pleadings in the underlying litigation, they have claimed that Appellants never had ownership of the 290 acre tract, and that, in fact, Appellees were counting down the clock on the applicable limitations period, a point with which Appellants strongly disagree. Therefore, the Appellees' present position is inconsistent with its earlier position.

### c. Unconscionability

It would be unconscionable to allow Appellees to maintain their present position. Appellants relied on the Appellees' earlier representation that they were seeking Special Warranty Deeds, and that they were recognizing Plaintiff's title to the 290 acre tract. Had the Appellees sent a letter with the opposite tone, Appellants would have been on notice that the Appellees were ousting and repudiating Appellants co-tenancy right to the 290 acre tract.

42

Appellants could have then immediately filed suit. However, Appellants relied on Appellees' representations that they were recognizing Appellants title, and were seeking a conveyance of Appellants' undivided interest. First, Appellants contend that Appellees cannot establish the requisite statutory limitations periods. Additionally, however, it would be unconscionable to allow the Appellees to claim they have established the requisite statutory limitations periods.

## IV.    CONCLUSION

Appellants and Appellees are co-tenants in the 290 acre tract. The 1994 Deed did not convey the undivided 1/10th interest held in trust. Appellees cannot use the estoppel by deed doctrine to supply the missing grantor, the trust. Appellees ask this Court to read provisions into the 1994 Deed that are not found within the four corners of the 1994 Deed. The undivided 1/10th interest was never conveyed to Appellees. Appellees had two years under Texas law to correct the alleged oversight. Appellees are barred from doing so now. Appellees are also barred from seeking reformation of the 1994 Deed. Appellants request this Court to reverse and render the trial court's use of the estoppel by deed doctrine in this case.

If Appellees cannot claim conveyance of the undivided 1/10th interest in the 290 acre tract by the 1994 Deed, Appellees can only claim title to this undivided 1/10th interest by adverse possession. Appellants and Appellees are co-tenants in the 290 acre tract by and through the Will of Felix Mika and the 1994 Deed. The required elements of adverse possession of one co-tenant against another include ouster and repudiation in addition to the elements of adverse possession.

In addition, the limitation periods for adverse possession do not accrue against remaindermen until they come into possession. Limitation periods against the life tenant are not

43

counted against the remaindermen. The Prosper A. Mika Trust created a life estate in Irene Mika with the remainder to the Mika Appellants. Any claimed adverse possession during the life of Irene Mika is not counted against the Appellants.

If Appellees cannot claim conveyance of the undivided 1/10th interest in the 290 acre tract by the 1994 Deed, then Appellees cannot claim under the three year and five year adverse possession statutes. Both the three year and five year adverse possession statutes require color of title or a registered deed. Appellees have neither color of title nor a registered deed to this undivided 1/10th interest.

While Texas courts do recognize constructive ouster and repudiation, the time periods found in the reported cases are much longer than the conceivable time periods in this litigation. Since Appellees went into possession on February 1, 1995, the period for a constructive ouster, as stated in the reported cases, is only now apparent. The teachings of these cases is that the requisite limitations period must run beyond the constructive ouster time period for title to ripen in the adverse possessor. In this case, the teachings of those cases would be that title does not ripen in Appellees until 2025.

Since February 2003 when the life estate ended, there has been no ouster of Appellants from the 290 acre tract. The April 1, 2009 Oil & Gas Lease to Murphy by Appellees is not considered an ouster. Murphy is in possession of the mineral estate, but Murphy has not produced oil and/or gas from the 290 acre tract for a time period of three years, five years or ten years before Appellants filed suit. Murphy has not adversely possessed Appellants undivided 1/10th interest in the 290 acre tract.

Appellants assert that the January 2012 telephone call from Appellees to Appellants and

44

the February 2012 Deed Request Letter from Appellees' attorney to Appellants are acknowledgments of title in Appellants. If the adverse possessor acknowledges title in the record title owner, limitations is interrupted. Further, in January 2013, Appellants granted oil and gas leases to West 17th. These oil and gas leases granted Appellants' undivided 1/10th interest in the oil and gas in the 290 acre tract. These oil and gas leases are of record and are notice to the public. Appellants asserted ownership and exercised dominion over their undivided 1/10th interest in the 290 acre tract to the exclusion of Appellees. These acts amount to a reciprocal ouster of Appellees. Finally, Appellees are estopped to claim limitations based upon the January 2012 telephone call and the February 2012 Deed Request Letter. Appellees lulled Appellants into inaction while Appellees counted down the limitations clock. Appellees should not be rewarded for this artifice.

Appellants have negated at least one element of each of the applicable adverse possession statutes. Appellants request this honorable Court to either reverse and render the trial court's potential rulings on limitations grounds described above or to remand to the trial court for a trial on the material issues of fact presented by this record.

Respectfully Submitted:

Jones Gill LLP

Michael D. Jones
State Bar No. 10929350
Leann Pinkerton
State Bar No. 24038826
6363 Woodway, Suite 1100
Houston, Texas 77057
Telephone: 713.652.4068
Facsimile: 713.651.0716
mjones@jonesgill.com

45

Attorneys for Appellants, West 17th Resources, LLC Thomas Mika, Pamela Mika Wolf

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains, as counted by MICROSOFT WORD, 14,066 words, exclusive of the contents to be excluded per TRAP 9.4(i)(1).

_____
Michael D. Jones

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellants Brief was served on all counsel of record electronically on the _6th_ day of February, 2015.

Ricardo E. Morales
Jo Maldonado, Jr.
Person, Whitworth, Borchers & Morales LLP
602 East Calton Road, 2nd Floor
Laredo, Texas 78041
remorales@personwhitworth.com

Michael R. Hedges
Goode Casseb Jones Riklin Choate & Watson, PC
2122 N. Main Avenue
San Antonio, Texas 78212
hedges@goodelaw.com

_____
Michael D. Jones

47

## LIST OF APPENDICES

Appendix A     1994 Deed Recorded in the Official Records of Karnes County, Texas

Appendix B     Exhibit E-1 to Plaintiffs' Motion for Summary Judgment: 1992 Warranty Deed Recorded in the Official Records of Hays County, Texas

Appendix C     Exhibit I to Plaintiffs' Motion for Summary Judgment: Certified copy of Oil and Gas Lease executed on January 5, 2013 from Pamela Mika Wolf to West 17th and recorded in Volume 1095, Page 18 of the Official Records of Karnes County, Texas

Appendix D     Exhibit J to Plaintiffs' Motion for Summary Judgment: Certified copy of Oil and Gas Lease executed on January 5, 2013 from Thomas Mika to West 17th and recorded in Volume 1095, Page 18 of the Official Records of Karnes County, Texas

Appendix E     Exhibit N to Plaintiffs' Motion for Summary Judgment: Certified copy of the Form W-1 for Murphy Exploration & Production Company USA Whitfield East Unit Well No. 1 H

Appendix F     Exhibit O to Plaintiffs' Motion for Summary Judgment: Certified copy of the Form W-1 for Murphy Exploration & Production Company USA Whitfield West Unit Well No. 1 H

Appendix G     Exhibit P to Plaintiffs' Motion for Summary Judgment: Certified copy of Assignment of Oil and Gas Lease dated May 21, 2013 by and between West 17th Resources, LLC and Murphy Exploration and Production Company

Appendix A

STATE OF TEXAS　　　§

COUNTY OF KARNES　　§　　　KNOW ALL MEN BY THESE PRESENTS:

That we, ALOYS MIKA, IRENE MIKA, JOYCE MARIE MIKA PITZER, ARTHUR RAY MIKA, DENNIS CARL MIKA, VIRGINIA SUE MIKA DUBOSE, LESLIE BRYAN MIKA, BEVERLY JANE MIKA TANEL, CHARLENE ANN MIKA DAILEY, DOLORES FAYE MIKA LAVELLE, EVELYN RUTH MIKA, GERMAINE CAROL MIKA, NORMA LOUISE MIKA PRINCE, STEPHANIE ROSE MIKA and JACQUELYN GRACE MIKA, hereinafter called "Grantors", not joined herein by our respective spouses, if any, because the property herein conveyed constitutes a part and parcel of the separate property and estate of each of us and does not constitute any part of the homestead of any of us, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) cash, and other good and valuable consideration to us in hand paid by LUCIAN A. PAWELEK and wife, CARLEEN J. PAWELEK, the receipt of which is hereby acknowledged, have GRANTED, SOLD and CONVEYED, subject to the hereinafter mentioned exception, and by these presents do GRANT, SELL and CONVEY, subject to the hereinafter mentioned exception, unto

　　　　LUCIAN A. PAWELEK
　　　　151 HARCOURT
　　　　SAN ANTONIO, BEXAR COUNTY, TEXAS　78223

　　　　CARLEEN J. PAWELEK
　　　　151 HARCOURT
　　　　SAN ANTONIO, BEXAR COUNTY, TEXAS　78223

all of the following described real property situated in Karnes County, Texas, including any right, title and interest of Grantors, in and to highways, adjacent streets, alleys or rights-of-way, said real property being described as follows, to-wit:

　　　　Being 290.69 acres of land, a part of the
　　　　John J. Pickett Survey, Abstract No. 227,
　　　　lying and being situated in Karnes County,
　　　　Texas, about 10.7 miles Northeast of Karnes
　　　　City, the county seat.. The said 290.69 acre
　　　　tract also being a part of that certain
　　　　called 298.72 acre tract as described in a
　　　　GIFT DEED from Mary Mika to Aloys Mika, et
　　　　al, dated October 9, 1992, and recorded in
　　　　Volume 639, Pages 124 et seq., of the
　　　　Official Records of Karnes County, Texas.

-1-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____


Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

The said 290.69 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a 5/8" steel pin set at a fence corner in the East boundary of the said John J. Pickett Survey, Abstract No. 227, and the West boundary of County Road No. 311, for the occupied Southeast corner of the called 298.72 acre tract and the Southeast corner of this 290.69 acre tract; the same being the occupied Northeast corner of the Edwin Janysek called 40.0 acre tract (Volume 541, Page 220, Deed Records, Karnes County, Texas), and being N. 01 degree 21 minutes E.-2296.8' from the approximate Southeast corner of the said John J. Pickett Survey, Abstract No. 227. (NOTE, the bearing and distance from the "survey" corner derived from office information for map location only)

THENCE: Along the South boundary of the called 298.72 acre tract with the following two (2) calls:

1. N. 89 degrees 30 minutes 00 seconds W.-2303.50', to a 5/8" steel pin set at a fence corner for the occupied Northwest corner of the Frank Janysek, Jr., called 50.0 acre tract (Volume 541, Page 216, Deed Records, Karnes County, Texas) and the occupied Northeast corner of the Fabian Pawelek called 40.0 acre tract (Volume 382, Page 129, Deed Records, Karnes County, Texas), and

2. N. 89 degrees 22 minutes 23 seconds W.-1518.32', to a large creosote post at a fence corner in the East boundary of the Zefred Alex Kruciak, et ux, called 162.9 acre tract (Volume 197, Page 185, Deed Records, Karnes County, Texas), for the occupied Southwest corner of the called 298.72 acre tract and the Southwest corner of this 290.69 acre tract; the same being the occupied Northwest corner of the Fabian Pawelek called 40.0 acre tract.

THENCE: N. 00 degrees 39 minutes 00 seconds E. along the West boundary of the called 298.72 acre tract; the same being the East boundary of the called 162.9 acre tract and of the Zefred Alex Kruciak, et ux, called 18.2 acre tract (Volume 220, Page 393, Deed Records, Karnes County, Texas), a distance of 1898.59' to a 5/8" steel pin set a point of intersection with the Southeast right-of-way boundary of F. M. Highway No. 1354, and being on a curve, for a corner of this 290.69 acre tract.

THENCE: Along the Southeast right-of-way boundary of said F. M. Highway No. 1354 and curve to the left (Long Chord bears N. 25 degrees 03 minutes 56 seconds E.-201.46') whose radius is 244.63' and whose central angle for this part is 48 degrees 37 minutes 53 seconds, an arc distance of 207.64' to a 5/8" steel pin set at the P.T. of said curve.

-2-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

85

THENCE: N. 00 degrees 45 minutes 00 seconds E. along the East right-of-way boundary of said F. M. Highway No. 1354, a distance of 1114.25' to a 5/8" steel pin set at the P.C. of a curve to the right.

THENCE: Along the Northeasterly boundary of County Road No. 312 and said curve to the right (Long Chord bears N. 45 degrees 57 minutes 30 seconds E.-214.31') whose radius is 150.99' and whose central angle is 90 degrees 25 minutes 00 seconds, an arc distance of 238.27' to a 5/8" steel pin set at the P.T. of said curve.

THENCE: S. 88 degrees 50 minutes 00 seconds E. along the established South boundary of said County Road No. 312, a distance of 3625.45' to a 5/8" steel pin set at a point of intersection with the West fenced boundary of said County Road No. 311, and being in the East boundary of the said John J. Pickett Survey, Abstract No. 227, for the Northeast corner of this 290.69 acre tract.

THENCE: Along the East boundary of the said John J. Pickett Survey, Abstract No. 227 and of the called 298.72 acre tract; the same being the West boundary of said County Road No. 311 with the following two (2) calls:

1. S. 01 degree 33 minutes 00 seconds W.-1491.06', set a 5/8" steel pin at an angle point, and
2. S. 01 degree 12 minutes 22 seconds W.-1816.89', to the point of BEGINNING and CONTAINING 290.69 acres of land.

The bearings recited herein are based on a course of NORTH along the East boundary of County Road No. 294, and the West boundary of the Bennie A. Janysek, et al, 56.46 acre tract (Volume 563, Page 840, Deed Records, Karnes County, Texas).

Surveyed on the ground on October 31 and November 14, 1994, under the supervision of Syl. Dworaczyk, Jr., Registered Professional Land Surveyor No. 1272 (CHAS. KLUMPP, JR. & CO. - Karnes City, Texas)

This conveyance is subject, however, to the Easement and Right-of-Way shown in instrument from Mary Mika and husband, Felix Mika, to Central Power and Light Company, dated June 25, 1953, recorded in Volume 215, Page 607, of the Deed Records of Karnes County, Texas.

TO HAVE AND TO HOLD the above described premises, subject to the above exception, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said LUCIAN A. PAWELEK and wife, CARLEEN J. PAWELEK, their heirs and

-3-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____

Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

assigns, forever; and we do hereby bind ourselves, our heirs, executors and administrators, to WARRANT and FOREVER DEFEND, all and singular the said premises, subject to the above exception, unto the said LUCIAN A. PAWELEK and wife, CARLEEN J. PAWELEK, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

EXECUTED this the __15__ day of __Dec__, 1994, BUT EFFECTIVE AS OF DECEMBER __31__, 1994.

_____
ALOYS MIKA

_____
IRENE MIKA

_____
JOYCE MARIE MIKA PITZER

_____
ARTHUR RAY MIKA

_____
DENNIS CARL MIKA

_____
VIRGINIA SUE MIKA DUBOSE

_____
LESLIE BRYAN MIKA

_____
BEVERLY JANE MIKA TANEL

_____
CHARLENE ANN MIKA DAILEY

_____
DOLORES FAYE MIKA LAVELLE

_____
EVELYN RUTH MIKA

_____
GERMAINE CAROL MIKA

_____
NORMA LOUISE MIKA PRINCE

_____
STEPHANIE ROSE MIKA

_____
JACQUELYN GRACE MIKA

STATE OF TEXAS     ∫

COUNTY OF _Bexar_     ∫

This instrument was acknowledged before me on _December 28_, 1994, by ALOYS MIKA.



_____
NOTARY PUBLIC, STATE OF TEXAS

-4-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on 12-29-15

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

STATE OF TEXAS |

COUNTY OF _Travis_ |

This instrument was acknowledged before me on _DEC 19_ , 1994, by IRENE MIKA.

_Carolyn M. Crowley_
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS |

COUNTY OF _Bexar_ |

This instrument was acknowledged before me on _DECEMBER 28_ , 1994, by JOYCE MARIE MIKA PITZER.

ROSEANNA QUINLAN
Notary Public, State of Texas
My Commission Expires 11/15/96

_Roseanna Quinlan_
NOTARY PUBLIC, STATE OF TEXAS

STATE OF NEW YORK |

COUNTY OF _____ |

This instrument was acknowledged before me on _____ , 1994, by ARTHUR RAY MIKA.

_____
NOTARY PUBLIC, STATE OF NEW YORK

STATE OF TEXAS |

COUNTY OF _____ |

This instrument was acknowledged before me on _____ , 1994, by DENNIS CARL MIKA.

_____
NOTARY PUBLIC, STATE OF TEXAS

-5-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

STATE OF TEXAS

COUNTY OF _Live Oak_ |

    This instrument was acknowledged before me on _January 12_ 1995, by VIRGINIA SUE MIKA DUBOSE.

DONNA L. WOLFE
MY COMMISSION EXPIRES
March 1, 1997

NOTARY PUBLIC, STATE OF TEXAS

STATE OF ARIZONA |

COUNTY OF _____ |

    This instrument was acknowledged before me on _____, 1994, by LESLIE BRYAN MIKA.

NOTARY PUBLIC, STATE OF ARIZONA

STATE OF TEXAS |

COUNTY OF _____ |

    This instrument was acknowledged before me on _____, 1994, by BEVERLY JANE MIKA TANEL.

NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS |

COUNTY OF _____ |

    This instrument was acknowledged before me on _Dec, 15_, 1994, by CHARLENE ANN MIKA DAILEY.

BETTY BEHNEY
MY COMMISSION EXPIRES
July 10, 1998

NOTARY PUBLIC, STATE OF TEXAS

-6-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on 08-20-13

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

STATE OF CALIFORNIA     ‖

COUNTY OF _____ ‖

     This instrument was acknowledged before me on _____,

1994, by DOLORES FAYE MIKA LAVELLE.

_____
NOTARY PUBLIC, STATE OF CALIFORNIA

STATE OF TEXAS      ‖

COUNTY OF *Travis*     ‖

     This instrument was acknowledged before me on *16th December*

1994, by EVELYN RUTH MIKA.

> ERMA C. MARTINEZ
> NOTARY PUBLIC,
> STATE OF TEXAS

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS      ‖

COUNTY OF *Bexar*     ‖

     This instrument was acknowledged before me on *Jan. 3*

1995, by GERMAINE CAROL MIKA.

> BARBARA A. BELL
> Notary Public, State of Texas
> My Comm. Exp. 05/11/98

_____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF COLORADO     ‖

COUNTY OF _____ ‖

     This instrument was acknowledged before me on _____,

1994, by NORMA LOUISE MIKA PRINCE.

_____
NOTARY PUBLIC, STATE OF COLORADO

-7-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on 08-29-13

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

MCW/mj

STATE OF TEXAS    |
COUNTY OF _____    |

    This instrument was acknowledged before me on _____,
1994, by STEPHANIE ROSE MIKA.


                                NOTARY PUBLIC, STATE OF TEXAS


STATE OF TEXAS    |
COUNTY OF Travis    |

    This instrument was acknowledged before me on 16th December,
1994, by JACQUELYN GRACE MIKA

ERMA C. MARTINEZ
NOTARY PUBLIC,
STATE OF TEXAS
Commission Expires

                NOTARY PUBLIC, STATE OF TEXAS

VR 668 405

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on _____

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy





Vol. 698 PAGE 406

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on 08-29-13

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy





92

Appendix B

COPY $57.00
CK# 17173

942 · 539

326252

WARRANTY DEED WITH VENDOR'S LIEN

Date:       July 29, 1992

Grantor:    IRENE MIKA, Individually and as Independent Executrix of the
            Estate of PROSPER A. MIKA, Deceased, and IRENE M. MIKA, as
            Trustee of the PROSPER A. MIKA TRUST

Grantor's Mailing Address (including county):

            P.O. Box 1016 BUDA TEXAS 78610
            in HAYS County

Grantee:    BARRY S. IRWIN and wife, MARY J. IRWIN

Grantee's Mailing Address (including county):

            314 LIVE OAK DRIVE BUDA, TEXAS 78610
            in Hays County

Consideration:

            $10.00 cash and other good and valuable consideration to Grantor
            paid by Grantee, the receipt of which is hereby acknowledged,
            the balance of the consideration in the sum of NINETY-FIVE
            THOUSAND, TWO HUNDRED AND NO/100 ($95,200.00) DOLLARS is at the
            special instance and request of Grantee paid to Grantor by
            MILTEX MORTGAGE, INC., and the indebtedness is evidenced by a
            note of even date herewith in the principal amount of
            NINETY-FIVE THOUSAND, TWO HUNDRED AND NO/100 ($95,200.00) DOL-
            LARS, executed by Grantee herein and payable to the order of
            MILTEX MORTGAGE, INC., 11911 Burnet Rd., STE #205, Austin, TX
            78758, or order, as therein provided, bearing interest at the
            rates therein specified, providing for acceleration of maturity
            in event of default and for attorney's fees, the payment of
            which note is secured by the vendor's lien herein retained, and
            is additionally secured by a deed of trust of even date herewith
            to Paul Schwab, Trustee.

Property (including any improvements):

            Lot Two (2), Block Eight (8), MOUNTAIN CITY OAKS, SECTION TWO, a
            subdivision in Hays County, Texas, according to the map or plat
            thereof, of record in Volume 2, Page 109, Plat Records of Hays
            County, Texas.

Reservations from and Exceptions to Conveyance and Warranty:

            This conveyance is made and accepted subject to the following
            matters, to the extent same are in effect at this time:
            Boundary line agreement recorded in Volume 695, pages 867-870,
            Real Property Records of Hays County, Texas, and any and all
            restrictions, covenants, conditions and easements, if any,
            relating to the hereinabove described property, but only to the
            extent they are still in effect, shown of record in the
            hereinabove mentioned County and State, and to all zoning laws,
            regulations and ordinances of municipal and/or other
            governmental authorities, if any, but only to the extent they
            are still in effect, relating to the hereinabove described
            property.

        Grantor, for the consideration and subject to the reservations from and

exceptions to conveyance and warranty, grants, sells, and conveys to Grantee

the property, together with all and singular the rights and appurtenances

thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs,

CERTIFIED TO BE A TRUE AND
CORRECT COPY
LIZ O. GONZALEZ, County Clerk
Hays County

OFFICIAL PUBLIC RECORDS
Hays County, Texas

1                       HCK/1mm/13,065

Exhibit E-1
West 17th MPSI



942 · 540

executors, administrators or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors and administrators, to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

It is expressly agreed that the VENDOR'S LIEN, as well as the SUPERIOR TITLE in and to the above described premises, is retained against the above described property, premises and improvements until the above described note and all interest thereon are fully paid, when this deed shall become absolute. The said VENDOR'S LIEN and SUPERIOR TITLE herein retained are hereby transferred and assigned to MILTEX MORTGAGE, INC., its successors and assigns, the payee named in said note.

When the context requires, singular nouns and pronouns include the plural.

EXECUTED this 29th day of _____July_____, 1992, to be effective as of the date first hereinabove shown.


_____
IRENE MIKA, Individually and as
Independent Executrix of the Estate
of PROSPER A. MIKA, Deceased,

_____
IRENE M. MIKA, Trustee of the PROSPER
A. MIKA TRUST


THE STATE OF TEXAS §
§
COUNTY OF HAYS §

This instrument was acknowledged before me on the 7th day of August, 1992, by IRENE MIKA, Individually and as Independent Executrix of the Estate of PROSPER A. MIKA, Deceased, and IRENE M. MIKA, as Trustee of the PROSPER A. MIKA TRUST.

_____
NOTARY PUBLIC - STATE OF TEXAS

GUERRY JORDON
Notary Public
STATE OF TEXAS
My Comm. Exp. Nov. 30, 1992

CERTIFIED TO BE A TRUE AND CORRECT COPY
LIZ Q. GONZALEZ, County Clerk
Hays County

Prepared in the Law Office of:
H. C. Kyle, III
KYLE, WALKER & GOSSETT
East Side of Courthouse Square,
P. O. Box 1708
San Marcos, Texas 78667

942 · 541

STATE OF TEXAS
COUNTY OF HAYS
I hereby certify that this instrument was FILED on
the date and at the time stamped hereon by me and was duly
RECORDED, in the Volume and Page of the named RECORDS
of Hays County, Texas, as stamped hereon by me.

AUG 13 1992



COUNTY CLERK
HAYS COUNTY, TEXAS

COUNTY CLERK

FILED
HAYS COUNTY, TEXAS
'92 AUG 13 PM 3 35

FILED
IN THE OFFICE
OF THE DISTRICT CLERK

MAR 2 7 2014

AT 1:10 P.M O'CLOCK
DENISE RODRIGUEZ
KARNES COUNTY DISTRICT CLERK

I, LIZ Q. GONZALEZ, COUNTY CLERK,
HAYS COUNTY, TEXAS, do hereby certify that this is
a true and correct copy as same appears of record
in my office. Witness my hand and seal of office on:

December 19, 2013
LIZ Q. GONZALEZ
HAYS COUNTY CLERK
BY DEPUTY



Appendix C

# OIL AND GAS LEASE

THIS AGREEMENT is executed, and to be effective from, the **5th** day of **Janu.**, 2012 between PAMELA MIKA WOLF, Lessor (whether one or more), whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and WEST 17TH RESOURCES LLC, whose mailing address is 1707 ½ Post Oak Boulevard, Houston, Texas 77056, Lessee:

1. Lessor, in consideration of Ten Dollars ($10.00) and other valuable consideration paid by Lessee, the receipt and sufficiency of which are hereby acknowledged and confessed, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee, the land covered hereby, for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, condensate, sulphur and all other minerals produced therewith, together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land," is located in the County of Karnes, State of Texas, and is described as follows:

> That entire tract of land out of the John J. Pickett Survey, A-227, in Karnes County, Texas described in Deed dated December 15, 1994 executed by Aloys Mika et al in favor of Lucian A. Pawelek et ux and recorded in Volume 668, Page 398 of the Official Records of Karnes County, Texas, said to contain 290.69 acres, more or less.

This lease also covers and includes all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by Lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which Lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain 290.69 acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options hereunder.

2. This lease shall remain in force for a term of One (1) year from the date hereof, hereinafter called "primary term" and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, Lessee covenants and agrees: (a) To deliver to the credit of Lessor, in the pipeline to which Lessee may connect its wells, the equal **TWENTY-FIVE PERCENT (25%)** part of all oil, condensate or other liquid hydrocarbons produced and saved by Lessee from said land, or from time to time, at the option of Lessee, to pay Lessor the average monthly posted market price of such **TWENTY-FIVE PERCENT (25%)** part of such oil, condensate or other liquid hydrocarbons as of the month when sold of the amount realized from the sale of such oil, condensate or other liquid hydrocarbons, whichever is greater; (b) To pay Lessor on gas and casinghead gas produced from said land (1) when sold by lessee, the **TWENTY-FIVE PERCENT (25%)** of the amount realized by lessee, computed at the mouth of the, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of the **TWENTY-FIVE PERCENT (25%)** of such gas and casinghead gas; (c) To pay Lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to fifty dollars ($50.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be delivered to Lessor at the above address, regardless of ownership or changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to Lessor or the party entitled to receive payment on or before the last date for payment. Nothing herein shall impair lessee's right to release the lease or a portion thereof as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and/or with any other land, lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 80 surface acres, plus 10% acreage tolerance; provided, however, units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain as many as 640 surface acres plus 10% acreage tolerance, if limited to one or more of the following: (1) gas, other than casinghead gas, (2) liquid hydrocarbons (condensate) which are not liquids in the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those herein permitted, either at the time established, or after enlargement, are required under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land (or in each such separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of, any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _September 9, 2013_

Carol Swize, County Clerk
Karnes County, Texas

By _Janema Villanueva_ Deputy

Exhibit I
West 17th MPSJ

satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease (including, without limitation, any shut-in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interests in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as an oil well, lessee may form a pooled oil unit that does not exceed 640 surface acres. For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as a gas well, lessee may form a pooled gas unit that does not exceed 640 surface acres plus a tolerance of 10% of 640 acres. In addition, such horizontal gas production unit may include 40 acres for each 827 feet of horizontal drainhole. Units may be established as to any one or more horizontal wells, whether classified as oil or gas and existing units may be amended or enlarged if necessary to comply with the provisions contained herein. For the purpose of determining the point in time when the right to create a pooled unit for a horizontal well under this provision may be exercised, the granting of a permit by the Railroad Commission of Texas for the drilling of a well and the commencement of drilling operation thereon shall be treated as if a well had already been completed and classified as a gas well or an oil well as specified by the operator in the naming of the unit in the declaration filed in the office of the county clerk where the land, or a portion thereof, is located.

5. Lessee may at any time and from time to time execute and deliver to Lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations, as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, re-completing, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities. If this lease covers an interest in the oil, gas or other minerals in and under the leased premises that is less than the entire fee simple estate, and a cotenant of Lessor or Lessee in said leased premises conducts operations on, or produces oil, gas or other minerals from, said leased premises or lands pooled therewith, such operations or production shall be deemed operations or production, as the case may be, by Lessee under the terms hereof, whether such operations are conducted or production obtained during or after the primary term thereof and shall cause this lease to remain in force and effect as if such operations were being conducted by Lessee or such production was being obtained from wells operated by Lessee, regardless of whether Lessee has a contractual agreement with such cotenant concerning such operations or production or whether Lessee participates in or pays Lessee's share of the costs of such operations. If such cotenant establishes production as set forth in this paragraph, Lessee shall pay to Lessor the fractional royalty set forth in the royalty provision(s) of this lease on all such production, proportionately reduced to Lessor's undivided interest in the leased premises (and pooled unit, if applicable), or if such production is shut in, Lessee may pay shut-in royalties according to the terms hereof.

7. Lessee shall have the use, free from royalty, of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by Lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event Lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, Lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever claiming by, through or under Lessor, but not otherwise. Lessor's rights, and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but Lessor agrees that lessee shall have the right at any time, if lessor is in default in payment of any such obligation, to pay or reduce same for Lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to Lessor and/or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic
copy of the original record now in my lawful custody
and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on _September 9, 2013_

Carol Swize, County Clerk
Karnes County, Texas

By _Thelma Villanueva_ Deputy

to whether it is executed by all those named herein as Lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. In the event a portion or portions of the land herein leased is pooled or unitized with other lands so as to form a pooled unit or units in accordance with the provisions of Paragraph 4 hereof, operations on, completion of a well upon, or production from such unit or units will not maintain this lease in force commencing on the third anniversary after the expiration of the primary term hereof as to the land not included in such unit or units. Commencing on the third anniversary after the end of the primary term, this lease shall also terminate as to all stratum that lie below the base of the formation that is then producing, provided, however, that if Lessee is then engaged in drilling operations on the subject land or on land with which the subject land has been pooled, or has been engaged in such operations within the 90-day period prior thereto, the termination to be effectuated under this paragraph, both as to lands outside the pooled unit and below the base of the producing formation, shall be delayed until 90 days after the cessation of such operation, provided further, that if within such 90-day period following the cessation of such operation, Lessee commences additional drilling operations on another well, such terminations shall be further delayed until 90 days after the cessation of such subsequent drilling operation and such additional successive drilling operations as may be undertaken without an interruption of more than 90 days.

13. Lessee agrees that payments for royalty on oil and gas reserved by Lessor herein and payable to Lessor under the terms of this lease will be paid to Lessor monthly as the production from said lease or any unit containing a part of said lease is sold, and that the first payment for Lessor's said royalty will be paid to Lessor within ninety (90) days after the sale of any such production from the leased premises or unit, but this provision shall not apply to the sale of products saved in testing the well before the official Railroad Commission potential test.

14. Lessee shall build and maintain fences around its slush and drainage pits and tank batteries so as to protect livestock against loss, damage or injury; and, upon completion or abandonment of any well or wells, Lessee shall fill and level off all slush pits and locations and completely clean up the drilling site of all rubbish thereon, and Lessee further agrees and will at Lessor's option level all roads and fill all road ditches constructed by Lessee on said premises immediately when such roads cease to be used in connection with Lessee's operations.

15. Lessee will indemnify, defend and hold harmless Lessor, his heirs, successors and assigns, from any and all losses, costs, damages, liabilities, claims, suits, actions, proceedings, assessments, fines and expenses (including costs of court and reasonable attorneys' fees) on account of actual or claimed injuries to or death of persons, or actual or claimed damages to property, including the lands and the property of Lessee and Lessor, or any condition that violates any law or permit, arising out of, resulting from, or in any way connected with regardless of the cause thereof.

16. Notwithstanding anything contained herein to the contrary, if, at the expiration of the primary term thereof, this lease is not being maintained in effect in any manner provided for herein, including but not limited to operations upon or production from the leased premises or on lands pooled therewith, Lessee, its successors and/or assigns, shall have the exclusive right and option to extend the primary term thereof as to the lands then covered hereby or any portion thereof chosen by Lessee, for an additional period of one (1) year, such option to be exercised and evidenced by the payment or tender to Lessor, on or before said date, of a sum equal to __$1,900__ per net mineral acre to be covered by the extension.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

By: _Pamela Mika Wolf_
PAMELA MIKA WOLF

## ACKNOWLEDGEMENT

STATE OF TEXAS §

COUNTY OF KARNES §

This instrument was acknowledged before me on the 5th day of January 2013 by **Pamela Mika Wolf**.

HANNAH KAHLENE CRAFT
Notary Public, State of Texas
My Commission Expires
July 27, 2016

_Hannah Kahlene Craft_ Notary Public,
State of Texas
Notary's name:
(Printed): __Hannah Kahlene Craft__
Notary's commission expires: 07/27/16

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic
copy of the original record now in my lawful custody
and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on _September 9, 2013_
Carol Swize, County Clerk
Karnes County, Texas
By _Norma Villanueva_ Deputy

00118906 BK OR Vol 1095 Pg 25

Filed for Record in:
Karnes County

On: Jan 09,2013 at 01:18P

As a:
Recording Official Record

Document Number:        00118906

Amount:                 24.00

Receipt Number - 62234
By,
Elizandra Garcia

STATE OF TEXAS            COUNTY OF KARNES
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
    Karnes County
as stamped hereon by me.
Jan 09,2013

Carol Swize, Karnes County Clerk
Karnes County





CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful custody
and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on _September 9, 2013_
        Carol Swize, County Clerk
        Karnes County, Texas

By_____Deputy

Appendix D

# OIL AND GAS LEASE

THIS AGREEMENT is executed, and to be effective from, the 5th day of January, 2012 between THOMAS MIKA, Lessor (whether one or more), whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and WEST 17TH RESOURCES LLC, whose mailing address is 1707 ½ Post Oak Boulevard, Houston, Texas 77056, Lessee:

1. Lessor, in consideration of Ten Dollars ($10.00) and other valuable consideration paid by Lessee, the receipt and sufficiency of which are hereby acknowledged and confessed, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee, the land covered hereby, for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, condensate, sulphur and all other minerals produced therewith, together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land," is located in the County of Karnes, State of Texas, and is described as follows:

> That entire tract of land out of the John J. Pickett Survey, A-227, in Karnes County, Texas described in Deed dated December 15, 1994 executed by Aloys Mika et al in favor of Lucian A. Pawelek et ux and recorded in Volume 668, Page 398 of the Official Records of Karnes County, Texas, said to contain 290.69 acres, more or less.

This lease also covers and includes all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by Lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which Lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain 290.69 acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options hereunder.

2. This lease shall remain in force for a term of One (1) year from the date hereof, hereinafter called "primary term" and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, Lessee covenants and agrees: (a) To deliver to the credit of Lessor, in the pipeline to which Lessee may connect its wells, the equal TWENTY-FIVE PERCENT (25%) part of all oil, condensate or other liquid hydrocarbons produced and saved by Lessee from said land, or from time to time, at the option of Lessee, to pay Lessor the average monthly posted market price of such TWENTY-FIVE PERCENT (25%) part of such oil, condensate or other liquid hydrocarbons as of the month when sold of the amount realized from the sale of such oil, condensate or other liquid hydrocarbons, whichever is greater; (b) To pay Lessor on gas and casinghead gas produced from said land (1) when sold by lessee, the TWENTY-FIVE PERCENT (25%) of the amount realized by lessee, computed at the mouth of the, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of the TWENTY-FIVE PERCENT (25%) of such gas and casinghead gas; (c) To pay Lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-ins, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to fifty dollars ($50.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be delivered to Lessor at the above address, regardless of ownership or changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to Lessor or the party entitled to receive payment on or before the last date for payment. Nothing herein shall impair lessee's right to release the lease or a portion thereof as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and/or with any other land, lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 80 surface acres, plus 10% acreage tolerance; provided, however, units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain as many as 640 surface acres plus 10% acreage tolerance, if limited to one or more of the following: (1) gas, other than casinghead gas, (2) liquid hydrocarbons (condensate) which are not liquids in the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those herein permitted, either at the time established, or after enlargement, are required under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land (or in each such separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 9, 2013
Carol Swize, County Clerk
Karnes County, Texas
By Tanena Villanueva Deputy

Exhibit J
West 17th MPSJ

satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease (including, without limitation, any shut-in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interests in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as an oil well, lessee may form a pooled oil unit that does not exceed 640 surface acres. For any well that is drilled as a "horizontal" well, as such term is defined by the Railroad Commission of Texas, and such well is then or thereafter classified as a gas well, lessee may form a pooled gas unit that does not exceed 640 surface acres plus a tolerance of 10% of 640 acres. In addition, such horizontal gas production unit may include 40 acres for each 827 feet of horizontal drainhole. Units may be established as to any one or more horizontal wells, whether classified as oil or gas and existing units may be amended or enlarged if necessary to comply with the provisions contained herein. For the purpose of determining the point in time when the right to create a pooled unit for a horizontal well under this provision may be exercised, the granting of a permit by the Railroad Commission of Texas for the drilling of a well and the commencement of drilling operation thereon shall be treated as if a well had already been completed and classified as a gas well or an oil well as specified by the operator in the naming of the unit in the declaration filed in the office of the county clerk where the land, or a portion thereof, is located.

5. Lessee may at any time and from time to time execute and deliver to Lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations, as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, re-completing, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other minerals, whether or not in paying quantities. If this lease covers an interest in the oil, gas or other minerals in and under the leased premises that is less than the entire fee simple estate, and a cotenant of Lessor or Lessee in said leased premises conducts operations on, or produces oil, gas or other minerals from, said leased premises or lands pooled therewith, such operations or production shall be deemed operations or production, as the case may be, by Lessee under the terms hereof, whether such operations be conducted or production obtained during or after the primary term thereof and shall cause this lease to remain in force and effect as if such operations were being conducted by Lessee or such production was being obtained from wells operated by Lessee, regardless of whether Lessee has a contractual agreement with such cotenant concerning such operations or production or whether Lessee participates in or pays Lessee's share of the costs of such operations. If such cotenant establishes production as set forth in this paragraph, Lessee shall pay to Lessor the fractional royalty set forth in the royalty provision(s) of this lease on all such production, proportionately reduced to Lessor's undivided interest in the leased premises (and pooled unit, if applicable), or if such production is shut in, Lessee may pay shut-in royalties according to the terms hereof.

7. Lessee shall have the use, free from royalty, of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by Lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event Lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, Lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever claiming by, through or under Lessor, but not otherwise. Lessor's rights, and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but Lessor agrees that lessee shall have the right at any time, if lessor is in default in payment of any such obligation, to pay or reduce same for Lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to Lessor and/or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard

**CERTIFIED COPY CERTIFICATE**
**STATE OF TEXAS**
**COUNTY OF KARNES**
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 9, 2013

Carol Swize, County Clerk
Karnes County, Texas

By _____ Deputy

to whether it is executed by all those named herein as Lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. In the event a portion or portions of the land herein leased is pooled or unitized with other lands so as to form a pooled unit or units in accordance with the provisions of Paragraph 4 hereof, operations on, completion of a well upon, or production from such unit or units will not maintain this lease in force commencing on the third anniversary after the expiration of the primary term hereof as to the land not included in such unit or units. Commencing on the third anniversary after the end of the primary term, this lease shall also terminate as to all stratum that lie below the base of the formation that is then producing, provided, however, that if Lessee is then engaged in drilling operations on the subject land or on land with which the subject land has been pooled, or has been engaged in such operations within the 90-day period prior thereto, the termination to be effectuated under this paragraph, both as to lands outside the pooled unit and below the base of the producing formation, shall be delayed until 90 days after the cessation of such operation, provided further, that if within such 90-day period following the cessation of such operation, Lessee commences additional drilling operations on another well, such terminations shall be further delayed until 90 days after the cessation of such subsequent drilling operation and such additional successive drilling operations as may be undertaken without an interruption of more than 90 days.

13. Lessee agrees that payments for royalty on oil and gas reserved by Lessor herein and payable to Lessor under the terms of this lease will be paid to Lessor monthly as the production from said lease or any unit containing a part of said lease is sold, and that the first payment for Lessor's said royalty will be paid to Lessor within ninety (90) days after the sale of any such production from the leased premises or unit, but this provision shall not apply to the sale of products saved in testing the well before the official Railroad Commission potential test.

14. Lessee shall build and maintain fences around its slush and drainage pits and tank batteries so as to protect livestock against loss, damage or injury; and, upon completion or abandonment of any well or wells, Lessee shall fill and level off all slush pits and locations and completely clean up the drilling site of all rubbish thereon, and Lessee further agrees and will at Lessor's option level all roads and fill all road ditches constructed by Lessee on said premises immediately when such roads cease to be used in connection with Lessee's operations.

15. Lessee will indemnify, defend and hold harmless Lessor, his heirs, successors and assigns, from any and all losses, costs, damages, liabilities, claims, suits, actions, proceedings, assessments, fines and expenses (including costs of court and reasonable attorneys' fees) on account of actual or claimed injuries to or death of persons, or actual or claimed damages to property, including the lands and the property of Lessee and Lessor, or any condition that violates any law or permit, arising out of, resulting from, or in any way connected with regardless of the cause thereof.

16. Notwithstanding anything contained herein to the contrary, if, at the expiration of the primary term thereof, this lease is not being maintained in effect in any manner provided for herein, including but not limited to operations upon or production from the leased premises or on lands pooled therewith, Lessee, its successors and/or assigns, shall have the exclusive right and option to extend the primary term thereof as to the lands then covered hereby or any portion thereof chosen by Lessee, for an additional period of one (1) year, such option to be exercised and evidenced by the payment or tender to Lessor, on or before said date, of a sum equal to __$1,900__ per net mineral acre to be covered by the extension,

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

By: _Thomas Mika_
THOMAS MIKA

## ACKNOWLEDGEMENT

STATE OF TEXAS     §

COUNTY OF KARNES     §

This instrument was acknowledged before me on the 5th day of January 2013 by **Thomas Mika**.

HANNAH KAHLENE CRAFT
Notary Public, State of Texas
My Commission Expires
July 27, 2016

_Hannah Kahlene Craft_ Notary Public,
State of Texas
Notary's name:
(Printed): __Hannah Kahlene Craft__

Notary's commission expires: 07/27/2016

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _September 9, 2013_
Carol Swize, County Clerk
Karnes County, Texas
By _Vanema Villanueva_ Deputy

Filed for Record in:
  Karnes County

On: Jan 09,2013 at 01:18P

As a:
Recording Official Record

Document Number:     00118905

Amount:                   24.00

      Receipt Number - 62234
                By:
      Elizandra Garcia

STATE OF TEXAS               COUNTY OF KARNES
      I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
      Karnes County
as stamped hereon by me.
Jan 09,2013

Carol Swize, Karnes County Clerk
Karnes County

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful custody
and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 9, 2013

      Carol Swize, County Clerk
      Karnes County, Texas

By Thanera Villanueva Deputy



Appendix E

This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.

Permit Status: **As Submitted**

The RRC has not approved this application. Duplication or distribution of information is at the user's own risk.

API No. 42-255-32208

Application Status # 728834

SWR Exception Case/Docket No. _____

1. RRC Operator No. 594675

2. Operator's Name (as shown on form P-5, Organization Report)

MURPHY EXPL. & PROD. CO. - USA

3. Operator Address (include street, city, state, zip):

4. Lease Name
WHITFIELD EAST UNIT

5. Well No. 1H

6. Purpose of filing (mark ALL appropriate boxes):
[X] New Drill  [ ] Recompletion  [ ] Reclass  [ ] Field Transfer  [ ] Re-Enter
[X] Amended  [ ] Amended as Drilled (BHL) (Also File Form W-1D)

7. Wellbore Profile (mark ALL appropriate boxes):
[ ] Vertical  [X] Horizontal (Also File Form W-1H)  [ ] Directional (Also File Form W-1D)  [ ] Sidetrack

8. Total Depth 12135

9. Do you have the right to develop the minerals under any right-of-way? [X] Yes [ ] No

10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)? [X] Yes [ ] No

11. RRC District No. 02

12. County KARNES

13. Surface Location [X] Land  [ ] Bay/Estuary  [ ] Inland Waterway  [ ] Offshore

14. This well is to be located 11 miles in a NE direction from Karnes which is the nearest town in the county of the well site.

15. Section _____ 16. Block _____ 17. Survey PICKET, J J

18. Abstract No. A-227

19. Distance to nearest lease line: 100 ft.

20. Number of contiguous acres in lease, pooled unit, or unitized tract: 297.8

21. Lease Perpendiculars: 605 ft from the W line and 253 line.

22. Survey Perpendiculars: 1732 ft from the E line and 5376 line.

N

S

23. Is this a pooled unit? [X] Yes [ ] No

24. Unitization Docket No: _____

25. Are you applying for Substandard Acreage Field? [ ] Yes [X] No (attach Form W-1A)

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12135 | 0.00 | 1 |
| | | | | | | |
| | | | | | | |

Remarks
Exhibit N
West 17th MPSJ

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

Nicole Holloway, Regulatory Analyst    Oct 22, 2012
Name of filer                          Date submitted

(281)675-9453    Nicole_Holloway@Murphyoilcorp.com
Phone            E-mail Address (OPTIONAL)

RAILROAD COMMISSION OF TEXAS
OIL & GAS DIVISION

**Form W-1H**
Supplemental Horizontal Well Information

07/2004

**APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER**

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

Status # 728834

Approved Date:

Permit Status: **As Submitted**

*The RRC has not approved this application.*
*Duplication or distribution of information is*
*at the user's own risk.*

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) |
|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA |

3. Lease Name   WHITFIELD EAST UNIT

4. Well No.   1H

5. Field as shown on Form W-1   EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District  02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
330 ft. from the   W   line, and   100   ft. from the   S   line

12. Terminus Survey Line Perpendiculars
1949 ft. from the   E   line, and   100   ft. from the   S   line

13. Penetration Point Lease Line Perpendiculars
330 ft. from the   W   line, and   691   ft. from the   N   line

# CERTIFICATE OF
# POOLING AUTHORITY

# P-12

Revised 05/2001

| 1. Field Name(s) | 2. Lease/ID Number (if assigned) | 3. RRC District Number |
|---|---|---|
| Eagleville (Eagleford - 2) | | 02 |
| 4. Operator Name | 5. Operator P-5 Number | 6. Well Number |
| Murphy Expl. & Prod. Co. - USA | 594675 | 1H |
| 7. Pooled Unit Name | 8. API Number | 9. Purpose of Filing |
| Whitfield East Unit | | ☑ Drilling Permit (W-1) |
| 10. County | 11. Total acres in pooled unit | ☐ Completion Report |
| Karnes | 297.8 | |

## DESCRIPTION OF INDIVIDUAL TRACTS CONTAINED WITHIN THE POOLED UNIT

| TRACT/PLAT IDENTIFIER | TRACT NAME | ACRES IN TRACT (See list #7 below) | INDICATE UNDIVIDED INTERESTS UNLEASED | NON-POOLED |
|---|---|---|---|---|
| *1. | Lucian A. Pawelek, ET UX | 176.8 | ☐ | ☐ |
| 2. | Roy Janysek, ET UX | 60.0 | ☐ | ☐ |
| 3. | 4-J Mineral, LTD. | 61.0 | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

## CERTIFICATION:

I declare under penalties prescribed pursuant to the Sec. 91.143, Texas Natural Resources Code, that I am authorized to make the foregoing statements and that the information provided by me or under my direction on this Certificate of Pooling Authority is true, correct, and complete to the best of my knowledge.

| Signature | Kathy Hutching |
|---|---|
| Sr. Regulatory Analyst | Print Name |
| Title | Kathy_Hutching@Murphyoilcorp.com | 11/22/2011 | (281) 717-5143 |
| | E-mail (if available) | Date | Phone |

INSTRUCTIONS — Reference: Statewide Rules 31, 38 and 40

1. When two or more tracts are pooled to form a unit to obtain a drilling permit, file completion paperwork, or reform a pooled unit pursuant to Rule 38(d)(3) the operator must file an original Certificate of Pooling Authority and certified plat.
2. The certified plat shall designate each tract with an outline and a tract identifier. The tract identifier on the plat shall correspond to the tract identifier and associated information listed on the Certificate.
3. If within an individual tract, a non-pooled and/or unleased interest exists, indicate by checking the appropriate box.
4. If the Purpose of Filing is to obtain a drilling permit, in box #1 list all applicable fields separately or enter "All Fields" if the Certificate pertains to all fields requested on Form W-1.
5. If the Purpose of Filing is to file completion paperwork, enter the applicable field name in box #1 for the completion.
6. Identify the drill site tract with an * to the left of the tract identifier.
7. The total number of acres in the pooled unit in #11 should equal the total of all acres in the individual tracts listed.

Page 1 of 1

SWL 37 - Murphy owned offset



SCALE IN FEET
1000'    500'    0    1000'

NOTE:
SURFACE LOCATION IS APPROXIMATELY 11
MILES NORTHEAST OF KARNES CITY, TEXAS.
SURVEY ABSTRACT BOUNDARY NOT FIELD VERIFIED.

SURFACE LOCATION
GRND ELEV. = 315.9' (NAVD 88)
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD EAST UNIT WELL NO. 1H
X =  (NAD 27)      2,890,075
Y =               425,607
Lat. (NAD 27)     28° 00' 20.24" N
Lon.              97° 46' 46.51" W
Lat. (NAD 83)     28° 00' 21.13" N
Lon.              97° 46' 47.51" W

AS DRILLED PP (MD = 11,804)
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD EAST UNIT WELL NO. 1H
X =  (NAD 27)      2,890,717
Y =               427,563
Lat. (NAD 27)     28° 00' 17.35" N
Lon.              97° 46' 50.55" W
Lat. (NAD 83)     28° 00' 18.15" N
Lon.              97° 46' 51.55" W

J.J. PICKET
A - 227

AS DRILLED FTP (MD = 12,542)
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD EAST UNIT WELL NO. 1H
X =  (NAD 27)      2,890,602
Y =               427,805
Lat. (NAD 27)     28° 00' 11.69" N
Lon.              97° 46' 51.94" W
Lat. (NAD 83)     28° 00' 12.53" N
Lon.              97° 46' 53.04" W

W. C. BULLOCK
A -31

AS DRILLED LTP (MD = 16,602)
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD EAST UNIT WELL NO. 1H
X =  (NAD 27)      2,890,675
Y =               422,276
Lat. (NAD 27)     28° 59' 30.85" N
Lon.              97° 46' 49.36" W
Lat. (NAD 83)     28° 59' 31.76" N
Lon.              97° 46' 50.86" W

F. J. HASKINS
A - 136

AS DRILLED BHL (MD = 16,854)
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD EAST UNIT WELL NO. 1H
X =  (NAD 27)      2,889,511
Y =               422,097
Lat. (NAD 27)     28° 59' 27.75" N
Lon.              97° 46' 46.08" W
Lat. (NAD 83)     28° 59' 28.66" N
Lon.              97° 46' 46.98" W

Murphy

WHITFIELD EAST 1H AS DRILLED BORE PATH

UNIT LINE
UNIT LINE / SURVEY LINE
SURVEY LINE
CO RD 303
CO RD 311
CO RD 312
CO RD 311

LEGEND
——— LEASE BOUNDARY
– – – AS DRILLED BOREPATH
········ ABSTRACT BOUNDARY
SHL    SURFACE HOLE LOCATION
PP     PENETRATION POINT
FTP    FIRST TAKE POINT
LTP    LAST TAKE POINT
BHL    BOTTOM HOLE LOCATION/TERMINUS

NOTE:
THIS PLAT REPRESENTS A SURVEY MADE ON THE GROUND FOR A WELL LOCATION. IT IS NOT A
BOUNDARY SURVEY. AS SUCH, THIS DOES NOT, NOR WAS IT INTENDED TO, COMPLY WITH THE
TRRPLS MINIMUM STANDARDS OF PRACTICE FOR A LAND BOUNDARY SURVEY. LEASE LINES
WERE ESTABLISHED AND COMPILED FROM INFORMATION PROVIDED BY OTHERS. THE PLAT IS
STRICTLY INTENDED FOR THE USE OF MURPHY EXPLORATION & PRODUCTION COMPANY FOR
ACQUIRING TEXAS RAILROAD COMMISSION PERMITS FOR OIL AND GAS EXPLORATION IN
TEXAS.

MEASURED DEPTHS (MD) REFLECTED ON THIS PLAT REPRESENT OVERALL BORE
LENGTH, AND ARE NOT ELEVATIONS RELATIVE TO VERTICAL SURVEY DATUM.

ALL AS DRILLED INFORMATION REPRESENTED ON THE PLAT WAS PROVIDED BY:
DOCUMENT: MURPHY EXPL. & PROD. CO. - USA - NEW PERF5 FOR WHITFIELD EAST 1H
DATED: 9/21/11
DOCUMENT: LEAM DRILLING SYSTEMS, INC. - SURVEY REPORT - WHITFIELD EAST NO. 1H
DATED: 09/09/2012.

I CERTIFY THIS PLAT REPRESENTS A SURVEY
PERFORMED UNDER MY DIRECTION.

JOSHUA C. M. HAZEN
6203

JOSHUA C. M. HAZEN, R.P.L.S.
STATE OF TEXAS R.P.L.S. NO. 6203

| TRACT | OWNERSHIP | ACREAGE |
|---|---|---|
| 1 | EUGINA A. PAWELEK, ET UX | 176.9 |
| 2 | ROY JANYSEK ET AL | 50.0 |
| 3 | 4 J MINERAL, LTD. | 40.9 |
| | TOTAL: | 267.8 |

| | UNIT | SURVEY |
|---|---|---|
| SHL | ±253' FNL ±605' FWL | ±53'? FSL J.J. PICKET, A-227 ±1732' FEL J.J. PICKET, A-227 |
| PP | ±567' FNL | J.J. PICKET, A-227 |
| FTP | ±243' FNL ±122' FWL | J.J. PICKET, A-227 |
| LTP | ±30' FSL ±337' FWL | J.J. PICKET, A-227 |
| BHL | ±76' FSL ±370' FWL | ±76' FSL J.J. PICKET, A-227 ±1909' FEL J.J. PICKET, A-227 |

ALL COORDINATES:
PROJECTION: TEXAS SOUTH CENTRAL ZONE
HORIZONTAL DATUM: NAD 27
VERTICAL DATUM: NAVD88
UNITS: U.S. SURVEY FEET

| REV. # | DESCRIPTION | DATE |
|---|---|---|

MURPHY
EXPLORATION & PRODUCTION CO.

MURPHY EXPL. & PROD. CO. - USA
FINAL "AS-COMPLETED" PLAT
WHITFIELD EAST UNIT WELL NO. 1H
LOCATED IN THE J. J. PICKET SURVEY, A-227
KARNES COUNTY, TEXAS

| DRAWN | LFC |
|---|---|
| CHECKED | JGMH |
| APPROVED | JGMH |
| DWG DATE | 10/19/12 |
| DWG SCALE | 1"=1000' |

TBS T. BAKER SMITH

HOUSTON OFFICE (281)240-0113   FAX (281)240-0246
110756_ASCOMP_WHITFIELD EAST_1H.DWG
PROJ NO. 2011.0756   C.C. NO.



# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

**FORM W-1** 07/2004

## APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.

**Permit Status:** Approved

| API No. 42-255-32208 | |
|---|---|
| Drilling Permit # 728834 | |
| SWR Exception Case/Docket No. 0278980 (R37) | |

1. RRC Operator No. **594675**

2. Operator's Name (as shown on form P-5, Organization Report)
**MURPHY EXPL. & PROD. CO. - USA**

3. Operator Address (include street, city, state, zip):

4. Lease Name **WHITFIELD EAST UNIT**    5. Well No. **1H**

6. Purpose of filing (mark ALL appropriate boxes):
[X] New Drill  [ ] Recompletion  [ ] Reclass  [ ] Field Transfer  [ ] Re-Enter
[X] Amended  [ ] Amended as Drilled (BHL) (Also File Form W-1H)

7. Wellbore Profile (mark ALL appropriate boxes):
[ ] Vertical  [X] Horizontal (Also File Form W-1H)  [ ] Directional (Also File Form W-1D)  [ ] Sidetrack

8. Total Depth **12135**

9. Do you have the right to develop the minerals under any right-of-way? [X] Yes [ ] No

10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)? [ ] Yes [X] No

11. RRC District No. **02**

12. County **KARNES**

13. Surface Location [X] Land [ ] Bay/Estuary [ ] Inland Waterway [ ] Offshore

14. This well is to be located **11** miles in a **NE** direction from **KARNES** which is the nearest town in the county of the well site.

15. Section    16. Block    17. Survey **PICKET, J J**    18. Abstract No. **A-227**

19. Distance to nearest lease line: **120** ft.

20. Number of contiguous acres in lease, pooled unit, or unitized tract: **297.8**

21. Lease Perpendiculars: **605** ft from the **W** line and **253** ft from the **N** line.

22. Survey Perpendiculars: **1732** ft from the **E** line and **5376** ft from the **S** line.

23. Is this a pooled unit? [X] Yes [ ] No

24. Unitization Docket No:

25. Are you applying for Substandard Acreage Field? [ ] Yes [X] No (attach Form W-1A)

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12135 | 0.00 | 1 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Remarks**

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

**Nicole Holloway, Regulatory Analyst**    **Oct 22, 2012**
Name of filer    Date submitted

**(281)675-9453**    Nicole_Holloway@Murphyoilcorp.com
Phone    E-mail Address (OPTIONAL)

Page 1 of 2

**Form W-1H**
Supplemental Horizontal Well Information

07/2004

Permit # 728834

Approved Date: Oct 26, 2012

RAILROAD COMMISSION OF TEXAS
OIL & GAS DIVISION

**APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER**

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

Permit Status: **Approved**

The RRC has not approved this application.
Duplication or distribution of information is
at the user's own risk

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) |
|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA |

| 3. Lease Name | 4. Well No. |
|---|---|
| WHITFIELD EAST UNIT | 1H |

5. Field as shown on Form W-1    EAGLEVILLE (EAGLE FORD-2)  (Field # 27135750, RRC District  02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
370 ft. from the ___ W ___ line, and ___ 78 ___ ft. from the ___ S ___ line

12. Terminus Survey Line Perpendiculars
1909 ft. from the ___ E ___ line, and ___ 78 ___ ft. from the ___ S ___ line

13. Penetration Point Lease Line Perpendiculars
243 ft. from the ___ W ___ line, and ___ 557 ___ ft. from the ___ N ___ line

Appendix F

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

### APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

**FORM W-1** 07/2004

This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.

Permit Status: **As Submitted**

The RRC has not approved this application.
Duplication or distribution of information is at the user's own risk.

| Field | Value |
|---|---|
| API No. | |
| Application Status # | 728837 |
| SWR Exception Case/Docket No. | |
| 1. RRC Operator No. | 594675 |
| 2. Operator's Name (as shown on form P-5, Organization Report) | MURPHY EXPL. & PROD. CO. - USA |
| 3. Operator Address (include street, city, state, zip): | |
| 4. Lease Name | WHITFIELD WEST UNIT |
| 5. Well No. | 1H |

**6. Purpose of filing (mark ALL appropriate boxes):**
- [X] New Drill
- [ ] Amended
- [ ] Recompletion
- [ ] Amended as Drilled (BHH)
- [ ] Reclass
- [ ] Field Transfer
- [ ] Re-Enter

**7. Wellbore Profile (mark ALL appropriate boxes):**
- [ ] Vertical
- [X] Horizontal (Also File Form W-1H)
- [ ] Directional (Also File Form W-1D)
- [ ] Sidetrack

8. Total Depth: **12089**

9. Do you have the right to develop the minerals under any right-of-way? [X] Yes [ ] No

10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)? [X] Yes [ ] No

| 11. RRC District No. | 12. County | 13. Surface Location |
|---|---|---|
| 02 | KARNES | [X] Land [ ] Bay/Estuary [ ] Inland Waterway [ ] Offshore |

14. This well is to be located _____ miles in a _____ NE direction from _____ Karnes, which is the nearest town in the county of the well site.

| 15. Section | 16. Block | 17. Survey | 18. Abstract No. | 19. Distance to nearest lease line: |
|---|---|---|---|---|
| 11 | | PICKET, J J | A-227 | 100 ft. |

20. Number of contiguous acres in lease, pooled unit, or unitized tract: **194.3**

**21. Lease Perpendiculars:** 249 ft from the [ ] N / line and 633 ft from the [ ] W / line.

**22. Survey Perpendiculars:** 3140 ft from the [ ] E / line and 5400 ft from the [ ] S / line.

23. Is this a pooled unit? [X] Yes [ ] No

24. Unitization Docket No:

25. Are you applying for Substandard Acreage Field? [ ] Yes [X] No (attach Form W-1A)

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12089 | 0.00 | 1 |

**Remarks**

Exhibit O
West 17th MPSJ

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

Kathy Hutching, Sr. HSE Analyst
(Regulator)

Name of filer: Kathy Hutching, Sr. HSE Analyst

Phone: (281)6752143

E-mail Address (OPTIONAL): Katherine_Hutching@murphyoilcorp.com

Date submitted: Nov 22, 2011

RAILROAD COMMISSION OF TEXAS
OIL & GAS DIVISION

Form W-1H
Supplemental Horizontal Well Information

07/2004

APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

Permit Status:     As Submitted

*The RRC has not approved this application.*
*Duplication or distribution of information is*
*at the user's own risk.*

| | | Status # | 728837 |
|---|---|---|---|
| | | Approved Date: | |

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
|---|---|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD WEST UNIT | 1H |

5. Field as shown on Form W-1     EAGLEVILLE (EAGLE FORD-2)  (Field # 27135750, RRC District  02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
    400 ft. from the   E   line, and   100   S   line

12. Terminus Survey Line Perpendiculars
    2679 ft. from the   E   line, and   100   ft. from the   S   line

13. Penetration Point Lease Line Perpendiculars
    400 ft. from the   E   line, and   696 ft. from the   N   line

# CERTIFICATE OF
# POOLING AUTHORITY

# P-12

Revised 05/2001

| 1. Field Name(s) | 2. Lease/ID Number (if assigned) | 3. RRC District Number |
|---|---|---|
| Eagleville (Eagleford -2) | | 02 |
| 4. Operator Name | 5. Operator P-5 Number | 6. Well Number |
| Murphy Expl. & Prod. Co. - USA | 594675 | 1H |
| 7. Pooled Unit Name | 8. API Number | 9. Purpose of Filing |
| Whitfield West Unit | | ☑ Drilling Permit (W-1) |
| 10. County | 11. Total acres in pooled unit | ☐ Completion Report |
| Karnes | 194.3 | |

## DESCRIPTION OF INDIVIDUAL TRACTS CONTAINED WITHIN THE POOLED UNIT

| TRACT/PLAT IDENTIFIER | TRACT NAME | ACRES IN TRACT (See Inst. #7 below) | INDICATE UNDIVIDED INTERESTS | |
|---|---|---|---|---|
| | | | UNLEASED | NON-POOLED |
| *1. | Lucian A. Pawelek, ET UX | 113.8 | ☐ | ☐ |
| 2. | Fabian Pawelek, ET AL | 80.5 | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

CERTIFICATION:

I declare under penalties prescribed pursuant to the Sec. 91.143, Texas Natural Resources Code, that I am authorized to make the foregoing statements and that the information provided by me or under my direction on this Certificate of Pooling Authority is true, correct, and complete to the best of my knowledge.

| Signature | | Kathy Hutching | |
|---|---|---|---|
| Sr. Regulatory Analyst | Kathy_Hutching@Murphyoilcorp.com | Print Name | |
| Title | E-mail (if available) | 11/22/2011 | (281) 717-5143 |
| | | Date | Phone |

INSTRUCTIONS — Reference: Statewide Rules 31, 38 and 40

1. When two or more tracts are pooled to form a unit to obtain a drilling permit, file completion paperwork, or reform a pooled unit pursuant to Rule 38(d)(3) the operator must file an original Certificate of Pooling Authority and certified plat.
2. The certified plat shall designate each tract with an outline and a tract identifier. The tract identifier on the plat shall correspond to the tract identifier and associated information listed on the Certificate.
3. If within an individual tract, a non-pooled and/or unleased interest exists, indicate by checking the appropriate box.
4. If the Purpose of Filing is to obtain a drilling permit, in box #1 list all applicable fields separately or enter "All Fields" if the Certificate pertains to all fields requested on Form W-1.
5. If the Purpose of Filing is to file completion paperwork, enter the applicable field name in box #1 for the completion.
6. Identify the drill site tract with an * to the left of the tract identifier.
7. The total number of acres in the pooled unit in #11 should equal the total of all acres in the individual tracts listed.

Page 1 of 1



| TRACT | OWNERSHIP | ACREAGE |
|---|---|---|
| 1 | LUCIAN J. PAWELEK, ET UX | 413.8 |
| 2 | FABIAN PAWELEK ET AL | 80.5 |
| | TOTAL | 494.3 |

*J. J. PICKET*
*A - 227*

PROPOSED SURFACE LOCATION
GRND ELEV. = 321.2' (NAVD 88)
MURPHY EXPL. & PROD. CO. - USA
*WHITFIELD WEST UNIT WELL NO. 1H*

| | X = (NAD 27) | 2,368,907' |
|---|---|---|
| | Y = | 428,266' |
| Lat. (NAD 27) | | 28° 00' 20.35"N |
| Lon. | | 97° 47' 02.37"W |
| Lat. (NAD 83) | | 28° 00' 21.26"N |
| Lon. | | 97° 47' 03.57"W |

±248'

±633'

±3140'

CO RD 312

±400'

PENETRATION POINT
MURPHY EXPL. & PROD. CO. - USA
*WHITFIELD WEST UNIT WELL NO. 1H*

| | X = (NAD 27) | 2,369,027' |
|---|---|---|
| | Y = | 427,821' |
| Lat. (NAD 27) | | 28° 00' 15.91"N |
| Lon. | | 97° 46' 57.81"W |
| Lat. (NAD 83) | | 28° 00' 16.81"N |
| Lon. | | 97° 46' 58.81"W |

*W. C. BULLOCK*
*A - 31*

±2731'

① WHITFIELD WEST UNIT NO. 1H

②

PROPOSED BHL
MURPHY EXPL. & PROD. CO. - USA
*WHITFIELD WEST UNIT WELL NO. 1H*

| | X = (NAD 27) | 2,369,142' |
|---|---|---|
| | Y = | 422,074' |
| Lat. (NAD 27) | | 28° 59' 22.91"N |
| Lon. | | 97° 46' 57.65"W |
| Lat. (NAD 83) | | 28° 59' 29.81"N |
| Lon. | | 97° 46' 58.65"W |

±400'

SURVEY LINE

CO RD 303

±100'

±2679'

CO RD 303

SURVEY LINE

*F. J. HASKINS*
*A - 136*

SCALE IN FEET
1000    500    0    1000

NOTE:
SURFACE LOCATION IS APPROXIMATELY 11 MILES NORTHEAST OF KARNES CITY, TEXAS.

SURVEY ABSTRACT BOUNDARY NOT FIELD VERIFIED.

THIS PLAT REPRESENTS A SURVEY MADE ON THE GROUND FOR A WELL LOCATION, IT IS NOT A BOUNDARY SURVEY. AS SUCH, THIS DOES NOT, NOR WAS IT INTENDED TO COMPLY WITH THE TSPLS MINIMUM STANDARDS OF PRACTICE FOR A LAND BOUNDARY SURVEY. USAGE LINES WERE ESTABLISHED AND COMPILED FROM INFORMATION PROVIDED BY OTHERS. THE PLAT IS STRICTLY INTENDED FOR THE USE OF MURPHY EXPLORATION & PRODUCTION COMPANY FOR ACQUIRING TEXAS RAILROAD COMMISSION PERMITS FOR OIL AND GAS EXPLORATION IN TEXAS.

| | UNIT | SURVEY |
|---|---|---|
| SHL | ±248' - FNL | ±3140' - FEL J.J. PICKET, A-227 |
| PP | ±633' - FNL | ±3140' - FEL J.J. PICKET, A-227 |
| PP | ±698' - FNL | ±4048' - FEL J.J. PICKET, A-227 |
| BHL | ±400' - FEL | ±2731' - FEL J.J. PICKET, A-227 |
| BHL | ±100' - FEL | ±100' - FSL J.J. PICKET, A-227 |
| | ±400' - FEL | ±2679' - FEL J.J. PICKET, A-227 |

LEGEND
— · — UNIT BOUNDARY
———— TRACT BOUNDARY
———— ABSTRACT BOUNDARY
SHL - SURFACE HOLE LOCATION
PP - PENETRATION POINT
BHL - BOTTOM HOLE LOCATION

| SHL TO PP | S 42°02.2' E 904' |
|---|---|
| PP TO BHL | S 00°45.09' E 4645' |

ALL COORDINATES:
PROJECTION: TEXAS SOUTH CENTRAL ZONE
HORIZONTAL DATUM: NAD 27
VERTICAL DATUM: NAVD88
UNITS: U.S. SURVEY FEET

I CERTIFY THIS PLAT REPRESENTS A SURVEY PERFORMED UNDER MY SUPERVISION.

STATE OF TEXAS
REGISTERED
GERALD L. WRIGHT
5334
PROFESSIONAL
SURVEYOR

GERALD L. WRIGHT
STATE OF TEXAS R.P.L.S. NO. 5334

**MURPHY**
EXPLORATION & PRODUCTION CO.

MURPHY EXPL. & PROD. CO. - USA
PROPOSED WELL LOCATION
*WHITFIELD WEST UNIT WELL NO. 1H*
LOCATED IN THE J. J. PICKET SURVEY, A-227
KARNES COUNTY, TEXAS

TBS W. BAKER SMITH
HOUSTON OFFICE 1(281)340-0112  FAX 1(281)340-0256

| DRAWN | NLG |
|---|---|
| CHECKED | GLW |
| APPROVED | GLW |
| DWG. DATE | 11/10/11 |
| DWG. SCALE | 1" = 1000' |

| REV. # | DESCRIPTION | DATE |
|---|---|---|

DWG. NAME: 11.0756_RK_POOLED_WHITFIELD_WEST.DWG
PROJ. NO. 2011.0756    C.O. NO.

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

**APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER**

*This facsimile W-1 was generated electronically from data submitted to the RRC. A certification of the automated data is available in the RRC's Austin office.*

**FORM W-1**
07/2004

| | | |
|---|---|---|
| API No. 42-255-32209 | | Permit Status: **Approved** |
| Drilling Permit # 728837 | 2. Operator's Name (as shown on form P-5, Organization Report) **MURPHY EXPL. & PROD. CO. - USA** | |
| SWR Exception Case/Docket No. | | |
| 1. RRC Operator No. **594675** | | 3. Operator Address (include street, city, state, zip): |
| 4. Lease Name **WHITFIELD WEST UNIT** | 5. Well No. **1H** | |

**GENERAL INFORMATION**

6. Purpose of filing (mark ALL appropriate boxes): [X] New Drill  [ ] Amended

7. Wellbore Profile (mark ALL appropriate boxes): [ ] Vertical  [X] Horizontal (Also File Form W-1H)  [ ] Directional (Also File Form W-1D)  [ ] Sidetrack

[ ] Recompletion  [ ] Recless  [ ] Field Transfer  [ ] Re-Enter
[ ] Amended as Drilled (BHL) (Also File Form W-1D)

8. Total Depth **12089**

9. Do you have the right to develop the minerals under any right-of-way? [X] Yes  [ ] No

10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)? [X] Yes  [ ] No

**SURFACE LOCATION INFORMATION**

| | | |
|---|---|---|
| 11. RRC District No. **02** | 12. County **KARNES** | 13. Surface Location [X] Land  [ ] Bay/Estuary  [ ] Inland Waterway  [ ] Offshore |
| 14. This well is to be located **11** miles in a **NE** direction from **Karnes** which is the nearest town in the county of the well site. | | |
| 15. Section | 16. Block **11** | 17. Survey **PICKET, J J** | 18. Abstract No. **A-227** | 19. Distance to nearest lease line: **100** ft. |
| 20. Number of contiguous acres in lease, pooled unit, or unitized tract: **194.3** | | |

21. Lease Perpendiculars: **249** ft from the **N** line and **633** ft from the **W** line.

22. Survey Perpendiculars: **3140** ft from the **E** line and **5400** ft from the **S** line.

23. Is this a pooled unit? [X] Yes  [ ] No

24. Unitization Docket No:

25. Are you applying for Substandard Acreage Field? [ ] Yes  [X] No  (attach Form W-1A)

**FIELD INFORMATION**

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12089 | 0.00 | 1 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Remarks**

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

Name of filer: **Kathy Hutching, Sr. HSE Analyst** (Regulatory)

Phone **(281)6752143**

E-mail Address (OPTIONAL) **Katherine_Hutching@murphyoilcorp.com**

Date submitted **Nov 22, 2011**

Page 1 of 2

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

### APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

**Form W-1H**   07/2004
Supplemental Horizontal Well Information

| Permit # | 728837 |
|---|---|
| Approved Date: | Nov 29, 2011 |

**Permit Status:**   Approved

*The RRC has not approved this application. Duplication or distribution of information is at the user's own risk.*

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
|---|---|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD WEST UNIT | 1H |

5. Field as shown on Form W-1   EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District 02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
400 ft. from the ___ E ___ line, and ___ 100 ___ ft from the ___ S ___ line

12. Terminus Survey Line Perpendiculars
2679 ft. from the ___ E ___ line, and ___ 100 ___ ft from the ___ S ___ line

13. Penetration Point Lease Line Perpendiculars
400 ft. from the ___ E ___ line, and ___ 696 ___ ft from the ___ N ___ line

## Railroad Commission of Texas

### PERMIT TO DRILL, RE-COMPLETE, OR RE-ENTER ON REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

#### CONDITIONS AND INSTRUCTIONS

**Permit Invalidation.** It is the operator's responsibility to make sure that the permitted location complies with Commission density and spacing rules in effect on the spud date. The permit becomes invalid automatically if, because of a field rule change or the drilling of another well, the stated location is not in compliance with Commission field rules on the spud date. If this occurs, application for an exception to Statewide Rules 37 and 38 must be made and a special permit granted prior to spudding. Failure to do so may result in an allowable not being assigned and/or enforcement procedures being initiated.

**Permit expiration.** This permit expires two (2) years from the date of issuance shown on the original permit. The permit period will not be extended.

**Drilling Permit Number.** The drilling permit number shown on the permit MUST be given as a reference with any notification to the district (see below), correspondence, or application concerning this permit.

**Rule 37 Exception Permits.** This Statewide Rule 37 exception permit is granted under either provision Rule 37 (h)(2)(A) or 37(h)(2)(B). Be advised that a permit granted under Rule 37(h)(2)(A), notice of application, is subject to the General Rules of Practice and Procedures and if a protest is received under Section 1.3, "Filing of Documents," and/or Section 1.4, "Computation of Time," the permit may be deemed invalid.

#### Before Drilling

**Fresh Water Sand Protection.** The operator must set and cement sufficient surface casing to protect all usable-quality water, as defined by the Texas Commission on Environmental Quality (TCEQ). Before drilling a well, the operator must obtain a letter from the Texas Commission on Environmental Quality stating the depth to which water needs protection, Write: Texas Commission on Environmental Quality (Surface Casing-MC151), P.O. Box 13087, Austin, TX 78711-3087. File a copy of the letter with the appropriate district office.

**Accessing the Well Site.** If an OPERATOR, well equipment TRANSPORTER or WELL service provider must access the well site from a roadway on the state highway system (Interstate, U.S. Highway, State Highway, Farm-to-Market Road, Ranch-to-Market Road, etc.), an access permit is required from TxDOT. Permit applications are submitted to the respective TxDOT Area Office serving the county where the well is located.

**Water Transport to Well Site.** If an operator intends to transport water to the well site through a temporary pipeline laid above ground on the state's right-of-way, an additional TxDOT permit is required. Permit applications are submitted to the respective TxDOT Area Office serving the county where the well is located.

#### *NOTIFICATION

The operator is REQUIRED to notify the district office when setting surface casing, intermediate casing, and production casing, or when plugging a dry hole. The district office MUST also be notified if the operator intends to re-enter a plugged well or re-complete a well into a different regulatory field. Time requirements are given below. The drilling permit number MUST be given with such notifications.

#### During Drilling

**Permit at Drilling Site.** A copy of the Form W-1 Drilling Permit Application, the location plat, a copy of Statewide Rule 13 alternate surface casing setting depth approval from the district office, if applicable, and this drilling permit must be kept at the permitted well site throughout drilling operations.

**\*Notification of Setting Casing.** The operator MUST call in notification to the appropriate district office (phone number shown the on permit) a minimum of eight (8) hours prior to the setting of surface casing, intermediate casing, AND production casing. The individual giving notification MUST be able to advise the district office of the drilling permit number.

**\*Notification of Re-completion/Re-entry.** The operator MUST call in notification to the appropriate district office (phone number shown on permit) a minimum of eight (8) hours prior to the initiation of drilling or re-completion operations. The individual giving notification MUST be able to advise the district office of the drilling permit number.

## Completion and Plugging Reports

**Producing Well.** Statewide Rule 16 states that the operator of a well shall file with the Commission the appropriate completion report within thirty (30) days after completion of the well or within ninety (90) days after the date on which the drilling operation is completed, whichever is earlier. Completion of the well in a field authorized by this permit voids the permit for all other fields included in the permit unless the operator indicates on the initial completion report that the well is to be a dual or multiple completion and promptly submits an application for multiple completion. All zones are required to be completed before the expiration date on the existing permit. Statewide Rule 40(d) requires that upon successful completion of a well in the same reservoir as any other well previously assigned the same acreage, proration plats and P-15s (if required) must be submitted with no double assignment of acreage.

**Dry or Noncommercial Hole.** Statewide Rule 14(b)(2) prohibits suspension of operations on each dry or non-commercial well without plugging unless the hole is cased and the casing is cemented in compliance with Commission rules. If properly cased, Statewide Rule 14(b)(2) requires that plugging operations must begin within a period of one (1) year after drilling or operations have ceased. Plugging operations must proceed with due diligence until completed. An extension to the one-year plugging requirement may be granted under the provisions stated in Statewide Rule 14(b)(2).

**Intention to Plug.** The operator must file a Form W-3A (Notice of Intention to Plug and Abandon) with the district office at least five (5) days prior to beginning plugging operations. If, however, a drilling rig is already at work on location and ready to begin plugging operations, the district director or the director's delegate may waive this requirement upon request, and verbally approve the proposed plugging procedures.

**\*Notification of Plugging a Dry Hole.** The operator MUST call in notification to the appropriate district office (phone number shown on permit) a minimum of four (4) hours prior to beginning plugging operations. The individual giving the notification MUST be able to advise the district office of the drilling permit number and all water protection depths for that location as stated in the Texas Commission on Environmental Quality letter.

DIRECT INQUIRIES TO: DRILLING PERMIT SECTION, OIL AND GAS DIVISION

PHONE
(512) 463-6751

MAIL:
PO Box 12967
Austin, Texas, 78711-2967

OIL & GAS DIVISION

PERMIT TO DRILL, DEEPEN, PLUG BACK, OR RE-ENTER ON A REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

| PERMIT NUMBER 728837 | DATE PERMIT ISSUED OR AMENDED Nov 29, 2011 | DISTRICT * 02 |
|---|---|---|
| API NUMBER 42-255-32209 | FORM W-1 RECEIVED Nov 22, 2011 | COUNTY KARNES |
| TYPE OF OPERATION NEW DRILL | WELLBORE PROFILE(S) Horizontal | ACRES 194.3 |

| OPERATOR MURPHY EXPL. & PROD. CO. - USA 594675 | NOTICE This permit and any allowable assigned may be revoked if payment for fee(s) submitted to the Commission is not honored. District Office Telephone No: (210) 227-1313 |
|---|---|

| LEASE NAME WHITFIELD WEST UNIT | WELL NUMBER 1H |
|---|---|
| LOCATION 11 miles NE direction from KARNES | TOTAL DEPTH 12089 |

Section, Block and/or Survey

SECTION ◄     BLOCK ◄     ABSTRACT ◄ 227

SURVEY ◄ PICKET, J J

| DISTANCE TO SURVEY LINES 3140 ft. E   5400 ft. S | DISTANCE TO NEAREST LEASE LINE 100 ft. |
|---|---|
| DISTANCE TO LEASE LINES 249 ft. N   633 ft. W | DISTANCE TO NEAREST WELL ON LEASE See FIELD(s) Below |

FIELD(s) and LIMITATIONS:

* SEE FIELD DISTRICT FOR REPORTING PURPOSES *

| FIELD NAME LEASE NAME | ACRES NEAREST LEASE | DEPTH | WELL # NEAREST WE | DIST |
|---|---|---|---|---|
| EAGLEVILLE (EAGLE FORD-2) | 194.30 | 12,089 | 1H | 02 |
| WHITFIELD WEST UNIT | 100 | | 0 | |

WELLBORE PROFILE(s) FOR FIELD: Horizontal

RESTRICTIONS:   This is a hydrogen sulfide field. Hydrogen Sulfide Fields with perforations must be isolated and tested per State Wide Rule 36 and a Form H-9 filed with the district office. Fields with SWR 10 authority to downhole commingle must be isolated and tested individually prior to commingling production.

```
Lateral: TH1
Penetration Point Location
   Lease Lines:      400.0 F E L
                     696.0 F N L
Terminus Location
   Lease Lines:      400.0 F E L
                     100.0 F S L
   Survey Lines:    2679.0 F E L
                     100.0 F S L
```

THE FOLLOWING RESTRICTIONS APPLY TO ALL FIELDS

PERMIT TO DRILL, DEEPEN, PLUG BACK, OR RE-ENTER ON A REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

| PERMIT NUMBER | DATE PERMIT ISSUED OR AMENDED | DISTRICT |
|---|---|---|
| 728837 | Nov 29, 2011 | * 02 |

| API NUMBER | FORM W-1 RECEIVED | COUNTY |
|---|---|---|
| 42-255-32209 | Nov 22, 2011 | KARNES |

| TYPE OF OPERATION | WELLBORE PROFILE(S) | ACRES |
|---|---|---|
| NEW DRILL | Horizontal | 194.3 |

**OPERATOR**

MURPHY EXPL. & PROD. CO. - USA          594675

**NOTICE**
This permit and any allowable assigned may be revoked if payment for fee(s) submitted to the Commission is not honored.
**District Office Telephone No:**
(210) 227-1313

| LEASE NAME | WELL NUMBER |
|---|---|
| WHITFIELD WEST UNIT | 1H |

| LOCATION | TOTAL DEPTH |
|---|---|
| 11 miles NE direction from KARNES | 12089 |

**Section, Block and/or Survey**

SECTION ◄          BLOCK ◄          ABSTRACT ◄ 227

SURVEY ◄ PICKET, J J

**DISTANCE TO SURVEY LINES**
3140 ft. E     5400 ft. S

**DISTANCE TO NEAREST LEASE LINE**
100 ft.

**DISTANCE TO LEASE LINES**
249 ft. N     633 ft. W

**DISTANCE TO NEAREST WELL ON LEASE**
See FIELD(s) Below

**FIELD(s) and LIMITATIONS:**

\*  SEE FIELD DISTRICT FOR REPORTING PURPOSES  \*

| FIELD NAME LEASE NAME | ACRES NEAREST LEASE | DEPTH | WELL # NEAREST WE | DIST |
|---|---|---|---|---|

This well shall be completed and produced in compliance with applicable special field or statewide spacing and density rules. If this well is to be used for brine mining, underground storage of liquid hydrocarbons in salt formations, or underground storage of gas in salt formations, a permit for that specific purpose must be obtained from Environmental Services prior to construction, including drilling, of the well in accordance with Statewide Rules 81, 95, and 97.

## ACKNOWLEDGMENTS

STATE OF _____ §
                        §
COUNTY OF _____ §

This instrument was acknowledged before me on the ____ day of February, 2013, by
_____ , as _____ of WEST 17TH RESOURCES
LLC, a [_____] corporation, on behalf of said corporation.

Notary Public, State of _____
Printed Name: _____
My commission expires: _____


STATE OF TEXAS        §
                      §
COUNTY OF HARRIS      §

This instrument was acknowledged before me on the 21st day of May, 2013, by D. Brett
Pennington, as Vice President US Onshore Operations of MURPHY EXPLORATION &
PRODUCTION COMPANY—USA, a Delaware corporation, on behalf of said corporation.

RANDAL BLAKE NEWSOM
Notary Public, State of Texas
My Commission Expires
July 29, 2016

Notary Public, State of _____
Printed Name: _____
My commission expires: _____

HOU01:1246508.1                    . ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

## ACKNOWLEDGMENTS

THE STATE OF TEXAS        §
                         §
COUNTY OF HARRIS         §

This instrument was acknowledged before me on the 21 day of May, 2013 by Gregory A. Forero, Manager of Gansevoort Investments, LLC, Manager of WEST 17TH RESOURCES, LLC, a Delaware limited liability company on behalf of said limited liability company.



HANNAH KAHLENE CRAFT
Notary Public, State of Texas
My Commission Expires
July 27, 2016

Hannah Kahlene Craft
Notary Public, State of _Texas_
Printed Name: _Hannah Kahlene Craft_
My commission expires: _July 27, 2016_

THE STATE OF TEXAS        §
                         §
COUNTY OF HARRIS         §

This instrument was acknowledged before me on the ____ day of May, 2013, by D. Brett Pennington, as Vice President US Onshore Operations of MURPHY EXPLORATION & PRODUCTION COMPANY—USA, a Delaware corporation, on behalf of said corporation.

Notary Public, State of _____
Printed Name: _____
My commission expires: _____

HOU01:1246508.1          ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 10, 2013

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

## Exhibit "A"

1. That certain Oil and Gas Leases dated effective the 5th day of January, 2012 by and between Pamela Mika Wolf, whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and West 17th Resources LLC, whose mailing address is 1707 1/2 Post Oak Boulevard, Houston. Texas 77056.

2. That certain Oil and Gas Leases dated effective the 5th day of January, 2012 by and between Thomas Mika, whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and West 17th Resources LLC, whose mailing address is 1707 1/2 Post Oak Boulevard, Houston. Texas 77056.

Filed for Record in:
Karnes County

On: May 24,2013 at 10:23A

As a:
Recording Official Record

Document Number:　00123362

Amount:　40.00

Receipt Number - 66502
By,
Vanessa Villanueva

STATE OF TEXAS　　　　　COUNTY OF KARNES
I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of:
Karnes County
as stamped hereon by me.
May 24,2013

Carol Swize, Karnes County Clerk
Karnes County

HOU01:1246508.1

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 10, 2013

Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy





Appendix G

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

STATE OF TEXAS §
§
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF KARNES §
§

## ASSIGNMENT OF OIL AND GAS LEASES

West 17th Resources LLC, a Delaware limited liability company, with offices at 1707 1/2 Post Oak Boulevard, Houston. Texas 77056 ("*Assignor*"), in consideration of the agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby BARGAINS, SELLS, ASSIGNS AND TRANSFERS to Murphy Exploration & Production Company—USA, a Delaware corporation, with offices at 16290 Katy Freeway, Houston, Texas 77094-1606 ("*Assignee*"), all of Assignor's right, title and interest in and to the Property described in this Assignment of Oil and Gas Leases (this "*Assignment*"), effective as of May 21, 2013 (the "*Effective Date*").

TO HAVE AND TO HOLD the Property unto Assignee, its successors and assigns, forever, subject to the terms and provisions of the Leases (as defined below) and the other matters set forth below:

## ARTICLE I
## CONVEYANCE

1.1    **Leases**. The "*Property*" consists of all of Assignor's right and title to, and interest in, and all privileges and obligations appurtenant to, the oil, gas and mineral leases described in EXHIBIT "A" (the "*Leases*"), SAVE and EXCEPT the Assignor's interest in that certain Lease Agreement dated January 5, 2013, by and between Assignor and Thomas Mika and that certain Lease Agreement dated January 5, 2013, by and between Assignor and Pamela Mika Wolf, which are herewith excepted and reserved unto Assignor and its successors and assigns.

## ARTICLE II
## SPECIAL WARRANTY

2.1    **Special Warranty of Title**.    EXCEPT FOR SECTION 3.8 HEREOF, ASSIGNOR HEREBY ASSIGNS THE PROPERTY TO ASSIGNEE WITHOUT REPRESENTATION OR WARRANTY OF TITLE, EXPRESS, STATUTORY, IMPLIED OR OTHERWISE; PROVIDED HOWEVER, THAT ASSIGNOR WARRANTS TITLE TO THE PROPERTY UNTO ASSIGNEE AGAINST EVERY PERSON WHOMSOEVER LAWFULLY CLAIMING OR TO CLAIM THE SAME OR ANY PART THEREOF BY, THROUGH OR UNDER ASSIGNOR OR ANY OF ITS AFFILIATES, BUT NOT OTHERWISE.

HOU01:1246508.1          ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on ̶̶̶̶̶̶



Carol Swize, County Clerk
Karnes County, Texas
By̶̶̶̶̶̶̶̶̶̶ _____ Deputy

Exhibit P
West 17th MPSJ

# ARTICLE III
## OTHER PROVISIONS

3.1    **Further Assurances**. Assignee and Assignor agree to execute, acknowledge and deliver from time to time such further instruments and do such other acts as are reasonably requested by the other Party to effectuate the purposes of this Assignment.

3.2    **Successors and Assigns**. The provisions of this Assignment shall be covenants running with the land covered by the Leases, and this Assignment binds and inures to the benefit of the Parties and their respective successors and assigns. All the terms, provisions, covenants, obligations, indemnities, representations, warranties and conditions of this Assignment shall be enforceable by the Parties and their respective successors and assigns.

3.3    **Counterparts**. This Assignment may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one document.

3.4    **Attachments**. The Exhibit attached to this Assignment is incorporated herein by reference and made a part hereof for all purposes.

3.5    **Governing Law**.    THIS ASSIGNMENT SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCLUDING ANY CONFLICTS-OF-LAW RULE OR PRINCIPLE THAT MIGHT APPLY THE LAW OF ANOTHER JURISDICTION. THIS ASSIGNMENT, AND ANY OTHER INSTRUMENTS OF CONVEYANCE EXECUTED UNDER THIS ASSIGNMENT, WILL BE GOVERNED BY AND MUST BE CONSTRUED ACCORDING TO THE LAWS OF THE STATE WHERE THE PROPERTY TO WHICH THEY PERTAIN IS LOCATED, EXCLUDING ANY CONFLICTS-OF-LAW RULE OR PRINCIPLE THAT MIGHT APPLY THE LAW OF ANOTHER JURISDICTION. THE PARTIES CONSENT TO THE EXERCISE OF JURISDICTION IN PERSONAM BY THE COURTS OF THE STATE OF TEXAS FOR ANY ACTION ARISING OUT OF THIS ASSIGNMENT, THE SETTLEMENT AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

3.6    **Severability**. If any provision of this Assignment is found by a court of competent jurisdiction to be invalid or unenforceable, that provision will be deemed modified to the extent necessary to make it valid and enforceable and if it cannot be so modified, it shall be deemed deleted and the remainder of this Assignment shall continue and remain in full force and effect.

3.7    **Obligation to Drill**. Nothing herein shall obligate Assignee to conduct any drilling operations whatsoever upon the Leases, or lands pooled therewith, or to continue to operate any well or to operate or maintain in force or attempt to maintain in force the Leases.

3.8    **Consent to Assignment**. Assignor hereby represents to Assignee that Assignor has heretofore acquired any and all necessary consents from the lessors of the Leases for this Assignment.

*[Signature page follows]*

HOU01:1246508.1

ASSIGNMENT OF OIL AND GAS LEASES – Page 2

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____



Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

IN WITNESS WHEREOF, the authorized representatives of Assignor and Assignee execute this Assignment on the dates set forth in their respective acknowledgments hereto, to be effective for all purposes as of the Effective Date.

ASSIGNOR:

WEST 17TH RESOURCES LLC

By: _____
Printed Name: _____
Title: _____

ASSIGNEE:

MURPHY EXPLORATION & PRODUCTION COMPANY—USA

By: _____

Printed Name: D. Brett Pennington

Title:  Vice President US Onshore Operations

HOU01:1246508.1          ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____
Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

IN WITNESS WHEREOF, the authorized representatives of Assignor and Assignee execute this Assignment on the dates set forth in their respective acknowledgments hereto, to be effective for all purposes as of the Effective Date.

**ASSIGNOR:**

**WEST 17TH RESOURCES LLC**

By: its Manager, GANSEVOORT INVESTMENTS, LLC

By: _____

Printed Name:   Gregory A. Forero

Title:        Manager

**ASSIGNEE:**

**MURPHY EXPLORATION & PRODUCTION COMPANY—USA**

By: _____

Printed Name: D. Brett Pennington

Title:  Vice President US Onshore Operations

HOU01:1246508.1            ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on SEPTEMBER 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

The said 290.69 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a 5/8" steel pin set at a fence corner in the East boundary of the said John J. Pickett Survey, Abstract No. 227, and the West boundary of County Road No. 311, for the occupied Southeast corner of the called 298.72 acre tract and the Southeast corner of this 290.69 acre tract; the same being the occupied Northeast corner of the Edwin Janysek called 40.0 acre tract (Volume 541, Page 220, Deed Records, Karnes County, Texas), and being N. 01 degree 21 minutes E.- 2296.8' from the approximate Southeast corner of the said John J. Pickett Survey, Abstract No. 227. (NOTE, the bearing and distance from the "survey" corner derived from office information for map location only)

THENCE: Along the South boundary of the called 298.72 acre tract with the following two (2) calls:

1. N. 89 degrees 30 minutes 00 seconds W.- 2303.50', to a 5/8" steel pin set at a fence corner for the occupied Northwest corner of the Frank Janysek, Jr., called 50.0 acre tract (Volume 541, Page 216, Deed Records, Karnes County, Texas) and the occupied Northeast corner of the Fabian Pawelek called 40.0 acre tract (Volume 382, Page 129, Deed Records, Karnes County, Texas), and

2. N. 89 degrees 22 minutes 23 seconds W.- 1518.32', to a large creosote post at a fence corner in the East boundary of the Zefred Alex Kruciak, et ux, called 162.9 acre tract (Volume 197, Page 185, Deed Records, Karnes County, Texas), for the occupied Southwest corner of the called 298.72 acre tract and the Southwest corner of this 290.69 acre tract; the same being the occupied Northwest corner of the Fabian Pawelek called 40.0 acre tract.

THENCE: N. 00 degrees 39 minutes 00 seconds E. along the West boundary of the called 298.72 acre tract; the same being the East boundary of the called 162.9 acre tract and of the Zefred Alex Kruciak, et ux, called 18.2 acre tract (Volume 220, Page 393, Deed Records, Karnes County, Texas), a distance of 1898.59' to a 5/8" steel pin set a point of intersection with the Southeast right-of-way boundary of F. M. Highway No. 1354, and being on a curve, for a corner of this 290.69 acre tract.

THENCE: Along the Southeast right-of-way boundary of said F. M. Highway No. 1354 and curve to the left (Long Chord bears N. 25 degrees 03 minutes 56 seconds E.-201.46') whose radius is 244.63' and whose central angle for this part is 48 degrees 37 minutes 53 seconds, an arc distance of 207.64' to a 5/8" steel pin set at the P.T. of said curve.

-2-

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on _____



Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

CAUSE NO. 13-04-00087-CVK

| | | |
|---|---|---|
| WEST 17TH RESOURCES, LLC | § | IN THE DISTRICT COURT |
| AND | § | |
| | § | |
| PAMELA MIKA WOLF AND | § | |
| THOMAS MIKA, | § | |
| Plaintiffs | § | |
| v. | § | 81st JUDICIAL DISTRICT |
| | § | |
| LUCIAN A. PAWELEK AND | § | |
| CARLEEN J. PAWELEK, | § | |
| Defendants | § | |
| | § | KARNES COUNTY, TEXAS |

## AFFIDAVIT OF JEAN ANDERSON

The Affiant, Jean Anderson, after being duly sworn, states as follows:

1. My name is Jean Anderson. I am over the age of 21 years, have never been convicted of a felony or other crime involving moral turpitude and am fully competent to make this Affidavit.

2. I am employed as a paralegal at the law office of Jones Gill LLP.

3. I have personal knowledge of the facts set-forth herein, and I am authorized to make this Affidavit in regards to the authentication of the production documents as downloaded from the Texas Railroad Commission online records as it relates the production on the Whitfield West Unit 1H and the Whitfield East Unit 1H. I pulled the records as of 10:27 a.m. on September 3, 2013. There are a total of four (4) pages.

4. The month of first production for the Whitfield East Unit 1H was May 2012 and the Whitfield West Unit 1H had nominal production as of April 2012, with significant production beginning in May 2012.

5. There was nothing additional nor was there anything detracted from the spreadsheets. The spreadsheets are the same as downloaded from the Texas Railroad Commission online records.

6. These statements are voluntarily made and are accurate as to what transpired while searching and downloading the production records from the Texas Railroad Commission online records.

7. I have reviewed the spreadsheets and all information stated therein is within my personal knowledge and is true and correct as it appears on the Texas Railroad Commission online records.

8. That if called to trial or hearing, Affiant can fully and truthfully testify to the above and foregoing.

AFFIANT

STATE OF TEXAS        §

COUNTY OF HARRIS       §

Subscribed and sworn to before me by Jean Anderson on this 30th day of September, 2013.

RENEA CONN
Notary Public, State of Texas
My Commission Expires
October 03, 2014

Notary Public in and for the State of Texas

Search Criteria:

Lease Name: WHITFIELD WEST UNIT, Lease No.: 10112
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2) , Field No.: 27135750
Operator Name: MURPHY EXPL. & PROD. CO. - USA , Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

| Date | OIL (BBL) Production | Disposition | Casinghead (MCF) Production | Disposition | Operator Name | Operator No. | Field Name | Field No. |
|------|------|------|------|------|------|------|------|------|
| Apr 2012 | 4 | 4 | 0 | 0 USA | MURPHY EXPL. & PROD. CO. - | 594675 | EAGLEVILLE (EAGLE FORD-2) | 27135750 |
| May 2012 | 19,439 | 18,788 | 17,298 | 17,298 | | | | |
| Jun 2012 | 20,511 | 20,225 | 17,589 | 17,589 | | | | |
| Jul 2012 | 24,106 | 24,346 | 22,726 | 22,726 | | | | |
| Aug 2012 | 19,196 | 19,192 | 18,476 | 18,476 | | | | |
| Sep 2012 | 13,765 | 14,359 | 14,821 | 14,821 | | | | |
| Oct 2012 | 12,594 | 12,701 | 11,922 | 11,922 | | | | |
| Nov 2012 | 7,042 | 6,952 | 9,673 | 9,673 | | | | |
| Dec 2012 | 596 | -609 | 880 | 880 | | | | |
| Jan 2013 | 7,680 | 7,607 | 8,542 | 8,542 | | | | |
| Feb 2013 | 23,447 | 23,432 | 18,989 | 18,989 | | | | |
| Mar 2013 | 25,126 | 25,216 | 22,155 | 22,155 | | | | |
| Apr 2013 | 0 | 0 | 0 | 0 | | | | |
| May 2013 | 4,348 | 4,317 | 4,078 | 4,078 | | | | |
| Jun 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Jul 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Aug 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Sep 2013 | NO RPT | NO RPT | NO RPT | NO RPT | | | | |
| Total | 177854 | 177748 | 167149 | 167149 | | | | |

Search Criteria:

Lease Name: WHITFIELD EAST UNIT, Lease No.: 10113
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2), Field No.: 27135750
Operator Name: MURPHY EXPL. & PROD. CO. - USA, Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

| Operator Name | Operator No. | Field Name | Field No. |
|---|---|---|---|
| MURPHY EXPL. & PROD. CO. - USA | 594675 2) | EAGLEVILLE (EAGLE FORD- | 27135750 |

| Date | OIL (BBL) Production | OIL (BBL) Disposition | Casinghead Production | Casinghead Disposition |
|---|---|---|---|---|
| Apr 2012 | 0 | 0 | 0 | 0 |
| May 2012 | 20,934 | 20,018 | 17,202 | 17,202 |
| Jun 2012 | 21,545 | 21,851 | 20,222 | 20,222 |
| Jul 2012 | 30,209 | 30,147 | 29,236 | 29,236 |
| Aug 2012 | 23,547 | 23,585 | 24,121 | 24,121 |
| Sep 2012 | 20,819 | 21,303 | 20,963 | 20,963 |
| Oct 2012 | 20,180 | 20,330 | 18,920 | 18,920 |
| Nov 2012 | 10,868 | 10,728 | 15,648 | 15,648 |
| Dec 2012 | 533 | 555 | 807 | 807 |
| Jan 2013 | 5,383 | 5,336 | 5,995 | 5,995 |
| Feb 2013 | 6,061 | 6,028 | 5,229 | 5,229 |
| Mar 2013 | 5,587 | 5,615 | 5,627 | 5,627 |
| Apr 2013 | 49,506 | 49,569 | 44,215 | 44,215 |
| May 2013 | 7,751 | 7,697 | 6,716 | 6,716 |
| Jun 2013 | NO RPT | NO RPT | NO RPT | NO RPT |
| Jul 2013 | NO RPT | NO RPT | NO RPT | NO RPT |
| Aug 2013 | NO RPT | NO RPT | NO RPT | NO RPT |
| Sep 2013 | NO RPT | NO RPT | NO RPT | NO RPT |
| Total | 222923 | 222762 | 214901 | 214901 |

Search Criteria:

Lease Name: WHITFIELD WEST UNIT, Lease No.: 10112
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2), Field No.: 27135750
Operator Name: MURPHY EXPL & PROD. CO. - USA, Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

| Date | OIL (BBL) Production | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 No Code | Casinghead Production | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 No Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2012 | 19,439 | 18788 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,298 | 0 | 0 | 0 | 17298 | 0 | 0 | 0 | 0 |
| Jun 2012 | 20,511 | 20225 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,589 | 0 | 0 | 0 | 17589 | 0 | 0 | 0 | 0 |
| Jul 2012 | 24,106 | 24346 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 22,726 | 0 | 0 | 0 | 22726 | 0 | 0 | 0 | 0 |
| Aug 2012 | 19,196 | 19192 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sep 2012 | 13,765 | 14359 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14,821 | 620 | 8615 | 0 | 5586 | 0 | 0 | 0 | 0 |
| Oct 2012 | 12,594 | 12701 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18,476 | 0 | 0 | 0 | 18476 | 0 | 0 | 0 | 0 |
| Nov 2012 | 7,042 | 6952 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 11,922 | 700 | 10922 | 0 | 300 | 0 | 0 | 0 | 0 |
| Dec 2012 | 596 | 609 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9,673 | 259 | 9290 | 0 | 124 | 0 | 0 | 0 | 0 |
| Jan 2013 | 7,680 | 7607 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 880 | 26 | 847 | 0 | 7 | 0 | 0 | 0 | 0 |
| Feb 2013 | 23,447 | 23432 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,542 | 210 | 8233 | 0 | 99 | 0 | 0 | 0 | 0 |
| Mar 2013 | 25,126 | 25216 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18,989 | 582 | 18226 | 0 | 181 | 0 | 0 | 0 | 0 |
| Apr 2013 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 22,155 | 610 | 21530 | 0 | 15 | 0 | 0 | 0 | 0 |
| May 2013 | 4,348 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jun 2013 | NO RPT | 4317 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,078 | 113 | 3920 | 0 | 45 | 0 | 0 | 0 | 0 |
| Jul 2013 | NO RPT | | | | | | | | | | NO RPT | | | | | | | | |
| Aug 2013 | NO RPT | | | | | | | | | | NO RPT | | | | | | | | |
| Sep 2013 | NO RPT | | | | | | | | | | NO RPT | | | | | | | | |
| Total | 177854 | 173427 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 167149 | 3120 | 81583 | 0 | 82446 | 0 | 0 | 0 | 0 |

Search Criteria:

Lease Name: WHITFIELD EAST UNIT, Lease No.: 10113
Well Type: Oil
Field Name: EAGLEVILLE (EAGLE FORD-2), Field No.: 27135750
Operator Name: MURPHY EXPL & PROD. CO. - USA, Operator No.: 594675
District: 02
Lease Production and Disposition
Date Range: Jan 2012 - Oct 2013

| Date | OIL (BBL) D Production | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 No Code | Casinghead Production | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 No Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apr 2012 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2012 | 20,934 | 0 | 20018 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,202 | 0 | 0 | 0 | 17202 | 0 | 0 | 0 | 0 |
| Jun 2012 | 21,545 | 0 | 21851 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 20,222 | 0 | 0 | 0 | 20222 | 0 | 0 | 0 | 0 |
| Jul 2012 | 30,209 | 0 | 30147 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29,236 | 0 | 0 | 0 | 29236 | 0 | 0 | 0 | 0 |
| Aug 2012 | 23,547 | 0 | 23585 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 24,121 | 0 | 0 | 0 | 24121 | 0 | 0 | 0 | 0 |
| Sep 2012 | 20,819 | 0 | 21303 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 20,963 | 856 | 11891 | 0 | 8216 | 0 | 0 | 0 | 0 |
| Oct 2012 | 20,180 | 0 | 20330 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18,920 | 1110 | 17334 | 0 | 476 | 0 | 0 | 0 | 0 |
| Nov 2012 | 10,868 | 0 | 10728 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 15,648 | 418 | 15030 | 0 | 200 | 0 | 0 | 0 | 0 |
| Dec 2012 | 533 | 0 | 555 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 807 | 24 | 776 | 0 | 7 | 0 | 0 | 0 | 0 |
| Jan 2013 | 5,383 | 0 | 5336 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,995 | 148 | 5778 | 0 | 69 | 0 | 0 | 0 | 0 |
| Feb 2013 | 6,061 | 0 | 6028 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,229 | 161 | 5018 | 0 | 50 | 0 | 0 | 0 | 0 |
| Mar 2013 | 5,587 | 0 | 5615 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5,627 | 155 | 5468 | 0 | 4 | 0 | 0 | 0 | 0 |
| Apr 2013 | 49,506 | 0 | 49569 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 44,215 | 1158 | 43057 | 0 | 0 | 0 | 0 | 0 | 0 |
| May 2013 | 7,751 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,716 | 186 | 6456 | 0 | 74 | 0 | 0 | 0 | 0 |
| Jun 2013 | NO RPT | 7697 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | NO RPT | | | | | | | | |
| Jul 2013 | NO RPT | | | | | | | | | | | NO RPT | | | | | | | | |
| Aug 2013 | NO RPT | | | | | | | | | | | NO RPT | | | | | | | | |
| Sep 2013 | NO RPT | | | | | | | | | | | NO RPT | | | | | | | | |
| Total | 222923 | 7697 | 215065 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 214901 | 4216 | 110808 | 0 | 99877 | 0 | 0 | 0 | 0 |

Appendix F

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

## APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.*

**FORM W-1**  07/2004

| | |
|---|---|
| API No. | |
| Application Status # **728837** | Permit Status: **As Submitted** |
| SWR Exception Case/Docket No. | |
| 1. RRC Operator No. **594675** | 2. Operator's Name (as shown on form P-5, Organization Report) **MURPHY EXPL. & PROD. CO. - USA** | 3. Operator Address (include street, city, state, zip): |

*The RRC has not approved this application. Duplication or distribution of information is at the user's own risk.*

| 4. Lease Name **WHITFIELD WEST UNIT** | 5. Well No. **1H** |
|---|---|

6. Purpose of filing (mark ALL appropriate boxes):

| ☒ New Drill | ☐ Recompletion | ☐ Reclass | ☐ Field Transfer |
|---|---|---|---|
| ☐ Amended | ☐ Amended as Drilled (BHH) (Also File Form W-1D) | ☐ Re-Enter | |

7. Wellbore Profile (mark ALL appropriate boxes):  ☐ Vertical   ☒ Horizontal (Also File Form W-1H)   ☐ Directional (Also File Form W-1D)   ☐ Sidetrack

9. Do you have the right to develop the minerals under any right-of-way?   ☒ Yes   ☐ No        10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)?   ☒ Yes   ☐ No

| 11. RRC District No. **02** | 12. County **KARNES** | 13. Surface Location ☒ Land  ☐ Bay/Estuary  ☐ Inland Waterway  ☐ Offshore |
|---|---|---|

| 14. This well is to be located | **11** miles in a **NE** direction from | **Karnes**, which is the nearest town in the county of the well site. |
|---|---|---|

| 15. Section | 16. Block | 17. Survey **PICKET, J J** | 18. Abstract No. **A-227** | 19. Distance to nearest lease line: **100** ft. |
|---|---|---|---|---|

| Total Depth **12089** | | | | 20. Number of contiguous acres in lease, pooled unit, or unitized tract: **194.3** |
|---|---|---|---|---|

21. Lease Perpendiculars: **249** ft from the **N** line and **633** ft from the **W** line,

22. Survey Perpendiculars: **3140** ft from the **E** line and **5400** ft from the **S** line,

| 23. Is this a pooled unit? ☒ Yes ☐ No | 24. Unitization Docket No: | 25. Are you applying for Substandard Acreage Field? ☐ Yes (attach Form W-1A) ☒ No |
|---|---|---|

| 26. RRC District No. **02** | 27. Field No. **27135750** | 28. Field Name (exactly as shown in RRC records) **EAGLEVILLE (EAGLE FORD-2)** | 29. Well Type **Oil or Gas Well** | 30. Completion Depth **12089** | 31. Distance to Nearest Well in this Reservoir **0.00** | 32. Number of Wells on this lease in this Reservoir **1** |
|---|---|---|---|---|---|---|

**Remarks**

**Exhibit O**
**West 17th MPSJ**

**Certificate:**

I certify that information stated in this application is true and complete, to the best of my knowledge.

Name of filer **Kathy Hutching, Sr. HSE Analyst (Regulatory)**

Phone **(281)6752143**

E-mail Address (OPTIONAL) **Katherine_Hutching@murphyoilcorp.com**

Date submitted **Nov 22, 2011**

Page 1 of 2

Permit Status:    As Submitted

The RRC has not approved this application.
Duplication or distribution of information is
at the user's own risk.

RAILROAD COMMISSION OF TEXAS
OIL & GAS DIVISION

APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

Form W-1H
Supplemental Horizontal Well Information
07/2004

| Status # | 728837 |
| Approved Date: | |

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
|---|---|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD WEST UNIT | 1H |

5. Field as shown on Form W-1    EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District  02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
| | | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
    400 ft. from the E line, and 100 ft. from the S line

12. Terminus Survey Line Perpendiculars
    2679 ft. from the E line, and 100 ft. from the S line

13. Penetration Point Lease Line Perpendiculars
    400 ft. from the E line, and 696 ft. from the N line

RAILROAD COMMISSION OF TEXAS
Oil and Gas Division
PO Box 12967
Austin, Texas 78711-2967
www.rrc.state.tx.us

## CERTIFICATE OF POOLING AUTHORITY

## P-12

Revised 05/2001

| 1. Field Name(s) Eagleville (Eagleford -2) | 2. Lease/ID Number (if assigned) | 3. RRC District Number 02 |
|---|---|---|
| 4. Operator Name Murphy Expl. & Prod. Co. - USA | 5. Operator P-5 Number 594675 | 6. Well Number 1H |
| 7. Pooled Unit Name Whitfield West Unit | 8. API Number | 9. Purpose of Filing |
| 10. County Karnes | 11.Total acres in pooled unit 194.3 | ☑ Drilling Permit (W-1) ☐ Completion Report |

### DESCRIPTION OF INDIVIDUAL TRACTS CONTAINED WITHIN THE POOLED UNIT

| TRACT/PLAT IDENTIFIER | TRACT NAME | ACRES IN TRACT (See Inst. #7 below) | INDICATE UNDIVIDED INTERESTS UNLEASED | NON-POOLED |
|---|---|---|---|---|
| *1. | Lucian A. Pawelek, ET UX | 113.8 | ☐ | ☐ |
| 2. | Fabian Pawelek, ET AL | 80.5 | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

CERTIFICATION:

I declare under penalties prescribed pursuant to the Sec. 91.143, Texas Natural Resources Code, that I am authorized to make the foregoing statements and that the information provided by me or under my direction on this Certificate of Pooling Authority is true, correct, and complete to the best of my knowledge.

| Signature | Kathy Hutching Print Name | |
|---|---|---|
| Sr. Regulatory Analyst Title | Kathy_Hutching@Murphyoilcorp.com E-mail (if available) | 11/22/2011 Date | (281) 717-5143 Phone |

INSTRUCTIONS — Reference: Statewide Rules 31, 38 and 40

1. When two or more tracts are pooled to form a unit to obtain a drilling permit, file completion paperwork, or reform a pooled unit pursuant to Rule 38(d)(3) the operator must file an original Certificate of Pooling Authority and certified plat.
2. The certified plat shall designate each tract with an outline and a tract identifier. The tract identifier on the plat shall correspond to the tract identifier and associated information listed on the Certificate.
3. If within an individual tract, a non-pooled and/or unleased interest exists, indicate by checking the appropriate box.
4. If the Purpose of Filing is to obtain a drilling permit, in box #1 list all applicable fields separately or enter "All Fields" if the Certificate pertains to all fields requested on Form W-1.
5. If the Purpose of Filing is to file completion paperwork, enter the applicable field name in box #1 for the completion.
6. Identify the drill site tract with an * to the left of the tract identifier.
7. The total number of acres in the pooled unit in #11 should equal the total of all acres in the individual tracts listed.

Page 1 of 1



| TRACT | OWNERSHIP | ACREAGE |
|---|---|---|
| 1 | LUCIAN J. PAWELEK, ET UX | 113.8 |
| 2 | FABIAN PAWELEK, ET AL | 80.5 |
| | TOTAL | 194.3 |

*J. J. PICKET*
*A - 227*

PROPOSED SURFACE LOCATION
GRND ELEV. = 321.2' (NAVD 88)
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD WEST UNIT WELL NO. 1H
X= (NAD 27)     2,868,007'
Y=              428,266'
Lat. (NAD 27)   29° 00' 20.36"N
Lon.            97° 47' 02.37"W
Lat. (NAD 83)   29° 00' 21.25"N
Lon.            97° 47' 03.37"W

±249'

±633'          ±3140'

PENETRATION POINT
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD WEST UNIT WELL NO. 1H
X= (NAD 27)     2,868,027'
Y=              427,821'
Lat. (NAD 27)   29° 00' 15.91"N
Lon.            97° 46' 57.61"W
Lat. (NAD 83)   29° 00' 16.81"N
Lon.            97° 46' 58.61"W

±400'

±2731'

*W. C. BULLOCK*
*A - 31*

WHITFIELD WEST
UNIT
NO.1H

①

②

PROPOSED BHL
MURPHY EXPL. & PROD. CO. - USA
WHITFIELD WEST UNIT WELL NO. 1H
X= (NAD 27)     2,868,142'
Y=              422,074'
Lat. (NAD 27)   29° 59' 22.91"N
Lon.            97° 46' 57.65"W
Lat. (NAD 83)   28° 59' 28.81"N
Lon.            97° 46' 58.65"W

±400'

SURVEY LINE

±2679'

CO RD 305
SURVEY LINE

±100'

*F. J. HASKINS*
*A - 136*

I CERTIFY THIS PLAT REPRESENTS A SURVEY
PERFORMED UNDER MY SUPERVISION.

STATE OF TEXAS
REGISTERED
GERALD L. WRIGHT
5334
PROFESSIONAL

GERALD L. WRIGHT
STATE OF TEXAS R.P.L.S. NO. 5334

NOTE:
SURFACE LOCATION IS APPROXIMATELY 11
MILES NORTHEAST OF KARNES CITY, TEXAS.

SURVEY ABSTRACT BOUNDARY NOT FIELD VERIFIED.

THIS PLAT REPRESENTS A SURVEY MADE ON THE GROUND FOR A WELL LOCATION. IT IS NOT A BOUNDARY
SURVEY. AS SUCH, THIS DOES NOT, NOR WAS IT INTENDED TO COMPLY WITH THE TSPLS MINIMUM
STANDARDS OF PRACTICE FOR A LAND BOUNDARY SURVEY. USAGE LINES WERE ESTABLISHED AND
COMPILED FROM INFORMATION PROVIDED BY OTHERS. THE PLAT IS STRICTLY INTENDED FOR THE USE OF
MURPHY EXPLORATION & PRODUCTION COMPANY FOR ACQUIRING TEXAS RAILROAD COMMISSION
PERMITS FOR OIL AND GAS EXPLORATION IN TEXAS.

| | UNIT | SURVEY |
|---|---|---|
| SHL | ±249' - FNL | ±3400' - FEL J.J. PICKET, A-227 |
| | ±633' - FNL | ±3140' - FEL J.J. PICKET, A-227 |
| PP | ±898' - FNL | ±3400' - FEL J.J. PICKET, A-227 |
| | ±400' - FEL | ±2731' - FEL J.J. PICKET, A-227 |
| BHL | ±100' - FEL | ±100' - FEL J.J. PICKET, A-227 |
| | ±400' - FEL | ±2679' - FEL J.J. PICKET, A-227 |

LEGEND:
———— UNIT BOUNDARY
———— TRACT BOUNDARY
———— ABSTRACT BOUNDARY
SHL    SURFACE HOLE LOCATION
PP     PENETRATION POINT
BHL    BOTTOM HOLE LOCATION

| SHL TO PP | S 42°02'21" E 904' |
|---|---|
| PP TO BHL | S 00°45'09" E 4648' |

SCALE IN FEET
1000   500   0   1000

ALL COORDINATES:
PROJECTION: TEXAS SOUTH CENTRAL ZONE
HORIZONTAL DATUM: NAD 27
VERTICAL DATUM: NAVD88
UNITS: U.S. SURVEY FEET

| REV. | DESCRIPTION | DATE |
|---|---|---|

MURPHY
EXPLORATION & PRODUCTION CO.

MURPHY EXPL. & PROD. CO. - USA

PROPOSED WELL LOCATION

*WHITFIELD WEST UNIT WELL NO. 1H*

LOCATED IN THE J. J. PICKET SURVEY, A-227
KARNES COUNTY, TEXAS

| DRAWN | NLG |
|---|---|
| CHECKED | GLW |
| APPROVED | GLW |
| DWG DATE | 11/10/11 |
| DWG SCALE | 1"=1000' |

TBS   W. BAKER SMITH

HOUSTON OFFICE 1(210)340-0114   FAX 1(210)340-0248

DWG NAME   11.0758_RK_POOLED_WHITFIELD_WEST.DWG
PROJ. NO. 2011.0758   C.O. NO.

# RAILROAD COMMISSION OF TEXAS
## OIL & GAS DIVISION

**FORM W-1**
07/2004

## APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.*

| API No. | 42-255-32209 | | Permit Status: |
|---|---|---|---|
| Drilling Permit # | 728837 | | Approved |

SWR Exception Case/Docket No.

**1. RRC Operator No.** 594675

**2. Operator's Name (as shown on form P-5, Organization Report)**
MURPHY EXPL. & PROD. CO. - USA

**3. Operator Address (include street, city, state, zip):**

**4. Lease Name** WHITFIELD WEST UNIT

**5. Well No.** 1H

### GENERAL INFORMATION

**6. Purpose of filing (mark ALL appropriate boxes):**
☒ New Drill  ☐ Recompletion  ☐ Reclass  ☐ Field Transfer
☐ Amended  ☐ Amended as Drilled (BHL) (Also File Form W-1D)  ☐ Re-Enter

**7. Wellbore Profile (mark ALL appropriate boxes):**
☐ Vertical  ☒ Horizontal (Also File Form W-1H)  ☐ Directional (Also File Form W-1D)  ☐ Sidetrack

**8. Total Depth** 12089

**9. Do you have the right to develop the minerals under any right-of-way?** ☒ Yes  ☐ No

**10. Is this well subject to Statewide Rule 36 (hydrogen sulfide area)?** ☒ Yes  ☐ No

### SURFACE LOCATION INFORMATION

| 11. RRC District No. | 12. County | 13. Surface Location | | |
|---|---|---|---|---|
| 02 | KARNES | ☒ Land  ☐ Bay/Estuary  ☐ Inland Waterway  ☐ Offshore | | |

**14. This well is to be located** _____ miles in a NE direction from _____ Karnes which is the nearest town in the county of the well site.

**15. Section** 11  **16. Block** _____  **17. Survey** PICKET, J J  **18. Abstract No.** A-227

**19. Distance to nearest lease line:** 100 ft. **20. Number of contiguous acres in lease, pooled unit, or unitized tract:** 194.3

**21. Lease Perpendiculars:** 249 ft from the N line and 633 ft from the W line.

**22. Survey Perpendiculars:** 3140 ft from the E line and 5400 ft from the S line.

**23. Is this a pooled unit?** ☒ Yes  ☐ No  **24. Unitization Docket No:**

**25. Are you applying for Substandard Acreage Field?** ☐ Yes  ☒ No (attach Form W-1A) ☒ No

### FIELD INFORMATION

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 02 | 27135750 | EAGLEVILLE (EAGLE FORD-2) | Oil or Gas Well | 12089 | 0.00 | 1 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### PROPOSED LOCATIONS INFO ...

**Remarks**

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

**Name of filer** Kathy Hutching, Sr. HSE Analyst
(Regulatory)

**Phone** (281)675-2143

**E-mail Address (OPTIONAL)** Katherine_Hutching@murphyoilcorp.com

**Date submitted** Nov 22, 2011

Permit Status: | Approved

The RRC has not approved this application.
Duplication or distribution of information is
at the user's own risk.

RAILROAD COMMISSION OF TEXAS
OIL & GAS DIVISION

APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER

*This facsimile W-1 was generated electronically from data submitted to the RRC.
A certification of the automated data is available in the RRC's Austin office.*

Form W-1H          07/2004
Supplemental Horizontal Well Information

Permit #    728837

Approved Date: Nov 29, 2011

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
|---|---|---|---|
| 594675 | MURPHY EXPL. & PROD. CO. - USA | WHITFIELD WEST UNIT | 1H |

5. Field as shown on Form W-1   EAGLEVILLE (EAGLE FORD-2) (Field # 27135750, RRC District  02)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
|---|---|---|---|---|
|  |  | PICKET, J J | 227 | KARNES |

11. Terminus Lease Line Perpendiculars
   400  ft. from the  ___ E ___ line, and  100  ft. from the  ___ S ___ line

12. Terminus Survey Line Perpendiculars
   2679  ft. from the  ___ E ___ line, and  100  ft. from the  ___ S ___ line

13. Penetration Point Lease Line Perpendiculars
   400  ft. from the  ___ E ___ line, and  696  ft. from the  ___ N ___ line

## Railroad Commission of Texas

## PERMIT TO DRILL, RE-COMPLETE, OR RE-ENTER ON REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

### CONDITIONS AND INSTRUCTIONS

**Permit Invalidation.** It is the operator's responsibility to make sure that the permitted location complies with Commission density and spacing rules in effect on the spud date. The permit becomes invalid automatically if, because of a field rule change or the drilling of another well, the stated location is not in compliance with Commission field rules on the spud date. If this occurs, application for an exception to Statewide Rules 37 and 38 must be made and a special permit granted prior to spudding. Failure to do so may result in an allowable not being assigned and/or enforcement procedures being initiated.

**Permit expiration.** This permit expires two (2) years from the date of issuance shown on the original permit. The permit period will not be extended.

**Drilling Permit Number.** The drilling permit number shown on the permit MUST be given as a reference with any notification to the district (see below), correspondence, or application concerning this permit.

**Rule 37 Exception Permits.** This Statewide Rule 37 exception permit is granted under either provision Rule 37 (h)(2)(A) or 37(h)(2)(B). Be advised that a permit granted under Rule 37(h)(2)(A), notice of application, is subject to the General Rules of Practice and Procedures and if a protest is received under Section 1.3, "Filing of Documents," and/or Section 1.4, "Computation of Time," the permit may be deemed invalid.

### Before Drilling

**Fresh Water Sand Protection.** The operator must set and cement sufficient surface casing to protect all usable-quality water, as defined by the Texas Commission on Environmental Quality (TCEQ). Before drilling a well, the operator must obtain a letter from the Texas Commission on Environmental Quality stating the depth to which water needs protection, Write: Texas Commission on Environmental Quality (Surface Casing-MC151), P.O. Box 13087, Austin, TX 78711-3087. File a copy of the letter with the appropriate district office.

**Accessing the Well Site.** If an OPERATOR, well equipment TRANSPORTER or WELL service provider must access the well site from a roadway on the state highway system (Interstate, U.S. Highway, State Highway, Farm-to-Market Road, Ranch-to-Market Road, etc.), an access permit is required from TxDOT. Permit applications are submitted to the respective TxDOT Area Office serving the county where the well is located.

**Water Transport to Well Site.** If an operator intends to transport water to the well site through a temporary pipeline laid above ground on the state's right-of-way, an additional TxDOT permit is required. Permit applications are submitted to the respective TxDOT Area Office serving the county where the well is located.

### *NOTIFICATION

The operator is REQUIRED to notify the district office when setting surface casing, intermediate casing, and production casing, or when plugging a dry hole. The district office MUST also be notified if the operator intends to re-enter a plugged well or re-complete a well into a different regulatory field. Time requirements are given below. The drilling permit number MUST be given with such notifications.

### During Drilling

**Permit at Drilling Site.** A copy of the Form W-1 Drilling Permit Application, the location plat, a copy of Statewide Rule 13 alternate surface casing setting depth approval from the district office, if applicable, and this drilling permit must be kept at the permitted well site throughout drilling operations.

**\*Notification of Setting Casing.** The operator MUST call in notification to the appropriate district office (phone number shown the on permit) a minimum of eight (8) hours prior to the setting of surface casing, intermediate casing, AND production casing. The individual giving notification MUST be able to advise the district office of the drilling permit number.

**\*Notification of Re-completion/Re-entry.** The operator MUST call in notification to the appropriate district office (phone number shown on permit) a minimum of eight (8) hours prior to the initiation of drilling or re-completion operations. The individual giving notification MUST be able to advise the district office of the drilling permit number.

## Completion and Plugging Reports

**Producing Well.** Statewide Rule 16 states that the operator of a well shall file with the Commission the appropriate completion report within thirty (30) days after completion of the well or within ninety (90) days after the date on which the drilling operation is completed, whichever is earlier. Completion of the well in a field authorized by this permit voids the permit for all other fields included in the permit unless the operator indicates on the initial completion report that the well is to be a dual or multiple completion and promptly submits an application for multiple completion. All zones are required to be completed before the expiration date on the existing permit. Statewide Rule 40(d) requires that upon successful completion of a well in the same reservoir as any other well previously assigned the same acreage, proration plats and P-15s (if required) must be submitted with no double assignment of acreage.

**Dry or Noncommercial Hole.** Statewide Rule 14(b)(2) prohibits suspension of operations on each dry or non-commercial well without plugging unless the hole is cased and the casing is cemented in compliance with Commission rules. If properly cased, Statewide Rule 14(b)(2) requires that plugging operations must begin within a period of one (1) year after drilling or operations have ceased. Plugging operations must proceed with due diligence until completed. An extension to the one-year plugging requirement may be granted under the provisions stated in Statewide Rule 14(b)(2).

**Intention to Plug.** The operator must file a Form W-3A (Notice of Intention to Plug and Abandon) with the district office at least five (5) days prior to beginning plugging operations. If, however, a drilling rig is already at work on location and ready to begin plugging operations, the district director or the director's delegate may waive this requirement upon request, and verbally approve the proposed plugging procedures.

**\*Notification of Plugging a Dry Hole.** The operator MUST call in notification to the appropriate district office (phone number shown on permit) a minimum of four (4) hours prior to beginning plugging operations. The individual giving the notification MUST be able to advise the district office of the drilling permit number and all water protection depths for that location as stated in the Texas Commission on Environmental Quality letter.

DIRECT INQUIRIES TO: DRILLING PERMIT SECTION, OIL AND GAS DIVISION

PHONE
(512) 463-6751

MAIL:
PO Box 12967
Austin, Texas, 78711-2967

## OIL & GAS DIVISION
PERMIT TO DRILL, DEEPEN, PLUG BACK, OR RE-ENTER ON A REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

| PERMIT NUMBER 728837 | DATE PERMIT ISSUED OR AMENDED Nov 29, 2011 | DISTRICT * 02 |
|---|---|---|
| API NUMBER 42-255-32209 | FORM W-1 RECEIVED Nov 22, 2011 | COUNTY KARNES |
| TYPE OF OPERATION NEW DRILL | WELLBORE PROFILE(S) Horizontal | ACRES 194.3 |
| OPERATOR MURPHY EXPL. & PROD. CO. - USA 594675 | | NOTICE This permit and any allowable assigned may be revoked if payment for fee(s) submitted to the Commission is not honored. District Office Telephone No: (210) 227-1313 |
| LEASE NAME WHITFIELD WEST UNIT | | WELL NUMBER 1H |
| LOCATION 11 miles NE direction from KARNES | | TOTAL DEPTH 12089 |

Section, Block and/or Survey

SECTION ◄       BLOCK ◄       ABSTRACT ◄ 227

SURVEY ◄ PICKET, J J

| DISTANCE TO SURVEY LINES 3140 ft. E   5400 ft. S | DISTANCE TO NEAREST LEASE LINE 100 ft. |
|---|---|
| DISTANCE TO LEASE LINES 249 ft. N   633 ft. W | DISTANCE TO NEAREST WELL ON LEASE See FIELD(s) Below |

FIELD(s) and LIMITATIONS:

* SEE FIELD DISTRICT FOR REPORTING PURPOSES *

| FIELD NAME LEASE NAME | ACRES NEAREST LEASE | DEPTH | WELL # NEAREST WE | DIST |
|---|---|---|---|---|
| EAGLEVILLE (EAGLE FORD-2) | 194.30 | 12,089 | 1H | 02 |
|    WHITFIELD WEST UNIT | 100 | | 0 | |

WELLBORE PROFILE(s) FOR FIELD: Horizontal

RESTRICTIONS:      This is a hydrogen sulfide field. Hydrogen Sulfide Fields with perforations must be isolated and tested per State Wide Rule 36 and a Form H-9 filed with the district office. Fields with SWR 10 authority to downhole commingle must be isolated and tested individually prior to commingling production.

```
Lateral: TH1
Penetration Point Location
   Lease Lines:      400.0 F E L
                     696.0 F N L
Terminus Location
   Lease Lines:      400.0 F E L
                     100.0 F S L
   Survey Lines:    2679.0 F E L
                     100.0 F S L
```

THE FOLLOWING RESTRICTIONS APPLY TO ALL FIELDS

## RAILROAD COMMISSION OF TEXAS
### OIL & GAS DIVISION

PERMIT TO DRILL, DEEPEN, PLUG BACK, OR RE-ENTER ON A REGULAR OR ADMINISTRATIVE EXCEPTION LOCATION

| PERMIT NUMBER | DATE PERMIT ISSUED OR AMENDED | DISTRICT |
|---|---|---|
| 728837 | Nov 29, 2011 | * 02 |

| API NUMBER | FORM W-1 RECEIVED | COUNTY |
|---|---|---|
| 42-255-32209 | Nov 22, 2011 | KARNES |

| TYPE OF OPERATION | WELLBORE PROFILE(S) | ACRES |
|---|---|---|
| NEW DRILL | Horizontal | 194.3 |

| OPERATOR | |
|---|---|
| MURPHY EXPL. & PROD. CO. - USA 594675 | **NOTICE** This permit and any allowable assigned may be revoked if payment for fee(s) submitted to the Commission is not honored. **District Office Telephone No:** (210) 227-1313 |

| LEASE NAME | WELL NUMBER |
|---|---|
| WHITFIELD WEST UNIT | 1H |

| LOCATION | TOTAL DEPTH |
|---|---|
| 11 miles NE direction from KARNES | 12089 |

**Section, Block and/or Survey**

SECTION ◄    BLOCK ◄    ABSTRACT ◄ 227

SURVEY ◄ PICKET, J J

| DISTANCE TO SURVEY LINES | DISTANCE TO NEAREST LEASE LINE |
|---|---|
| 3140 ft. E   5400 ft. S | 100 ft. |

| DISTANCE TO LEASE LINES | DISTANCE TO NEAREST WELL ON LEASE |
|---|---|
| 249 ft. N   633 ft. W | See FIELD(s) Below |

FIELD(s) and LIMITATIONS:

**\*   SEE FIELD DISTRICT FOR REPORTING PURPOSES   \***

FIELD NAME
  LEASE NAME                                                    ACRES      DEPTH      WELL #      DIST
                                                                NEAREST LEASE      NEAREST WE

This well shall be completed and produced in compliance with applicable special field or statewide spacing and density rules. If this well is to be used for brine mining, underground storage of liquid hydrocarbons in salt formations, or underground storage of gas in salt formations, a permit for that specific purpose must be obtained from Environmental Services prior to construction, including drilling, of the well in accordance with Statewide Rules 81, 95, and 97.

Data Validation Time Stamp   Nov 29, 2011 2:23 PM( 'As Approved' Version )          Page 4 of 4

## ACKNOWLEDGMENTS

STATE OF _____ §

COUNTY OF _____ §

This instrument was acknowledged before me on the ____ day of February, 2013, by
_____, as _____ of **WEST 17TH RESOURCES**
LLC, a [_____] corporation, on behalf of said corporation.

Notary Public, State of _____
Printed Name: _____
My commission expires: _____

STATE OF TEXAS    §

COUNTY OF HARRIS    §

This instrument was acknowledged before me on the 21st day of May, 2013, by D. Brett
Pennington, as Vice President US Onshore Operations of **MURPHY EXPLORATION &**
**PRODUCTION COMPANY—USA**, a Delaware corporation, on behalf of said corporation.

*R. Blake Newsom*

RANDAL BLAKE NEWSOM
Notary Public, State of Texas
My Commission Expires
July 29, 2016

Notary Public, State of [_____
Printed Name: _____
My commission expires: _____

. ASSIGNMENT OF OIL AND GAS LEASES – Signature Page

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By_____ Deputy

## ACKNOWLEDGMENTS

THE STATE OF TEXAS      §
                           §

COUNTY OF HARRIS      §

    This instrument was acknowledged before me on the 21 day of May, 2013 by Gregory A. Forero, Manager of Gansevoort Investments, LLC, Manager of WEST 17TH RESOURCES, LLC, a Delaware limited liability company on behalf of said limited liability company.



HANNAH KAHLENE CRAFT
Notary Public, State of Texas
My Commission Expires
July 27, 2016

*Hannah Kahlene Craft*
Notary Public, State of Texas
Printed Name: Hannah Kahlene Craft
My commission expires: July 27, 2016

THE STATE OF TEXAS      §
                           §

COUNTY OF HARRIS      §

    This instrument was acknowledged before me on the ____ day of May, 2013, by D. Brett Pennington, as Vice President US Onshore Operations of MURPHY EXPLORATION & PRODUCTION COMPANY—USA, a Delaware corporation, on behalf of said corporation.

Notary Public, State of _____
Printed Name: _____
My commission expires: _____

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic
copy of the original record now in my lawful cust-
ody and possession, as the same is recorded in
the Official Public records in my office, and I
hereby certify on September 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

Exhibit "A"

1. That certain Oil and Gas Leases dated effective the 5th day of January, 2012 by and between Pamela Mika Wolf, whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and West 17th Resources LLC, whose mailing address is 1707 1/2 Post Oak Boulevard, Houston. Texas 77056.

2. That certain Oil and Gas Leases dated effective the 5th day of January, 2012 by and between Thomas Mika, whose mailing address is 201 Nuthatch Drive, Buda, Texas 78160, and West 17th Resources LLC, whose mailing address is 1707 1/2 Post Oak Boulevard, Houston. Texas 77056.

Filed for Record in:
Karnes County

On: May 24,2013 at 10:23A

As a:
Recording Official Record

Document Number: 00123362

Amount: 40.00

Receipt Number - 66502
By,
Vanessa Villanueva

STATE OF TEXAS          COUNTY OF KARNES
I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of:
Karnes County
as stamped hereon by me.
May 24,2013

Carol Swize, Karnes County Clerk
Karnes County

HOU01:1246508.1

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF KARNES
The above is a full true and correct photographic copy of the original record now in my lawful custody and possession, as the same is recorded in the Official Public records in my office, and I hereby certify on September 10, 2013
Carol Swize, County Clerk
Karnes County, Texas
By _____ Deputy

